UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                                :

LEARNING ANNEX HOLDINGS, LLC :
and LEARNING ANNEX, LLC,         :
                                :

                 **Plaintiffs,**    :

                                :         **OPINION AND ORDER**

       - against -          :

                                :         **09 Civ. 4432 (SAS)**

RICH GLOBAL, LLC, and        :
CASHFLOW TECHNOLOGIES, INC., :

                                :

             **Defendants.**    :
-------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.      **INTRODUCTION**

         In an Opinion and Order dated January 25, 2011, I limited the

remaining causes of action of Plaintiffs Learning Annex Holdings, LLC and

Learning Annex, LLC (together "Learning Annex") to (1) breach of the duty to

negotiate in good faith under a Type II preliminary agreement, (2) *quantum meruit*,

and (3) unjust enrichment. A jury trial on those claims began on July 5, 2011.

Plaintiffs rested their case on July 8, 2011, at which point Defendants Rich Global,

LLC and Cash Flow Technologies, Inc. (together, "Defendants") moved for

judgment as a matter of law[1] on all three of Plaintiffs' claims. Following oral

---

[1]      *See* Fed. R. Civ. P. 50(a).

-1-

argument on the merits of Defendants' motion, the Court requested additional briefing from Plaintiffs regarding (1) the application of the Statute of Frauds codified in section 5-701(a)(10) of the New York General Obligations Law to Plaintiffs' *quantum meruit* claim and (2) evidence in support of out-of-pocket expenses with respect to Plaintiffs' claim for breach of the duty to negotiate in good faith. In light of my ruling that damages on the latter claim are limited to out-of-pocket costs, Plaintiffs have now withdrawn that claim,[2] rendering moot Defendants' argument that Plaintiffs' proof of damages is insufficient to permit that claim to go to the jury. Thus, this Memorandum Opinion addresses the narrow question of whether a reasonable juror could conclude, based on the writings in evidence, that Rich Dad agreed to compensate Learning Annex for its introduction of Rich Dad to Whitney and for services relating to the development of the free Rich Dad seminars with follow-up courses (the "free seminar business"). I conclude that a reasonable juror could so conclude, and accordingly deny Rich Dad's motion for judgment as a matter of law on Learning Annex's *quantum meruit* claim.[3]

---

[2]   *See* 7/9/11 Letter from Plaintiffs to the Court ("7/9/11 Pl. Letter") at 1.

[3]   Rich Dad also moved for judgment as a matter of law on Learning Annex's unjust enrichment claim on the grounds that Learning Annex has failed to show, by a preponderance of the evidence, that Rich Dad's termination of Learning Annex was in bad faith. *See* 7/9/11 Letter from Defendants to the Court.

## II.   LEGAL STANDARD

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."[4]

"A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment."[5]

## III.   APPLICABLE LAW

### A.   *Quantum Meruit*

_____

However, because the question of whether defendant has been "unjustly enriched" or should "in equity and good conscience" repay is a question for the Court *after* the jury has determined whether the facts are as claimed, I need not decide Rich Dad's motion at this time.  *See* 2 New York Pattern Jury Instructions: Comment to Instruction No. 4:2 ("It should . . . never be left to the jury to say whether defendant has been 'unjustly enriched' or should 'in equity and good conscience' repay.").  Thus, once the jury makes the requisite findings of fact and returns a verdict on the *quantum meruit* claim, the Court will determine whether Rich Dad was unjustly enriched and therefore whether any verdict in Plaintiffs' favor on the *quantum meruit* claim may be sustained.

[4]      Fed. R. Civ. P. 50(a)(1).

[5]      Fed. R. Civ. P. 50(a)(2).

-3-

In order to recover in quantum meruit, Plaintiffs must establish "(1) the performance of services in good faith[;] (2) the acceptance of the services by the person to whom they are rendered[;] (3) an expectation of compensation therefore[;] and (4) the reasonable value of the services."[6]

### B. Statute of Frauds

Section 5-701(a)(1) of the New York General Obligations Law provides that

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . . if such agreement, promise or undertaking: . . . (10) *Is a contract to pay compensation for services rendered . . . in negotiating the purchase, sale, exchange, renting or leasing . . . of a business opportunity, business, . . . or an interest therein,* including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. *"Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation* . . . .[7]

"[I]t is well settled that the New York Statute of Frauds requires *contracts* for finder's fees to be in writing, and that to satisfy the Statute, a writing or collection

---

[6]   *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (quotation marks and citation omitted).

