UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEARNING ANNEX HOLDINGS, LLC, LEARNING ANNEX, LLC, and LEARNING ANNEX, L.P., <br><br>      Plaintiffs, <br><br>    v. <br><br>RICH GLOBAL, LLC and CASHFLOW TECHNOLOGIES, INC., <br><br>      Defendants. | 09 Civ. 4432 (SAS) (GWG) |

# MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REINSTATE CLAIM FOR UNJUST ENRICHMENT AND FOR ENTRY OF JUDGMENT ON THAT CLAIM

PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
Lewis R. Clayton
Daniel J. Leffell
John H. Longwell
1285 Avenue of the Americas
New York, New York 10019
Tel. (212) 373-3000

LAW OFFICE OF JOHN D. RAPOPORT,
 P.C.
John D. Rapoport
5 Hanover Square
4th Floor
New York, New York 10022
Tel. (914) 588-3415

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................... 3

I. THE COURT PROPERLY DISMISSED PLAINTIFFS' DUPLICATIVE CLAIM FOR UNJUST ENRICHMENT................................................................. 3

    A.    In the Context of a Quasi-Contract Claim for Compensation for Services, Unjust Enrichment and *Quantum Meruit* Are Identical ...............4

    B.    The "Distinct Elements" of Unjust Enrichment Do Not Make It an Alternative Remedy Here ...................................................................5

    C.    The Cases Upon Which Plaintiffs Rely Do Not Hold that Unjust Enrichment and *Quantum Meruit* Are Distinct Remedies Where the Claim Is for Compensation for Services Rendered ...............................7

II. THE EVIDENCE DOES NOT SUPPORT A FINDING OF UNJUST ENRICHMENT ....................................................................................................... 9

CONCLUSION........................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Argilus, LLC* v. *PNC Fin. Servs. Grp., Inc.*,
    419 F. App'x 115 (2d Cir. 2011) ................................................................................ 7, 8

*ConFold Pac., Inc.* v. *Polaris Indus., Inc.*,
    433 F.3d 952 (7th Cir. 2006) .................................................................................... 6, 7

*Gidatex S.r.L.* v. *Campaniello Imps., LTD*,
    49 F. Supp. 2d 298 (S.D.N.Y. 1999) ............................................................................. 8

*Giordano* v. *Thomson*,
    564 F.3d 163 (2d Cir. 2009) ......................................................................................... 9

*IMG Int'l Mktg. Grp., Inc.* v. *SDS William St., LLC*,
    No. 652264/2010E, 2011 WL 3610789 (N.Y. Sup. Ct. June 29, 2011) ....................... 4

*John Anthony Rubino & Co., CPA, P.C.* v. *Schwartz*,
    No. 402788/08, 2010 WL 3529513 (N.Y. Sup. Ct. Aug. 10, 2010) .............................. 4

*Kidz Cloz, Inc.* v. *Officially for Kids, Inc.*,
    320 F. Supp. 2d 164 (S.D.N.Y. 2004) ........................................................................... 8

*Leibowitz* v. *Cornell Univ.*,
    584 F.3d 487 (2d Cir. 2009) ..................................................................................... 5, 9

*McGrath* v. *Hilding*,
    394 N.Y.S.2d 603 (N.Y. 1977) ................................................................................... 10

*Mid-Hudson Catskill Rural Migrant Ministry, Inc.* v. *Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005) ......................................................................................... 5

*Morales* v. *Quintiles Transnat'l Corp.*,
    25 F. Supp. 2d 369 (S.D.N.Y. 1998) ............................................................................. 4

*Newman & Schwartz* v. *Asplundh Tree Expert Co., Inc.*,
    102 F.3d 660 (2d Cir. 1996) ......................................................................................... 4

*Seiden Assocs., Inc.* v. *ANC Holdings, Inc.*,
    768 F. Supp. 89 (S.D.N.Y. 1991) .............................................................................. 4, 5

*Snyder* v. *Bronfman*,
    893 N.Y.S.2d 800 (N.Y. 2009) ...................................................................................... 4

Defendants Rich Global LLC ("Rich Dad") and CASHFLOW Technologies, Inc. ("CTI") respectfully submit this memorandum in opposition to plaintiffs' motion to reinstate their claim for unjust enrichment and for entry of judgment on that claim.

