UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEARNING ANNEX HOLDINGS, LLC,
LEARNING ANNEX, LLC, and
LEARNING ANNEX, L.P.,

               Plaintiffs,

               v.

RICH GLOBAL, LLC and
CASHFLOW TECHNOLOGIES, INC.,

               Defendants.

09 Civ. 4432 (SAS) (GWG)

---

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
Lewis R. Clayton
Daniel J. Leffell
John H. Longwell
1285 Avenue of the Americas
New York, New York 10019
Tel.  (212) 373-3000

LAW OFFICE OF JOHN D. RAPOPORT,
 P.C.
John D. Rapoport
5 Hanover Square
4th Floor
New York, New York 10022
Tel.  (914) 588-3415

*Attorneys for Defendants*

i

**TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................................... 1

I. JUDGMENT AS A MATTER OF LAW IS WARRANTED ..................................... 2

    A.    Defendants' Motion Is Procedurally Proper ........................................... 2

    B.    Plaintiffs Failed To Prove a Reasonable Expectation of Compensation ................. 4

    C.    Plaintiffs Failed To Prove Relevant Services. ........................................ 8

    D.    Plaintiffs Failed To Prove the Reasonable Value of the Services at Issue. ............ 10

    E.    There Is No Basis for a Judgment Against CTI ..................................... 11

II. IN THE ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL ..................... 12

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Bus. Training* v. *Am. Mgmt. Ass'n*,
No. 0603909/2002, 2006 WL 5436824 (Sup. Ct. Feb. 2, 2006)........................9, 10

*Cunningham* v. *Merchant-Sterling Corp.*,
587 N.Y.S.2d 492 (Sup. Ct. 1991) ............................................................. 7, 8, 10

*Galdieri-Ambrosini* v. *Nat'l Realty & Dev. Corp.*,
136 F.3d 276 (2d Cir. 1998) ................................................................................3, 4

*Jordan Panel Sys. Corp.* v. *Turner Constr. Co.*,
841 N.Y.S.2d 561 (1st Dep't 2007) ........................................................................5

*Metro. Steel Indus., Inc.* v. *Citnalta Constr. Corp.*,
754 N.Y.S.2d 278 (1st Dep't 2003) ........................................................................5

*Patterson* v. *Balsamico*,
440 F.3d 104 (2d Cir. 2006) .................................................................................14

*SEC* v. *Princeton Econ. Int'l Ltd.*,
84 F. Supp. 2d 443 (S.D.N.Y. 2000).............................................................. 11, 12

*Wimmer* v. *Suffolk Cnty. Police Dep't*,
176 F.3d 125 (2d Cir. 1999) ...............................................................................2, 3

*Zikakis* v. *Staubach Retail Servs., Inc.*,
No. 04 Civ. 9609(NRB), 2005 WL 2347852 (S.D.N.Y. Sept. 26, 2005)................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50..........................................................................................................2, 3

Fed. R. Civ. P. 59.............................................................................................................4

# ARGUMENT

Plaintiffs tried this case on the theory that they deserved compensation for their "tireless" efforts to promote defendants' business. Now, after the jury's rejection of liability for plaintiffs' "promotional" efforts, as well as for the introduction to Whitney, plaintiffs are left attempting to inflate, in vain, the significance of their role. Thus, plaintiffs recount at the outset that they "interviewed and solicited proposals from potentially suitable licensees," "pushed Whitney to deliver a suitable proposal," and participated in three exploratory meetings. Opp. Br. at 5-6. This description prompts two fundamental questions. How can such evidence, which all revolves around the Whitney introduction (for which the jury found defendants *not* liable), support liability? And even if it could, how could such meager efforts possibly now be worth $20 million?

Plaintiffs' opposition provides no satisfactory answer to either question, or any of defendants' other challenges to the verdict. Instead, plaintiffs merely distort the evidence and misconstrue—or outright ignore—controlling law.

