UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEARNING ANNEX HOLDINGS, LLC, LEARNING ANNEX, LLC, and LEARNING ANNEX, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> RICH GLOBAL, LLC and CASHFLOW TECHNOLOGIES, INC., <br><br> Defendants. | 09 Civ. 4432 (SAS) (GWG) |

# DEFENDANT RICH GLOBAL LLC'S PROPOSED PRELIMINARY INSTRUCTION, REQUESTS TO CHARGE, AND VERDICT FORM

PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
Lewis R. Clayton
Daniel J. Leffell
John H. Longwell
1285 Avenue of the Americas
New York, New York 10019
Tel.  (212) 373-3000

*Attorneys for Defendant*

**Defendant's Request for Preliminary Instruction:**

This case involves a claim by Learning Annex against Rich Global for reasonable compensation for certain services related to the development of a business that was created by Rich Global and a third party, a company called Whitney.

At the time relevant to this case, Learning Annex was in the business of hosting and promoting events at which speakers appeared.

Rich Global LLC is a company formed by Robert and Kim Kiyosaki for the purpose of entering into a joint venture with Whitney. Robert Kiyosaki is the author of the *Rich Dad, Poor Dad* series of personal finance books.

Whitney, now called Tigrent, is a company that provides seminars and educational services using the so-called "free seminar" business model, in which customers are offered a free preview before enrolling in paid courses.

In mid-2006, Rich Global and Whitney formed a joint venture called Rich Dad Education, in which Whitney provided seminars, using the "free seminar" model, about Mr. Kiyosaki's financial philosophy, as described in his books.

Learning Annex claims that between September 2005 and February 2006, Learning Annex provided certain services to Rich Global that were related to the development of the Rich Dad Education venture between Rich Global and Whitney.

In this case, you will be asked to decided what, if any, is the reasonable value of the services provided by Learning Annex that are related to the development of the free seminar business.

**Defendant's Request to Charge No. 1:**

**Determination of the Reasonable Value of Services Rendered**

Your job is to determine the reasonable value of services Learning Annex provided to Rich Global related to the development of the free seminar business.[1] The reasonable value of services rendered is usually based on an hourly rate for the amount of time that the services are rendered.[2] There are, however, exceptions to the usual practice of awarding damages on the basis of an hourly rate when clear and accepted marketplace conventions establish a different method of compensation.[3]

Rich Global asks you to calculate the reasonable value, if any, of the services related to the free seminar business by reference to the usual method of compensation, that is, based on an hourly rate. Learning Annex, on the other hand, asks you to calculate the reasonable value of services by reference to a percentage of Rich Global's revenues.

---

[1] Tr. at 998:25-999:1 (Citations to "Tr." refer to the transcript of the Court's instructions to the jury in the initial trial.); *Learning Annex Holdings, LLC* v. *Rich Global, LLC*, No. 09 Civ. 4432(SAS), 2012 WL 92281, at *3 (S.D.N.Y. Jan. 11, 2012.

[2] Tr. at 1000:13-18.

[3] *Id.*

**Defendant's Request to Charge No. 2:**

**Damages Based on Percentage of Defendant's Revenues**

Although the defendant's revenues are not typically relevant to determining the reasonable value of services rendered by the plaintiff,[4] as I have mentioned there are exceptions to this general rule.

To be entitled to damages on the basis of a percentage of Rich Global's revenues, Learning Annex must prove by a preponderance of the evidence: (1) a clear and accepted marketplace convention under which certain services are compensated based on a percentage of revenues; and (2) that Learning Annex performed those services such that it is appropriate to determine the compensation to which Learning Annex is entitled by reference to Rich Global's revenues.[5]

In determining whether Learning Annex has proved a clear and accepted marketplace convention in the licensing industry, you may consider whether agreements by participants in the industry follow this convention.[6] If you find that such agreements do not follow any well-established convention, but vary in defining the scope of services provided, the length of time over which the services are to be delivered, and the amounts of fees and incentive payments that the licensor agreed to pay, then you should determine that there is no clear and accepted marketplace convention.[7]

---

[4] *See Mem'l Drive Consultants, Inc.* v. *Ony, Inc.*, 29 F. App'x 56, 61 (2d Cir. 2002); *Davis* v. *Cornerstone Tel. Co., LLC*, 910 N.Y.S.2d 254, 256 (N.Y. App. Div. 3d Dep't 2010); *Collins Tuttle & Co., Inc.* v. *Leucadia, Inc.*, 544 N.Y.S.2d 604, 605 (N.Y. App. Div. 1st Dep't 1989).

[5] Tr. at 1000:23-1001:4.

[6] *Carlino* v. *Kaplan*, 139 F. Supp. 2d 563, 566 (S.D.N.Y. 2001).

[7] *Id.*

If Learning Annex fails to prove that a clear and accepted marketplace convention exists for compensation of licensing agents, or that the particular services Learning Annex provided are not the same as those of a licensing agent, it would be improper for you to award damages on the basis of a percentage of Rich Global's revenues, because you would essentially be writing a contract for the parties where none was written.[8]  If no clear and accepted marketplace convention applies, then you should measure compensation to Learning Annex based on a reasonable hourly rate multiplied by the number of hours Learning Annex provided services to Rich Global, plus reimbursement of expenses reasonably and appropriately incurred in the delivery of the services.[9]

---

[8]  Tr. at 1001:4-8; *See Mem'l Drive Consultants,* 29 F. App'x at 61; *Carlino,* 139 F. Supp. 2d. at 565-66.

[9]  *Carlino,* 139 F. Supp. 2d. at 566.

**Defendant's Request to Charge No. 3:**

**Calculation of Interest**

If you award damages to Learning Annex on its claim, then Learning Annex will also be entitled to interest under New York Law.[10]  It is your job to determine the date from which such interest should begin accruing.[11]  That date should be the earliest ascertainable date on which the claim existed, but if you cannot ascertain that date with precision, the computation should be from the earliest time at which it may be said that damages were incurred.[12]

---

[10]   Tr. at 1001:11-19; *see* N.Y. Civ. Prac. Law §5001(b).
[11]   *Id.*
[12]   *Id.*

**Defendant's Proposed Verdict Form**

1. Has Learning Annex proved, by a preponderance of the evidence, that in providing services related to the development of Rich Global's free seminar business with Whitney, Learning Annex acted as a licensing agent?

    YES _____       NO _____

    **If "NO," skip to Question 4.**

    **If "YES," answer Question 2.**

2. Has Learning Annex proved, by a preponderance of the evidence, a clear and accepted marketplace convention for compensation of a licensing agent?

    YES _____       NO _____

    **If "NO," skip to Question 4.**

    **If "YES," answer Question 3.**

3. What is the reasonable value of services related to the development of the free seminar business, as provided by Learning Annex to Rich Global, based on a percentage of Rich Global's revenues?

    $ _____

    **Answer either Question 3 or Question 4, not both.**

4. What is the reasonable value of services related to the development of the free seminar business, as provided by Learning Annex to Rich Global, based on an hourly rate?

    $ _____

    **Answer either Question 3 or Question 4, not both.**