[7]   N.Y. Gen. Oblig. Law § 5-701(a)-(a)(10).

-4-

of writings must reflect all material terms of the agreement."[8] "Nevertheless, the New York Court of Appeals had held that even if a finder is unable to recover on a contract claim by virtue of the Statute of Frauds, under some circumstances the finder may still recover in *quantum meruit* for the reasonable value of the services rendered."[9]

### 1.      Services to Which Section 5-701(a)(10) Applies

"It is well settled that the Statute of Frauds applies to claims for finder's fees."[10]  In addition, "'[c]ourts interpreting section (a)(10) have generally held that where the transaction results in the acquisition of an existing enterprise *or*

---

[8]      *Springwell Corp. v. Falcon Drilling Co., Inc.*, 16 F. Supp. 2d 300, 304 (S.D.N.Y. 1998) (Sotomayor, J.) (citing *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 379 (1969)) (emphasis added).

[9]      *Id.*

[10]      *Springwell Corp.*, 16 F. Supp. 2d at 304.  *Accord Bronner v. Park Place Entm't Corp.*, 137 F. Supp. 2d 306, 312 (S.D.N.Y. 2001) ("Section 5-701 is clear that oral finder's fee agreements are void.").  *See* Note of the Commission to N.Y. Gen. Oblig. Law § 5-701 (noting that the purpose of the Law Revision Commission's addition of the above-quoted definition of "negotiating" was "to make clear that the contracts required to be evidenced by writing include a contract or agreement for the compensation of a business broker for acting as a 'finder,' 'originator' or 'introducer,' or for assisting in the negotiation or consummation of the transaction, and that the requirement cannot be avoided by an action for compensation in *quantum meruit*").

*the formation of a new one*, it is a business opportunity.'"[11]  "New York courts

have held that Section 5-701(a)(10) applies where an intermediary seeks

compensation for having provided 'know-how' or 'know-who,' in bringing about

between principals an enterprise of some complexity or an acquisition of a

significant interest in an enterprise. . . .'"[12]  For example, courts have applied

section 5-701(a)(10) to *quantum meruit* claims based on a plaintiff's involvement

in bringing about a licensing agreement between a defendant and a third party.[13]

---

[11]  *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 613 (S.D.N.Y. 2010)
(quoting *Management Recruiters of Boulder v. National Econ. Research Assocs.
Inc.*, No. 02 Civ. 3507, 2006 WL 2109478, at *6 (S.D.N.Y. July 24, 2006))
(emphasis added).  *Accord Snyder v. Bronfman,* 13 N.Y.3d 504, 508-09 (2009)
(finding plaintiff's *quantum meruit* claim barred where "[t]he essence of plaintiff's
claim is that he devoted years of work to finding a business to acquire and causing
an acquisition to take place – efforts that ultimately led to defendant's acquisition
of his interest in Warner Music.  In seeking reasonable compensation for his
services, plaintiff obviously seeks to be compensated for finding and negotiating
the Warner Music transaction.  His claim is of precisely the kind the statute of
frauds describes.").

[12]  *Vioni v. American Capital Strategies Ltd.*, No. 08 Civ. 2950, 2009
WL 174937, at *3 (S.D.N.Y. Jan. 23, 2009) (quoting *Freedman v. Chemical
Constr. Corp.*, 43 N.Y.2d 260, 267 (1977)).

[13]  *See, e.g., Davis & Mamber, Ltd. v. Adrienne Vittadini, Inc.*, 622
N.Y.S.2d 706 (1st Dep't 1995) (section 5-701(a)(10) applied to plaintiff's *quantum
meruit* claim for compensation for approaching a certain manufacturer about
entering into a licensing agreement with defendants and setting up meetings to
introduce the defendants to the manufacturer); *Kalfin v. U.S. Olympic Committee*,
618 N.Y.S.2d 724, 725-26 (1st Dep't 1994) (section 5-701(a)(10) applied to
plaintiff's *quantum meruit* claim for compensation for plaintiff's "involvement" in
bringing about a licensing agreement between defendant and the JC Penney

## 2.     Writings Sufficient to Satisfy Section 5-701(a)(10)

In *Morris Cohon & Co. v. Russell*, the New York Court of Appeals

limited the application of section 5-701(a)(10) to *quantum meruit* claims "to

situations in which there is a complete absence of any memorandum."[14] *First*, the

court determined that where, as in *Morris Cohon*, the writing relied upon

"identifies the parties to the contract, the subject matter of the contract and

establishes that plaintiff in fact performed . . . the peril of perjury is largely, if not

entirely, absent."[15]  *Second*, the court stated:

> In an action in *quantum meruit* . . . for the reasonable value of
> brokerage services, if it does not appear that there has been an
> agreement on the rate of compensation, a sufficient memorandum
> need only evidence the fact of plaintiff's employment by
> defendant to render the alleged services.  The obligation of the
> defendant to pay reasonable compensation for the services is then
> implied.[16]

*Third*, the court concluded by emphasizing that the writing relied upon in that case

was sufficient to support a *quantum meruit* claim under the Statute of Frauds

---

Company); *Blye v. Colonial Corp. of America*, 476 N.Y.S.2d 874 (1st Dep't 1984)
(section 5-701(a)(10) applied to plaintiff's *quantum meruit* claim to recover a
commission or finder's fee for jointly negotiating (with defendants) a licensing
agreement with a third party).

[14]     23 N.Y.2d at 572.

[15]     *Id.* at 575.

[16]     *Id.* at 575-76.

because "[i]t identifies the buyer, it identifies the defendant as one of the sellers, it

establishes the fact of plaintiff's employment, it identifies the plaintiff as the

broker, it establishes the subject matter of the transaction and, most important, it

acknowledges performance by the plaintiff in bringing about the sale of

defendant's stock."[17]  As then-Judge Sotomayor explained in *Springwell Corp. v.*

*Falcon Drilling Co., Inc.*,

> [t]he *Morris Cohon* decision concededly leaves some ambiguity
> as to whether, to sustain a *quantum meruit* action, the writing
> relied upon must contain all essential terms of the contract but the
> rate of compensation, whether it must further contain an
> acknowledgment by the defendant of the plaintiff's performance,
> or whether it need only "evidence that fact of plaintiff's
> employment by defendant to render the alleged services." . . . .
> However, a review of the cases applying *Morris Cohon* indicates
> that courts have, at a minimum, required the writing relied upon
> to establish clearly the existence of the alleged . . . agreement and
> its subject matter.   While written acknowledgment by the
> defendant of the plaintiff's performance has been found to be
> persuasive evidence of an agreement's existence, courts have not
> uniformly required it.  On the other hand, courts have dismissed
> *quantum meruit* claims under the Statute of Frauds where the
> writings relied upon failed to establish that the defendant actually
> agreed to pay a finder's fee, or where the writings left ambiguity
> as to whether the agreement's terms covered the transaction upon
> which a fee was claimed.[18]

## IV.   DISCUSSION

---

[17]   *Id.* at 576.

[18]   *Springwell Corp.*, 16 F. Supp. 2d at 305 (quoting *Morris Cohen*, 23
N.Y.2d at 575-76) (citations omitted) (emphasis added).

A.     **Learning Annex's *Quantum Meruit* Claim for Introducing Rich Dad to Whitney and for Services Relating to the Development of the Free Seminar Business Is Covered by the Statute of Frauds**

Although Learning Annex has never clearly delineated all of the services for which it seeks recovery,[19] it is the Court's understanding that it seeks compensation for the following: (1) introducing Rich Dad to Whitney, (2) developing the free seminar business (including contacting potential licensees), (3) setting up teleseminars for Rich Dad, (4) arranging a sponsorship with PBS, (5) allowing Rich Dad to participate in Learning Annex expos, and (6) using its best efforts to promote Rich Dad.[20]  The parties appear to be in agreement that it is only the first two categories of services that could possibly fall within section 5-701(a)(10)'s prohibition on recovery in the absence of writings satisfying the Statute of Frauds.[21]

---

[19]     *See, e.g.*, 7/9/11 Pl. Letter at 5 ("The documents in this case show that Rich Dad specifically authorized Learning Annex to perform services on its behalf, and that the parties contemplated that Learning Annex would be compensated for those services.").

[20]     *See* 7/9/11 Pl. Letter at 5.