## PRELIMINARY STATEMENT

In an unusual motion that speaks volumes about plaintiffs' lack of confidence in the jury verdict, plaintiffs ask the Court to reconsider its well-reasoned and plainly correct decision to dismiss their claim for unjust enrichment. They then ask the Court to enter judgment in plaintiffs' favor on that claim, based on unsupported allegations of bad faith. We submit that this effort to bolster the verdict is wrong on the law and wrong on the evidence.

As the Court correctly held, there is no "alternative" claim for unjust enrichment to reinstate. The law of New York, as expressed in opinions of the state's highest court and the Second Circuit, clearly holds that, in the context of a claim for compensation for services under a contract implied in law, *quantum meruit* and unjust enrichment are essentially identical. Plaintiffs offer no authority to the contrary, and instead rely on an entirely irrelevant argument about election of remedies. But the issue is not whether plaintiffs are entitled to bring truly alternative claims. The Court found, correctly, that plaintiff had but one claim.

Because plaintiffs do not have an independent claim for unjust enrichment, there is no reason for the Court to evaluate the equities on this motion. It is also clear, however, that plaintiffs have failed to establish any basis for equitable relief. Plaintiffs' allegations of bad faith are unsupported by the evidence, and they make no showing of injury resulting from defendants' conduct. For the reasons explained in defendants' motion for judgment as a matter of law or, in the alternative, for a new trial, an "alternative" finding of unjust enrichment by the Court would be unwarranted.

## BACKGROUND

Plaintiffs' own recitation of the facts makes clear just how far-fetched any claim of "unjust enrichment" is on the record before the Court. *See* Pls.' Br. at 3-8.

In 2006, Rich Dad and Whitney formed a successful joint venture to pursue the free seminar business. This business combined the Rich Dad message with Whitney's business model and marketing skills and, through the efforts of the parties to the venture, earned substantial revenues over the course of several years (before the economic downturn reduced consumer interest in building personal wealth through investing).

LA had *nothing* to do with the operation of this venture. LA contributed no capital. LA provided no services. In short, LA was not involved.

The *only things* LA can credibly claim it did were, at most, to arrange initial meetings between Rich Dad and Whitney and encourage the parties to pursue the new business opportunity. Early in the process, the parties considered whether LA might have a more significant role. They drafted expressly *non-binding* letters of understanding. As it happened, both Rich Dad and Whitney—having developed serious and well-documented difficulties with LA's principal Bill Zanker—decided not to partner with him. They went forward without LA and were, at least for a time, successful.

Under these facts, it is impossible to see how Rich Dad was "unjustly" enriched at LA's expense. This is not unjust enrichment. It is just sour grapes.

To be sure, there is sometimes value in bringing together partners who subsequently form a successful business relationship. Although Rich Dad and Whitney were hardly strangers, Zanker sought to play the role of matchmaker in late 2005. His claim to compensation for playing that role, however, ran headlong into a fatal roadblock. New York law requires finder's fee agreements to be in writing. And the relevant writing, here, provided that

the parties would have no obligation to each other during the period in which they were exploring the free seminar business opportunity. Thus, the jury rejected LA's claim for compensation for the introduction of Rich Dad and Whitney.

Despite this, plaintiffs managed to pull a rabbit out of the hat at trial. They obtained an entirely unwarranted jury verdict of liability in *quantum meruit*, and an award of damages that compensates LA as if it were an *equal partner* with Rich Dad and Whitney in their joint venture, rather than an intermediary who merely encouraged the parties to talk and agreed in writing that it did not have a binding deal with defendants. Defendants' motion for judgment as a matter of law or, in the alternative, for a new trial explains why this verdict should not stand. A finding of unjust enrichment on the same evidence is equally unwarranted.

## ARGUMENT

### I.
### THE COURT PROPERLY DISMISSED PLAINTIFFS' DUPLICATIVE CLAIM FOR UNJUST ENRICHMENT

At trial, plaintiffs obtained a verdict (now subject to challenge on defendants' post-trial motion) on a claim of *quantum meruit*—a "quasi-contractual" claim for the reasonable value of services allegedly rendered by the plaintiffs. Although plaintiffs also pursued a claim of unjust enrichment, the Court properly dismissed that claim on the ground that it was "subsumed" by the *quantum meruit* claim. Mem. Op. & Order of Aug. 12, 2011 at 7 ("Aug. 12 Order"). Plaintiffs now ask the Court to reconsider this ruling. For the reasons stated by the Court, and as further explained below, the Court's decision was correct. New York's highest court has held that, in the context of a quasi-contractual claim for compensation for services, unjust enrichment and *quantum meruit* are essentially identical claims. The Second Circuit has also held repeatedly that, under New York law, a quasi-contractual claim in which a plaintiff seeks compensation for services rendered, whether denominated *quantum meruit* or unjust enrichment (or both), is but a