Plaintiffs have failed to identify evidence sufficient to support the jury's finding of liability in *quantum meruit*. Plaintiffs agreed in the Memorandum of Understanding ("MOU") that the parties would not be bound to each other prior to reaching a final agreement, and there is insufficient evidence the parties ever altered this understanding. Plaintiffs did not, therefore, have a reasonable expectation of compensation for services rendered in hopes of reaching that final agreement. In addition, the evidence is insufficient to support a finding that plaintiffs provided any services related to the development of the free seminar business other than the introduction of Rich Global and Whitney—services for which the jury expressly *rejected* liability. Plaintiffs also failed to establish the reasonable value of any such services.

1

Accordingly, plaintiffs have not refuted defendants' showing that they are entitled to judgment as a matter of law.

Plaintiffs have also failed to substantiate the windfall damages award. In light of the evidence that plaintiffs were, at most, an initial matchmaker and go-between to the parties, and never provided any additional value, it was manifestly unjust for the jury to award damages based on a substantial share of the royalties Rich Global received from that business over the course of five years. In reaching this unjust verdict, the jury was misled by confusing and prejudicial evidence and argument. The Court should therefore vacate the award and grant defendants' alternative motion for a new trial.

## I.
## JUDGMENT AS A MATTER OF LAW IS WARRANTED

A.  Defendants' Motion Is Procedurally Proper.

Plaintiffs raise a limited procedural objection, seeking to preclude defendants (on the Rule 50(b) motion only) from challenging the sufficiency of the evidence "(1) that LA had a reasonable expectation of compensation (Sec I.A of Rule 50(b) Motion), or (2) that LA provided services related to the development of the free seminar business other than introducing RD to Whitney (Sec. I.B of Rule 50(b) Motion)." Opp. Br. at 9. Incredibly, plaintiffs suggest that they were not sufficiently on notice of the lack of proof of these elements, such that defendants should be barred from attacking that proof in this motion. But because plaintiffs have neither shown that they lacked sufficient notice nor that they were prejudiced in any way, plaintiffs' procedural objection is meritless.

Although Rule 50(b) limits a renewed motion for judgment as a matter of law to grounds raised prior to the close of evidence, courts find this requirement satisfied where the non-moving party has adequate notice of the challenge. *See Wimmer* v. *Suffolk Cnty. Police*

2

*Dep't*, 176 F.3d 125, 136 (2d Cir. 1999) (holding that grounds for Rule 50(b) motion were preserved because it was "apparent that [opposing party's] counsel was alert to the alleged deficiencies in the case"); *see also* Opp. Br. at 9.  Where, as here, the initial motion is made orally, courts should evaluate it "in the context of the entire colloquy." *Wimmer*, 176 F.3d at 136.  Finally, where a plaintiff fails to identify evidence that it would have presented if it had been on notice of an argument, the objection should be denied for lack of prejudice. *Galdieri-Ambrosini* v. *Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 288 (2d Cir. 1998) (denying objection where "failure to specify the lack of proof . . . as a basis for its Rule 50(a) motion did not result in any prejudice").

Plaintiffs were on notice of defendants' arguments.  On their oral Rule 50(a) motion, defendants repeatedly argued that the parties were under no obligation to each other—a fact that defeats a reasonable expectation of compensation.  *See, e.g.*, Tr. 732:14-15 ("And there was never an obligation on the part of the Rich Dad group to go into that agreement."), 734:9-12 ("[W]e had the right to do it . . . we benefited from a deal we had a right to go into on our own.").  The Court independently pursued this issue with plaintiffs' counsel: "When they broke off the relationship and said we're done with you . . . [t]hey have a right to do that I would suppose if they don't act wrongfully." *Id.* 743:15-16, 18-19.  Defendants also attacked plaintiffs' expectation of compensation directly.  *See id.* 737:11-14 ("[Zanker] wasn't doing anything [for three years] because . . . [h]e knew there was nothing wrong with it, and at some point in time, he said, ah, let's take a shot because these guys made a lot of money."), 734:13-15 ("The cases further establish that time, efforts and other activities, as well as transaction costs are the risk that business parties undertake when negotiating a contract.").

3

In addition, defendants challenged the lack of proof of compensable services. *See* Tr. 869:20-23 ("I'll concede that they were doing business, but I don't see any proof anywhere that any of this business in any way was related to anything that Learning Annex did or is entitled to recover for."); *see also id.* 747-48 (plaintiffs' counsel arguing to the Court about what services plaintiffs performed). The special verdict form distinguished between the introduction to Whitney and other services "related to the development of the free seminar business." Plaintiffs were certainly on notice of the need to prove both.