[21]     *See, e.g.*, Rich Dad's Motion *in Limine* to Exclude Evidence ("Def. Motion *in Limine*") at 2 ("Under New York law, an agreement for an introduction fee is governed by the Statute of frauds."); *id.* at 3 ("[C]ourts interpreting [section 5-701(a)(10) have generally held that where the transaction results in the acquisition of an existing enterprise or the formation of a new one, it is a business opportunity.") (quotation marks omitted); *id.* ("LA cannot recover any compensation for its introduction, or any activities flowing from it, including the

In any event, I now hold that categories (3) through (6), which amount
largely to promotional efforts on the part of Learning Annex, do *not* fall under
section 5-701(a)(10)'s prohibition on recovery.  Although MOU1 described
Learning Annex's creation of radio infomercials as a "business" that Learning
Annex would conduct "directly or through sub-licensees," Learning Annex is not
suing for breach of the MOU1 – the terms of which are unenforceable.  Rather, it is
suing for recovery of services rendered in the absence of a contract.  If the jury
finds that Learning Annex has proven, by a preponderance of the evidence, that
Learning Annex set up teleseminars for Rich Dad, arranged a sponsorship with
PBS, allowed Rich Dad to participate in Learning Annex expos, and used its best
efforts to promote Rich Dad *with the reasonable expectation of being compensated*
– and that Rich Dad accepted those services *with the expectation that it would pay
Learning Annex for those services* – it may recover the reasonable value of those
services in *quantum meruit* in the absence of writings memorializing any alleged
agreement to provide any such compensation.

However, categories (1) and (2) clearly fall within section 5-
701(a)(10)'s broad prohibition.  Learning Annex's alleged introduction of Rich
Dad to Whitney clearly constitutes "procuring an introduction to a party to the

reasonable value of its services and profits of the subsequent joint venture, on a
theory of unjust enrichment. . . .").

-10-

transaction," and its efforts to develop the free seminar business and to consummate a licensing agreement clearly constitute "assisting in the negotiation or consummation of the transaction"[22] – here, "the formation of a new . . . business opportunity,"[23] namely a joint venture that included Whitney but that, ultimately, did not include Learning Annex.  In the absence of an agreement under which Learning Annex was actually made a party to that joint venture, these services amount to an intermediary's provision of "'know-how' or 'know-who[]' in bringing about between principals an enterprise of some complexity."[24]  In short, Learning Annex's claim for compensation for these services is "precisely the kind the statute of frauds describes."[25]

### B.   A Reasonable Juror Could Find that the Writings in Evidence Satisfy the Statute of Frauds for Learning Annex's Claim for Services Falling Under Section 5-701(a)(10)

In its July 9th letter-brief to the Court, Plaintiffs argue that the following writings "collectively satisfy the requirements of the Statute of Frauds as set forth in *Morris Cohen* and its progeny"[26]:

---

[22]    N.Y. Gen. Oblig. Law § 5-701(a)-(a)(10).

[23]    *Gutkowski*, 680 F. Supp. 2d at 613.

[24]    *Vioni*, 2009 WL 174937, at *3 (quotation marks omitted).

[25]    *Snyder*, 13 N.Y.3d at 509.

[26]    7/9/11 Pl. Letter at 2.

1.   Plaintiffs' Exhibit 47 – September 15, 2005 letter from Sharon Lechter.  In this letter, Lechter expressly authorized the Learning Annex "to develop and conduct free Rich Dad seminars with follow-up courses in the United States and Canada."

2.   Plaintiffs' Exhibit 60 – September 29, 2005 email from Bill Zanker to Time Warner copying Sharon Lechter.  The letter states that "Rich Dad brand has agreed to allow me to represent them in numerous new business ventures . . . .  The first deal that I am doing is getting Rich Dad trainers to begin going around the country teaching through free seminars. . . .  I will be doing radio informercials, new TV informercials . . . .  I promised Robert, Kim and Sharon to take the brand to levels they never even dreamed of.  I am putting the entire Learning Annex machine behind Rich Dad."

3.   Plaintiffs' Exhibit 124 – Draft letters from Lechter dated January 31, 2006, purporting to terminate Learning Annex.  The first letter of Exhibit 124 asserts that "the commitments of the [Memorandum of Understanding] were not yet undertaken."

4.   Plaintiffs' Exhibit 94 – December 19, 2005 letter from Robert Kiyosaki, Kim Kiyosaki and Lechter.  In this letter, Robert Kiyosaki, Kim Kiyosaki, and Lechter state "please discontinue any negotiations you are involved in on our behalf whether approved by us (e.g., regional seminars) or not."

5.   Plaintiffs' Exhibit 132 – February 2, 2006 email from Lechter.  In this email to Zanker, Lechter states, "Everything is off.  We no longer want to be in business with you."

6.   Plaintiffs' Exhibit 143 – February 14, 2006 email from Zanker.  In this email to Lechter and Kim Kiyosaki, Zanker states that he and Learning Annex "will accept whatever you deem appropriate, if anything, at your discretion, for the introduction of Russ Whitney . . . ."