3

single legal remedy. Plaintiffs have identified no authority to the contrary, much less a "controlling decision" that the Court "overlooked" that could warrant reconsideration. *Morales v. Quintiles Transnat'l Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998) (stating standard for reconsideration). Therefore, plaintiffs' motion should be denied.

A.  **In the Context of a Quasi-Contract Claim for Compensation for Services, Unjust Enrichment and *Quantum Meruit* Are Identical**

The Court correctly held that it "need not, and should not, separately decide [the unjust enrichment] claim, which should have been 'analyze[d] . . . as a single quasi contract claim' alongside Plaintiffs' *quantum meruit* claim." Aug. 12 Order at 8 (quoting *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)). This ruling correctly reflects Second Circuit precedent and New York law, which hold that *quantum meruit* and unjust enrichment are one and the same when the plaintiff seeks damages, under a quasi-contract theory, for services rendered.

The New York Court of Appeals has held that, in the context of a contract implied in law to pay reasonable compensation, "unjust enrichment and quantum meruit are . . . essentially identical claims." *Snyder v. Bronfman*, 893 N.Y.S.2d 800, 802 (N.Y. 2009); *see also IMG Int'l Mktg. Grp., Inc. v. SDS William St., LLC*, No. 652264/2010E, 2011 WL 3610789, at *5 (N.Y. Sup. Ct. June 29, 2011) (same); *John Anthony Rubino & Co., CPA, P.C. v. Schwartz*, No. 402788/08, 2010 WL 3529513, at *6 (N.Y. Sup. Ct. Aug. 10, 2010) (same). The Second Circuit is in accord. In *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, the court observed that "Counts Two and Three for quantum meruit and unjust enrichment were quite properly subsumed by the district court into a single count for restitution." 102 F.3d 660, 663 (2d Cir. 1996). The court in *Newman* cited with approval *Seiden Associates, Inc. v. ANC Holdings, Inc.*, in which the Court held that "quantum meruit and unjust enrichment are *not*

4

*separate* causes of action." 768 F. Supp. 89, 96 (S.D.N.Y. 1991), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992) (emphasis added). And more recently, in *Mid-Hudson*, the Second Circuit cited *Newman* and *Seiden* for the proposition that, "[a]pplying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." 418 F.3d at 175; *accord Leibowitz* v. *Cornell Univ.*, 584 F.3d 487, 509 n.9 (2d Cir. 2009). In light of this controlling precedent, plaintiffs' motion for reconsideration, which depends on the argument that its claims for unjust enrichment and *quantum meruit* are analytically distinct, is meritless.

Plaintiffs have no answer to this authority. They simply ignore the opinion of New York's highest court in *Snyder*. They attempt to distinguish *Newman* and *Mid-Hudson* on the ground that in those cases, the courts "consolidated the claims for unjust enrichment and *quantum meruit* at an early stage of the case, well in advance of trial." Pls.' Br. at 12. But plaintiffs offer no explanation why this distinction should make a difference, and there is none. In neither case did the court qualify its statement that *quantum meruit* and unjust enrichment may be analyzed as a single quasi-contract claim to suggest that this analysis is appropriate only at an "early stage" of the case. And there is no conceivable basis for such a qualification. If *quantum meruit* and unjust enrichment are not, as a matter of law, analytically distinct at the outset of the case, they cannot become so later.

B.  **The "Distinct Elements" of Unjust Enrichment Do Not Make It an Alternative Remedy Here**

Plaintiffs cite the purportedly "distinct elements" of *quantum meruit* and unjust enrichment as the sole basis for their argument that, contrary to *Snyder*, *Newman*, and *Mid-Hudson*, the claims present "alternative theories for recovery." Pls.' Br. at 9. To be sure, courts have stated the basic elements of unjust enrichment and *quantum meruit* differently. Aug. 12 Order at 4. But this merely reflects that there is not complete identity between unjust enrichment

5

and *quantum meruit* in all cases. The former can be broader than the latter, reaching instances (unlike here) in which the claim is not for compensation for services, but for the value of property that the defendant has retained unjustly. The court explained as much in the very case upon which plaintiffs rely for the proposition that unjust enrichment and *quantum meruit* have distinct elements. *See* Pls.' Br. at 9 n.5 (citing *ConFold Pac., Inc.* v. *Polaris Indus., Inc.*, 433 F.3d 952 (7th Cir. 2006)).