Finally, plaintiffs have failed to identify any additional evidence they would have presented in support of either element. Because plaintiffs have not even attempted to demonstrate prejudice, and there is no conceivable basis for such a finding, the Court should reject plaintiffs' procedural objection. *Galdieri-Ambrosini*, 136 F.3d at 288. We also note that defendants' challenge to the sufficiency of plaintiffs' proof is equally relevant to defendants' alternative motion for a new trial under Rule 59, to which plaintiffs' procedural objection is inapplicable.

B.  **Plaintiffs Failed To Prove a Reasonable Expectation of Compensation.**

Defendants' opening brief identified two fatal shortcomings in plaintiffs' proof of a reasonable expectation of compensation for any services provided under the MOU. *First*, plaintiffs failed to introduce evidence sufficient to overcome the MOU's clear statement of the parties' intent not to be bound. Absent such evidence, the MOU controls, and plaintiffs proceeded at their own risk. *Second*, the only evidence of plaintiffs' expectation of compensation was Zanker's testimony that he wanted to participate in the free seminar business. But as a matter of New York law, a party's hope that it might participate in a business opportunity is not a reasonable expectation of compensation under *quantum meruit*. Plaintiffs have no convincing answer to either of these problems.

4

1.     **Plaintiffs Fail To Overcome the MOU.**

Plaintiffs do not contest, nor could they, the settled rule of New York law that courts will not impose obligations upon parties contemplating a transaction who have expressly agreed *not* to be bound to each other pending negotiation of formal terms. *See Jordan Panel Sys. Corp.* v. *Turner Constr. Co.*, 841 N.Y.S.2d 561, 562 (1st Dep't 2007). Nor do plaintiffs take issue with the core legal principle that a party may not use a claim in *quantum meruit* to attempt to circumvent an agreement not to be bound. *See id.* at 572-73; *Metro. Steel Indus., Inc.* v. *Citnalta Constr. Corp.*, 754 N.Y.S.2d 278, 279 (1st Dep't 2003).[1] Therefore, there is no dispute that plaintiffs' claim depends on evidence sufficient to show that—after providing in the MOU that neither party would have any obligation to the other pending negotiation of a formal agreement—the parties subsequently reached a *different* understanding. Yet plaintiffs have failed to identify evidence sufficient to support a finding that they reasonably expected compensation despite the non-binding nature of the MOU. *See* Opp. Br. at 12-13.

Plaintiffs first rely on evidence showing only that plaintiffs were *authorized* by defendants to explore the free seminar business with third parties, not that they would be compensated for doing so. Thus, plaintiffs cite: (1) the MOU's statement that LA was "allow[ed] . . . to commence negotiations with third parties"; (2) defendants' email to Zanker confirming such authorization; (3) Zanker's email to a third party noting that defendants had "agreed to allow" him to explore the free seminar business; and (4) defendants' instruction to

---

[1]  Plaintiffs are wrong that, according to the Second Circuit's opinion in *Longo*, "an 'intent not to be bound' does not preclude a finding of reasonable expectation of compensation for *quantum meruit*." Opp. Br. at 13 (citing *Longo* v. *Shore & Reich Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994)). As the court in *Jordan Panel* noted, "the Second Circuit's decision does not indicate that the plaintiff in [*Longo*] was ever told that she would not be compensated for work performed in the absence of a signed written agreement." 841 N.Y.S.2d 561, 572 n.13 (1st Dep't 2007). Here, of course, that is precisely what the MOU provided. Ex. 41A at 2 (attached to Clayton Decl. of Sept. 22, 2011 as Exhibit 1).

Zanker to "discontinue any negotiations you are involved in on our behalf" (and unsent drafts to the same effect). According to plaintiffs, this evidence shows that defendants had "knowledge that LA was performing" under the MOU. *Id.* at 12. But here, plaintiffs conflate a mere awareness by defendants that plaintiffs were taking actions in the wake of the MOU, on the one hand, with an understanding that (contrary to the MOU) defendants would be bound to *compensate* the plaintiffs for such actions, on the other. Without additional evidence, the latter cannot reasonably be inferred from the former.