The first, fourth, and sixth writings, taken collectively and read in the

-12-

light most favorable to Learning Annex, convince this Court that Learning

Annex's *quantum meruit* claim cannot be dismissed under the Statute of Frauds for

lack of a sufficient writing. The first writing, in which Lechter expressly

authorizes Learning Annex to conduct free Rich Dad seminars with follow-up

courses in the United States and Canada, "evidence[s] that fact of plaintiff's

employment by defendant to render the alleged services."[27] That fact is further

evidenced by Rich Dad's later instruction to Learning Annex, in the December 19,

2005 letter, to "please discontinue any negotiations you are involved in on our

behalf *whether approved by us (e.g., regional seminars)* or not" (emphasis added).

The December 19, 2005 letter also "acknowledges that the plaintiff performed

requested services,"[28] for only negotiations that had taken place could be

"discontinue[d]."[29] Although neither the September 15, 2005 nor the December

19, 2005 letter contains or references a rate of compensation, "courts have been

particularly willing to entertain *quantum meruit* claims where despite its other

shortcomings or ambiguities, a defendant's writing expressly acknowledges that

_____

[27]     *Springwell Corp.*, 16 F. Supp. 2d at 305 (quotation marks omitted).

[28]     *Id.* at 315.

[29]     Similarly, the statement in the February 2, 2006 email from Lechter to
Zanker stating that "[e]verthing is off" implies that "everything" was once "on,"
and that Rich Dad was previously "in business" with Learning Annex.

-13-

the plaintiff performed requested services."[30]  Moreover, a reasonable juror could

conclude that the September 15, 2005 letter was unlikely to be issued if the parties

contemplated "the gratuitous rendition of services."[31]

On the other hand, a reasonable juror could also conclude, based on

MOU1's clear statement of the parties' intentions that it was "not a binding legal

obligation," that Learning Annex began approaching sublicensees at its own risk,

in anticipation of *later* consummating a final agreement that would provide for

compensation, and that it did not reasonably expect compensation for the particular

services rendered – namely, procuring an introduction to Whitney and engaging in

preliminary negotiations regarding a free seminar business – in the absence of a

---

[30]     *Springwell Corp.*, 16 F. Supp. 2d at 315.

[31]     *Davis & Mamber*, 622 N.Y.S.2d at 706-07 (although the absence of
(1) material terms of any agreement and (2) the rate of compensation from two
letters in which defendants authorized plaintiff to approach various companies
regarding possible business transactions justified dismissal of plaintiff's contract
claim, those letters satisfied the Statute of Frauds on plaintiff's *quantum meruit
claim* because "[w]hatever questions of fact may be raised in the instant case, there
is a letter signed by defendants, in circumstances not likely to involve the
gratuitous rendition of services by plaintiff, authorizing plaintiff to approach U.S.
Shoe and other manufacturers") (where plaintiff approached U.S. Shoe and had
several meetings, but no agreement was reached, but defendant entered into a
contract with U.S. Shoe three years later). *See also Morris Cohon*, 23 N.Y.2d at
571 (although clause in contract of sale to which plaintiff was not a party contained
no terms of agreement whatsoever and no affirmative statement that plaintiff acted
as a broker, "by reasonable construction and necessary implication, the language
used establishes that defendant indeed was obligated to pay plaintiff for his
services").

-14-

final "legally binding agreement" consistent with the terms of MOU1.

      The February 14, 2006 "waiver" email from Zanker to Rich Dad, stating that Learning Annex would "accept whatever you deem appropriate, if anything, at your discretion, for the introduction of Russ Whitney," serves as further evidence that – notwithstanding the language of MOU1 – the parties in fact expected Learning Annex to be compensated for the efforts it undertook pursuant to the September 15, 2005 letter.  This is because a reasonable juror could conclude, based on the evidence presented at trial, that the waiver was obtained by false pretenses.  That Rich Dad believed it needed this waiver certainly supports and inference that it was concerned that it owed a fee to Learning Annex and that there was a shared expectation that Learning Annex would be compensated for the work it had done up to that point regarding the development of the free seminar business with Whitney.  Although these three writings do not "reflect all material terms' of the parties' [alleged] agreement," they sufficiently "evidence[] [Rich Dad's] engagement of [Learning Annex's] services in connection with a transaction that was later brought to fruition"[32] such that I cannot dismiss the *quantum meruit* claim for failure to satisfy the Statute of Frauds.