In *ConFold*, the court explained that unjust enrichment can occur in two different situations: "either [1] the defendant has received something that of rights belongs to the plaintiff (for example, he received it by mistake—or he stole it), or [2] the plaintiff ha[s] rendered a service to the defendant in circumstances in which one would reasonably expect to be paid (and the defendant refused to pay) though for a good reason there was no contract." 433 F.3d at 957-58. The court went on to state that unjust enrichment in the *latter* sense—*i.e.*, a claim for the market value of services rendered with a reasonable expectation of payment—is essentially identical to a claim in "quasi-contract" or "quantum meruit." *Id.* at 958. Unjust enrichment in the former sense, however, where the defendant has appropriated something of value belonging to the plaintiff, is a different claim with a different measure of damages (the value of the appropriated item, as opposed to the market value of the services rendered). *Id.*

This explains why the elements of unjust enrichment are different from those of *quantum meruit*: the elements of unjust enrichment encompass both misappropriation of property *and* "quasi-contract" claims for failure to pay for services. That unjust enrichment can encompass additional wrongs, however, does not mean that when the plaintiff seeks compensation for services under the "quasi-contract" branch of unjust enrichment, the plaintiff has a separate and distinct claim from *quantum meruit*. To the contrary, as *Synder*, *Newman*, and

6

*Mid-Hudson* hold, a claim in *quantum meruit* is identical to an unjust enrichment claim that seeks to remedy a defendant's failure to compensate the plaintiffs for services rendered with a reasonable expectation of compensation. That claim, of course, is just what plaintiffs have pursued here.

Courts do not always emphasize the distinction between unjust enrichment based on misappropriation and unjust enrichment based on quasi-contract as explained in *ConFold*. (Indeed, the court's dismay at the "[p]roliferation of terms" surrounding unjust enrichment prompted his thorough analysis in that case. 433 F.3d at 957.) In many cases, as this Court has observed, courts use the terms "unjust enrichment" and "*quantum meruit*" interchangeably when discussing quasi-contract claims. Aug. 12 Order at 5 n.11. But this is perfectly appropriate, because in that context the terms *are* interchangeable.

Because the unjust enrichment and *quantum meruit* claims plaintiffs asserted in this case are identical, plaintiffs' argument based on the law of election of remedies is a red herring. Pls.' Br. at 9-13. The Court did not base its dismissal of the unjust enrichment claim on the ground that unjust enrichment and *quantum meruit* are inconsistent theories, such that plaintiffs should not be permitted to pursue them in the alternative. Quite the contrary—duplicativeness, not inconsistency, is the problem. In this case, the two claims are not two claims at all, but rather two names for a single quasi-contractual legal theory. Cases involving election of remedies are thus completely irrelevant.

C.  **The Cases Upon Which Plaintiffs Rely Do Not Hold that Unjust Enrichment and *Quantum Meruit* Are Distinct Remedies Where the Claim Is for Compensation for Services Rendered**

Plaintiffs have been unable to muster any authority that contradicts the opinions in *Snyder*, *Newman*, and *Mid-Hudson*. In the primary case upon which plaintiffs rely, *Argilus, LLC v. PNC Financial Services Group, Inc.*, the Second Circuit, in summary fashion, affirmed the

7

dismissal of unjust enrichment and *quantum meruit* claims. 419 F. App'x 115, 119-20 (2d Cir. 2011). Although the court addressed the two claims separately, they were asserted by different parties and based on different facts, and the claim for unjust enrichment was not based on services rendered by the plaintiffs. Therefore, it has no relevance here. In addition, the court offered no discussion of *Snyder*, *Newman*, or *Mid-Hudson* or whether unjust enrichment and *quantum meruit* are meaningfully distinct theories of liability when the sole claim is for compensation for services rendered. The case certainly cannot shoulder the extraordinary weight plaintiffs would have it carry: namely, that by separately analyzing claims for *quantum meruit* and unjust enrichment, the Court *sub silentio* overruled, in an unpublished opinion, its own precedent that, in the context of a "quasi-contractual" claim, unjust enrichment and *quantum meruit* are identical. And, of course, this unpublished decision cannot serve as a counterweight to authoritative rulings of New York's highest court on an issue of state law.