Defendants have never disputed that they were aware that plaintiffs were taking action in the wake of the MOU. But this does not support a reasonable expectation of compensation. Agreeing that a party may act on one's behalf is not the same as agreeing that the party will be compensated for doing so. That distinction is clear from the face of the MOU, which at once granted plaintiffs the authority to pursue certain activities on behalf of the defendants while, at the same time, stating plainly that neither party would be bound to the other pending further negotiations. If merely acting on another's behalf under a non-binding agreement could support a reasonable expectation of compensation, parties would never be able to agree not to be bound pending negotiation of a formal agreement.

Plaintiffs also rely on Zanker's so-called "waiver email." *Id.* at 13. This document simply cannot carry the weight plaintiffs want it to. To the contrary, Zanker's statement that he would "accept whatever you deem appropriate, if anything" for services under the MOU indicates that he did *not* believe he had any right to compensation for any services he had performed. If he had believed otherwise, presumably he would have said so, regardless whether or not he thought defendants were continuing to pursue the free seminar business.

6

At most, plaintiffs' argument that Zanker sent the email only because he "wrongly believed . . . that there would be no free seminar business," *id.* at 13 n.6, shows that Zanker's expectation of compensation was contingent upon the successful negotiation of a three-way deal. And that *contingent* expectation gets plaintiffs nowhere. For one thing, as we have demonstrated, an expectation of compensation that is contingent upon a new business coming to fruition is insufficient to support a *quantum meruit* claim as a matter of New York law. (*See* Section I.B.2, *infra*.) For another thing, Zanker's expectation of compensation *only* in the event that the parties reached a final agreement on the free seminar business is perfectly consistent with the MOU. The email thus makes clear that Zanker did not believe the parties had reached any understanding contrary to the MOU, and confirms that, prior to reaching a formal agreement, Zanker knew that he was acting at his own risk.

2. **Plaintiffs' Hope of Participating in the Free Seminar Business Cannot, as a Matter of Law, Support a Reasonable Expectation of Compensation.**

Plaintiffs fail to distinguish the line of authority, identified in defendants' opening brief, which holds that a party's expectation of participating in a new business venture does not, as a matter of law, establish a reasonable expectation of compensation for a party's efforts to bring that opportunity to fruition. *See, e.g., Cunningham* v. *Merchant-Sterling Corp.*, 587 N.Y.S.2d 492, 494 (Sup. Ct. 1991) ("The mere fact that parties spend time on negotiations relating to a business idea will not give rise to an unjust enrichment claim." (citations omitted)). Because plaintiffs make no effort to identify evidence that they expected any other form of compensation, this legal rule is an independent bar to plaintiffs' claim.

Plaintiffs' only answer is to mischaracterize the rule of *Cunningham* and the other cases upon which defendants rely as being limited to "failed businesses." Opp. Br. at 14-15. But none of the cases so limits its reasoning, and there is no logical basis for such a limitation. As

the court in *Cunningham* observed, entrepreneurs often invest time and resources seeking to participate in deals, and are frequently rebuffed by potential business partners. 587 N.Y.S.2d at 494. The point of *Cunningham* and similar cases is that a quasi-contract claim is not a vehicle for insurance against such common marketplace disappointments. It is a basic fact of business life that efforts expended by parties in hopes of profiting from a new venture are often for naught. Indeed, in *Cunningham*, as here, a potential business partner sought compensation from two other parties who allegedly cut the plaintiff out of a deal that plaintiff claimed he had conceived. *Id.* at 493-94. The court held that, as a matter of law, the plaintiff's hope of profit from being included in the venture did not suffice to establish a reasonable expectation of compensation when he was excluded. *Id.* at 494. In this connection, contrary to plaintiffs' argument, the court did not base its decision on the lack of profitability of the new venture.