      However, "[w]hether [Learning Annex] recovers at trial will depend

---

[32]    *Springwell Corp.*, 16 F. Supp. 2d at 315 (explaining that "[m]ost courts . . . have read *Morris Cohon* . . . expansively").

on the resolution of many disputed and close issues,"[33] including whether the

writings in evidence satisfy the Statute of Frauds.  Accordingly, I will instruct the

jury that, when determining whether Learning Annex has proven the three

elements of its *quantum meruit* claim for the particular services covered by section

5-701(a)(10) by a preponderance of the evidence, it must first determine whether

Learning Annex has satisfied the Statute of Frauds.[34]

---

[33]     *Id.* (noting that "[t]he Court also expects that [defendant] may attempt
to prove at trial that the [letter from defendant's attorney], when properly
interpreted in the light of witness testimony, does not constitute an admission of
performance in connection with the [services in question] and reflects only
[defendant's attorney's] advice to [defendant] in the context of settlement"). *Id.* at
317 n.4. *See also Khazzam v. Tremont Advisers, Inc.*, 626 N.Y.S.2d 66, 68 (1st
Dep't 1995) (*quantum meruit* claim allowed to proceed to trial where defendant's
writings acknowledged that plaintiff had performed services, but left open "issues
of fact . . . with regard to material terms of the agreement and as to whether there
was a meeting of the minds to formulate a valid contract").

[34]     *See, e.g., Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*, 807
F. Supp. 337, 345 (S.D.N.Y. 1992) (rehearsing the court's instruction to jury as to
each element that an agreement must have to be enforceable and charged the jury
regarding the Statute of Frauds as follows: "for an agreement to satisfy the
requirements of the statute of frauds, each of the essential terms must also appear
in documents signed and subscribed by Schoeller.  The statute of frauds doesn't
require that all of the terms be spelled out in a single document.  Instead, the
agreement may be pieced together out of separate writings.  These separate
writings may include correspondence and internal Schoeller memoranda, which,
taken together, contain substantially the whole agreement and its material terms
and conditions, so that a person reading the materials would understand what the
agreement is.  These writings must clearly refer to the same transaction and need
not all be signed. But the documents which establish the understanding must be
signed and subscribed. Custom and usage in the trade do not substitute for this
requirement, though such custom and usage may be considered with respect to the

-16-

## V.    CONCLUSION

This trial in this case will proceed.  I will charge the jury as to *quantum meruit* (and the Statute of Frauds defense) and as to the elements of unjust enrichment, and will take an advisory verdict on unjust enrichment.[35]  If the jury returns a verdict for Learning Annex on the *quantum meruit* claim, I will then determine whether Rich Dad was unjustly enriched.  If I determine that Rich Dad was unjustly enriched then judgment will be entered for Learning Annex basec on the jury's verdict of on damages.

---

intent of the parties and with respect to defining the terms.") (concluding that "[a] reasonable jury could have concluded that these writings, along with the other correspondence and internal memoranda in evidence, satisfied the Statute of Frauds."); *Shapiro v. Dictaphone Corp.*, 411 N.Y.S.2d 669, 672 (1978) ("Although a promise as to the amount of the fee is lacking, the trier of the facts could determine that the letters of Dictaphone, when read in Pari materia with those of plaintiff, set forth a writing instinct with an obligation, imperfectly expressed.  If such a finding is made, there would exist a valid contract.") (quotation marks and citation omitted).

[35]     *See, e.g., Koppel v. 4987 Corp.*, Nos. 96 Civ. 7570 HB, 97 Civ. 1754 HB, 2001 WL 47000, at *12-13 (S.D.N.Y. Jan. 19, 2001) (after "plaintiffs' claim of unjust enrichment, an equitable claim, was submitted to the jury for an advisory verdict," and jury found for defendants, court held that "the facts established at trial do not compel a finding that 'equity and good conscience' require restitution").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 11, 2011

-18-

-Appearances-

**For Plaintiffs:**

Jonathan Harris, Esq.
Julie Withers, Esq.
Charlotte Houghteling, Esq.
Harris Cutler & Houghteling LLP
111 Broadway, Suite 402
New York, New York 10006
(212) 397-3370

David Deitch, Esq.
Ifrah PLLC
1627 Eye Street NW, Suite 1100
Washington, D.C. 20006

**Counsel for Defendants:**

John D. Rapoport, Esq.
John D. Rapoport, PC
c/o Marulli, Lindenbaum, LLP
5 Hanover Square, 4th Floor
New York, New York 10022
(914) 588-3415

-19-