      Nor do plaintiffs' other authorities stand for the proposition that plaintiffs' claims here are distinct. In *Kidz Cloz, Inc.* v. *Officially for Kids, Inc.*, the court dismissed unjust enrichment and *quantum meruit* claims on the same grounds, without analysis of whether the claims were separate remedies. 320 F. Supp. 2d 164, 177 (S.D.N.Y. 2004). And *Gidatex S.r.L.* v. *Campaniello Imports, LTD*, did not even involve a claim for *quantum meruit*. 49 F. Supp. 2d 298 (S.D.N.Y. 1999). Although the Court correctly noted that unjust enrichment does not always require proof of a reasonable expectation of compensation, the Court did not examine the issue presented here, namely, whether a plaintiff seeking compensation for services under a *quantum meruit* theory has a separate and distinct claim for unjust enrichment. *Id.* at 303. That question is answered in the negative by *Synder*, *Newman*, and *Mid-Hudson,* and no case cited by plaintiffs is to the contrary.

8

## II.
## THE EVIDENCE DOES NOT SUPPORT
## A FINDING OF UNJUST ENRICHMENT

As explained above, plaintiffs have no claim for unjust enrichment distinct from the *quantum meruit* claim upon which the verdict is based. The elements that plaintiffs must prove in order to recover under a quasi-contractual theory for services rendered, therefore, are the four elements of *quantum meruit*. As defendants have explained in their motion for judgment as a matter of law or, in the alternative, for a new trial, the evidence of each of those elements is insufficient to sustain the verdict on that claim. For the same reasons, even if the Court were to "reinstate" plaintiffs' unjust enrichment claim and assess the evidence against the general elements of unjust enrichment—an assessment that, according to the authority cited above, would be in error—the Court should conclude that the evidence is insufficient to satisfy those elements.

"A claimant seeking relief under a theory of unjust enrichment in New York must demonstrate (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Leibowitz*, 584 F.3d at 509 (internal quotation marks omitted). In addition, any award of damages must be based on the reasonable value of the services at issue. *Giordano* v. *Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) ("Recovery on [a claim of unjust enrichment] is limited to the reasonable value of the services rendered by the plaintiff.") (internal quotation marks and citation omitted). Defendants' motion for judgment as a matter of law or, in the alternative, for a new trial, demonstrates that the evidence is insufficient to establish that LA reasonably expected to be compensated for its activities under the MOU, that LA provided any services falling into the category for which the jury purported to find liability, or that a percentage of the revenues from the Whitney venture was an appropriate measure of the market value of LA's alleged services. Moreover, the motion demonstrates that the verdict in

9

*quantum meruit* was against the weight of the evidence and manifestly unjust. There is no need to restate those arguments here. Suffice it to say that the same evidence would fail to establish liability for unjust enrichment, even if the Court were to view the record through the prism of equity and good conscience.

In order to evaluate the equities of an unjust enrichment claim, the Court should examine the entirety of the circumstances, making a "realistic determination based on a broad view of the human setting involved." *McGrath* v. *Hilding*, 394 N.Y.S.2d 603, 606 (N.Y. 1977). Plaintiffs invite the Court to do just the opposite, zeroing in on a purported "lie" by Rich Dad that it was no longer pursuing the Whitney opportunity, Pls.' Br. at 15-17, an alleged plot by Rich Dad to "use" LA to arrange the Whitney venture while intending to "cut Learning Annex out under false pretenses," *id.* at 17, and an alleged cover-up of the Whitney deal, *id.* at 18-19. Even if the Court were to accept plaintiffs' improper invitation to view these allegations in isolation, the evidence does not support them.

Taking plaintiffs' allegations in turn:

Plaintiffs' characterization of the February 2, 2006 "termination" e-mail as a "lie" is inaccurate. What Lechter said was:

> The reason we are terminating our relationship is because we have not had the communication skills to make you understand our concerns. We are stopping our negotiations with Donald Trump and Russ Whitney. We will fulfill our commitment to the Dallas and San Francisco markets and PBS stations if you want. After that, we will no longer participate in your Expos. . . .

Ex. 132 (attached to Clayton Decl. of Sept. 22, 2011 as Exhibit 10).