C.  **Plaintiffs Failed To Prove Relevant Services.**

Defendants' opening brief demonstrates that the evidence of services *for which the jury found defendants liable* is legally insufficient to support the verdict. Unable to combat this argument on its terms, plaintiffs misconstrue it. Thus, plaintiffs incorrectly accuse defendants of arguing that the "'jury was not provided with **any** evidence' as to the services LA performed." Opp. Br. at 11 (emphasis in original). That is not what defendants argue. Rather, all of plaintiffs' evidence relates to services for which the jury rejected plaintiffs' claim (*i.e.*, promotional services and the introduction to Whitney). On the issue of services related to the development of the free seminar business *other than* the Whitney introduction, the record is empty.

Plaintiffs' brief only confirms this. At each point at which plaintiffs attempt to substantiate the evidence of plaintiffs' contribution to the free seminar business, they refer only to the introductory conversations and exploratory meetings with Whitney in late 2005 and early

8

2006. *Id.* at 1, 5-7, 10-11, 19. Although plaintiffs unconvincingly characterize this as "extensive dealings" and "significant services," *id.* at 7, 10, they cannot escape the fact that it all falls into the category of bringing the parties together—a category for which the jury found Rich Global not liable.

No doubt aware of this problem, plaintiffs also argue that they were responsible for introducing defendants to the very *concept* of the free seminar business—an idea they allegedly "conceived and designed." *Id.* at 11; *see also id.* at 1 (LA "conceived the idea that RD would be paid a 10% royalty"). The evidence directly contradicts this assertion. The free seminar business model was no secret: several prominent companies in the seminar industry— including Whitney, of course—pursued that business model well before Zanker began pitching it to defendants. Zanker himself testified that the Kiyosakis were previously familiar with the free seminar business. Tr. 345:18-20; *see also id.* 677:2-6 (Kiyosaki). Even according to plaintiffs, Zanker's contribution was not the idea of the business model, but "convincing" the Kiyosakis to pursue it. Opp. Br. at 18; *see* Tr. 61:1-9. The Kiyosakis were familiar with the free seminar business model, but were concerned about the potentially negative impact of allowing third parties to communicate their message. Tr. 61:1-19.

Plaintiffs' argument runs headlong into a voluminous body of case law holding that a party may not recover for providing an "idea," whether through a claim of *quantum meruit*, misappropriation, or otherwise, unless that idea meets a stringent novelty test. Court after court has rejected such claims on the ground that the purported "idea" is not sufficiently novel. *See, e.g., Zikakis* v. *Staubach Retail Servs., Inc.*, No. 04 Civ. 9609(NRB), 2005 WL 2347852, at *3 (S.D.N.Y. Sept. 26, 2005) (idea to form real estate investment trust comprised of sale-leaseback transactions not novel); *Am. Bus. Training* v. *Am. Mgmt. Ass'n*, No. 0603909/2002, 2006 WL

9

5436824, at *6 (Sup. Ct. Feb. 2, 2006) (idea for finance courses not novel); *Cunningham*, 587 N.Y.S.2d at 494 (idea to run yacht charter company not novel). This is so *regardless* whether the defendant had previously known of the concept. *See Cunningham*, 587 N.Y.S.2d at 494. Familiarity of the concept in the market is all that is required to defeat a claim of novelty. *See, e.g.*, *Am. Bus. Training*, 2006 WL 5436824, at *7 (idea for finance courses not novel where "other organizations . . . and universities offered similar courses"). Plaintiffs have utterly failed to clear this novelty hurdle.

**D.    Plaintiffs Failed To Prove the Reasonable Value of the Services at Issue.**

Having offered expert testimony on a grab bag of purported entertainment industry practices in an effort to establish a "clear and accepted marketplace convention" upon which the jury could value the services at issue, plaintiffs now act as if it was obvious all along that Zanker was acting as a "licensing representative" who should be entitled to 35 percent of the royalties Rich Global earned over the life of the free seminar business. But it is too late for plaintiffs to settle on a theory that the evidence will not support.

As an initial matter, plaintiffs ignore the general rule that the value of a plaintiff's services in *quantum meruit* should not be determined by reference to a defendant's profits except in the narrowest of circumstances. *See* Mot. at 13. In attempting to establish a marketplace convention applicable to plaintiffs' services, plaintiffs faced a heavy burden both to identify with precision the services at issue and to establish the "clear and accepted" standard of compensation for such services in the market. Instead, plaintiffs presented evidence on a wide range of alleged services and potential talent-management relationships, the vast majority of which has been swept away by the verdict as irrelevant.