In the context of an e-mail terminating the relationship between LA and Rich Dad, the natural reading of this statement is that Rich Dad would be ceasing its *joint* negotiations with LA and Trump and Whitney (just like it was ceasing its participation with LA in the Expos).

10

Lechter did not say that Rich Dad would not continue to pursue the Whitney venture on its own. To the contrary, Lechter testified that her e-mail was intended to "unplug[] the discussions that had been going on for a *three-way* deal." Tr. 420:19-20 (emphasis added). As the Court observed in granting summary judgment of LA's fraud claim, "regardless of the alleged false statements contained in [the Lechter] Email, RD could have unilaterally terminated the joint venture talks had it decided that it no longer wanted to work with LA." Summ. J. Op. at 36. There is no evidence to suggest that Lechter believed otherwise.

Plaintiffs' allegation that Rich Dad used LA to arrange the Whitney deal, all the while intending to cut LA out, Pls.' Br. at 17, is similarly unsupported by the evidence. For one thing, the argument vastly overstates the importance of LA to the negotiations between Whitney and Rich Dad. There is no evidence that LA provided any meaningful contribution to those negotiations beyond its arrangement of an initial meeting. Nor is there any evidence that LA had any right to be cut *into* the deal over Rich Dad's objection, even if LA were in a position to offer a meaningful contribution. As noted above and in defendants' motion for judgment as a matter of law or, in the alternative, for a new trial, the parties expressly agreed that defendants would not be bound to reach any agreement with LA. Moreover, Kiyosaki's testimony that he was "finished" with LA concerned his legitimate frustration and disappointment with Zanker's behavior in late 2005. Tr. 699:2-8, 808:5-20, 820:13-16. This behavior was undisputedly cause for concern; indeed, it prompted Zanker's elaborate *mea culpa*. That the parties resumed negotiations in the wake of Zanker's apology, but ultimately did not reach an agreement, is not evidence of bad faith. Plaintiffs' colorful allegation of being led down the "primrose path" is nothing but an unsupported effort to find something sinister in a failed business deal.

11

Similarly, plaintiffs' allegation that Rich Dad failed to "disclose" its continuing relationship with Whitney, despite "many opportunities" to do so, is hardly evidence of misconduct. Pls.' Br. at 18. Having decided not to work with LA in the free seminar business, Rich Dad had absolutely no reason—much less any obligation—to keep LA apprised of the progress of its negotiations with Whitney. Indeed, disclosing details of an ongoing negotiation would have been imprudent, if not a violation of confidentiality.

Significantly, moreover, LA has utterly failed to identify any evidence that it was harmed by the alleged misstatements and failures to disclose. As noted above, LA had no legal or contractual right to participate in Rich Dad's business venture with Whitney or to receive any compensation for its limited role in introducing these two parties. Thus, while LA complains that "Rich Dad had taken advantage of its concealment by procuring a (clearly ineffective) 'waiver' from Mr. Zanker," Pls.' Br. at 18, LA gave up nothing by that waiver. A party is not injured when it "waives" rights it did not have in the first place.

In sum, plaintiffs' allegations of bad faith are unsupported by the evidence, and insufficient to establish by a preponderance of the evidence that equity and good conscience require restitution in this case. Viewed as a whole, for the reasons explained in defendants' motion, the evidence establishes just the opposite: that it would be manifestly unjust to allow plaintiffs to recover any damages, and certainly not the massive windfall that the jury verdict represents.

## CONCLUSION

For the reasons above, the Court should deny plaintiffs' motion to reinstate their claim for unjust enrichment and for entry of judgment on that claim.

Dated: October 13, 2011

> Respectfully submitted,
>
> PAUL, WEISS, RIFKIND, WHARTON &
>   GARRISON LLP
>
>
> By: _____/s/ Lewis R. Clayton_____
>     Lewis R. Clayton (lclayton@paulweiss.com)
>     Daniel J. Leffell (dleffell@paulweiss.com)
>     John H. Longwell (jlongwell@paulweiss.com)
>
> 1285 Avenue of the Americas
> New York, New York  10019
> Tel.  (212) 373-3000
>
>
> LAW OFFICE OF JOHN D. RAPOPORT, P.C.
> John D. Rapoport
> 5 Hanover Square
> 4th Floor
> New York, New York 10022
> Tel.  (914) 588-3415
>
> *Attorneys for Defendants*