The evidence that remains is insufficient to support either the role of a licensing representative or a finding that plaintiffs fulfilled it. Matlins provided only vague testimony that

10

a licensing representative attempts to "monetize" a brand through licensing—a description so general that it hardly took an expert to provide it. Plaintiffs, similarly, point only to testimony that Zanker desired to take Rich Dad to the "next level" and "make some real money." Opp. Br. at 18. These hortatory goals might be expressed by *any* potential business partner. Attempting to bolster this evidence, plaintiffs argue that Zanker "spent over two years convincing RD that the free seminar business would provide an opportunity." *Id.* But plaintiffs have already conceded that their claim is based only on services performed under the MOU, not during the two years prior to it. Tr. 936-37.

In short, having failed to settle at trial on the theory that Zanker was a licensing representative, and thus having presented almost no evidence to support that theory, plaintiffs must now live with the consequences: they have not established the reasonable marketplace value of any alleged services they performed related to the development of the free seminar business.

### E. There Is No Basis for a Judgment Against CTI.

*Quantum meruit* provides relief to a party who has conferred a benefit on another. Plaintiffs' claim against CTI is fatally defective because there is no evidence that CTI actually benefited from the free seminar business. At trial, plaintiffs' sole evidence of benefit to CTI relating to plaintiffs' services consisted of a spreadsheet purporting to show that CTI earned revenues from plaintiffs' *coaching and seminar services.* Ex. 197 (attached to Clayton Decl. of Sept. 22, 2011 as Exhibit 17). The jury rejected liability for such services. There is no evidence that any revenues from the Whitney venture ever went to CTI. Plaintiffs do not dispute this lack of evidence—instead merely speculating that CTI "must" have benefited. Opp. Br. at 15. That is fatal to their claim against CTI. *See, e.g., SEC* v. *Princeton Econ. Int'l Ltd.*, 84 F. Supp. 2d

11

443, 447 (S.D.N.Y. 2000) (denying recovery in *quantum meruit* where claim was not properly brought against the party upon whom there were "benefits conferred").[2]

## II.
## IN THE ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL

Defendants' alternative request for a new trial is based on (1) the lack of evidence of the elements of *quantum meruit*, as explained in the motion for judgment as a matter of law, and (2) the manifestly unjust and speculative nature of the jury's massive and unsupported damages award. We focus here on the latter argument.

We respectfully submit that, when one compares the evidence at trial of plaintiffs' contribution to the free seminar business with the jury's award of more than one third of the royalty revenues from that business over five years, the conclusion is inescapable that the jury reached an unfair result. Most generously construed, plaintiffs' evidence shows only that they played a role in bringing together two parties who went forward without plaintiffs' involvement. If the parties had concluded that plaintiffs had something more to offer, and would be reliable business partners, presumably they would have involved plaintiffs in the new venture. But what emerged from the parties' initial, exploratory meetings was that Zanker was a redundant middle man, and difficult and untrustworthy to boot. *See* Ex. 99 (Zanker apology letter: "I have only myself to blame. . . . I made people like the Rich Dad organization angry. I was not listening.") (attached to Clayton Decl. of Sept. 22, 2011 as Exhibit 5); Tr. 531:25-532:3 (Kane: "[Whitney] had a number of issues, challenges we faced in our relationships [with Learning Annex]."). The parties recognized that the core components of the business were the Kiyosakis' intellectual property and Whitney's marketing and seminars. Zanker was unnecessary. The parties went on

---

[2] Plaintiffs' argument against permitting wrongdoers to channel "ill-gotten gains" to "a new legal entity," Opp. Br. at 16, has no application here, where the entity that received all the profits for which plaintiffs sought damages is a defendant in the case.

12

to invest valuable assets, take risk, deploy management expertise, and incur operational expense—none of which came from plaintiffs. At best, plaintiffs played the role of matchmaker, nothing more. But they were compensated, unfairly, by the jury as a full partner in the business.

On this motion, we have identified several reasons why the jury likely went astray. In the end, however, the reason for the jury's error is not as important as the conclusion that the verdict is manifestly unfair. Although plaintiffs (unconvincingly) dispute our arguments about what went wrong, they cannot credibly deny that *something* did.

Plaintiffs cannot (and do not) deny that they urged the jury to base its award of damages on Zanker's testimony that he typically received a "50 to 90 percent" cut of any deal, and also implied that such a cut was suggested by the MOU's reference to a "split" of revenues. Plaintiffs do not dispute that Zanker was referring to his irrelevant Expo agreements, and that, in any event, his testimony was not admissible for establishing a market convention. Rather, they suggest that the jury likely disregarded such evidence and that it was not prejudicial. Opp. Br. at 22. This half-hearted defense is disingenuous, considering that plaintiffs made the evidence of the "50-90 split" the centerpiece of their summation on damages.

The Matlins and Soudry testimony was also confusing and misleading. As explained above, Matlins provided too many allegedly relevant "marketplace conventions," and spread his testimony too thin, for the jury reasonably to conclude that any particular role was applicable. Plaintiffs attempt to shift the blame for their lack of sufficient evidence to the Court's order providing that the jury should consider a "range of commissions." *Id.* at 23 (emphasis omitted). But in permitting Matlins to testify about more than one potentially relevant industry standard, the Court hardly relieved plaintiffs of their burden to present sufficient evidence of each.

13

Soudry's "summary" testimony about the revenues associated with the free seminar business over five years was also prejudicial. Plaintiffs' only response is to suggest that information cannot be misleading if it is in "public securities filings." *Id.* at 23 n.16. This misses the point. In a case in which plaintiffs' damages claim was based solely on a percentage of royalties, it was inflammatory for the jury to consider the $450 million in *gross* revenues of the entire enterprise, an amount ten times the royalty total and not reflective of the profitability of the business. *See* Tr. 137-38 (Kiyosaki discussing Whitney's financial problems).

Finally, plaintiffs' argument that the verdict can survive scrutiny under New York's *remittitur* rule misunderstands the Court's role under that provision. Plaintiffs contend that the Court should not measure the verdict against damages awards in finder's fee cases because the jury did not calculate damages based on a finder's fee percentage. But in reviewing the damages award for excessiveness, the Court should not defer to the jury's approach; to the contrary, such review is to be independent. *Patterson* v. *Balsamico*, 440 F.3d 104, 122 (2d Cir. 2006). For the reasons explained in our opening brief and above, the evidence can at most support a finding that Zanker played a role in bringing Rich Global and Whitney together. The finder's fee cases therefore provide the relevant benchmark.

Using those cases as a benchmark, the excessiveness of the jury's award of damages, which exceeds by ten times the typical award, is clear. *See* Mot. at 23. Plaintiffs' only response—that the award can be saved by applying the typical finder's fee rate to the gross revenues of the entire free seminar enterprise—misses the mark. The three-to-five percent finder's fee must be based on the value of the transaction "found." Here, plaintiffs claim to have found a sub-licensee for the Kiyosakis' intellectual property. Thus, the royalty revenues provide the appropriate source of the finder's fee. Indeed, plaintiffs' current argument that damages

based on a finder's fee would be at the low end of the jury award is inconsistent with their position at trial, and on this motion, that plaintiffs acted as "much more" than a finder.

## CONCLUSION

For the reasons stated above and in defendants' opening brief, the Court should enter judgment as a matter of law in favor of defendants or, in the alternative, order a new trial or *remittitur*.

Dated: October 27, 2011

>Respectfully submitted,
>
>PAUL, WEISS, RIFKIND, WHARTON &
>  GARRISON LLP
>
>
>By: ___/s/ Lewis R. Clayton_____
>    Lewis R. Clayton (lclayton@paulweiss.com)
>    Daniel J. Leffell (dleffell@paulweiss.com)
>    John H. Longwell (jlongwell@paulweiss.com)
>
>1285 Avenue of the Americas
>New York, New York 10019
>Tel.  (212) 373-3000
>
>
>LAW OFFICE OF JOHN D. RAPOPORT, P.C.
>John D. Rapoport
>5 Hanover Square
>4th Floor
>New York, New York 10022
>Tel.  (914) 588-3415
>
>*Attorneys for Defendants*