UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LEARNING ANNEX HOLDINGS, LLC,
LEARNING ANNEX, LLC, and
and LEARNING ANNEX, L.P.,

               Plaintiffs,

       - against -

RICH GLOBAL, LLC and
CASHFLOW TECHNOLOGIES, INC.,

               Defendants.
-------------------------------------------------------------------x

09-CV-4432 (SAS/GWG)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE*

Jonathan Harris
Julie Withers
Alexander Sakin
Harris & Houghteling LLP
111 Broadway, Suite 402
New York, New York 10006
Tel. (212) 397-3370
Fax (212) 202-6206
Jon@harrislawny.com

Edwin G. Schallert
Michael Schaper
Megan K. Bannigan
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

David Deitch
Ifrah PLLC
1717 Pennsylvania Ave, NW, Suite 650
Washington DC 20006
*Attorneys for Plaintiffs*

23626675v1

**Table of Contents**

ARGUMENT ....................................................................................................................4

I.      Evidence Relating to Rich Dad's Purported Justifications for Terminating its
        Relationship with Learning Annex and Cutting Learning Annex out of the
        Business Deal with Whitney Should be Excluded...............................................4

II.     The Testimony of Thomas Pastore Regarding Conversations with a Non-
        Testifying Expert Should be Excluded ...............................................................8

III.    The New Trial Should Be Limited to the Witnesses and Exhibits Presented at the
        First Trial ..........................................................................................................12

IV.     Evidence Related to the Reasonable Value of Services Should Be Weighed by the
        Jury....................................................................................................................15

CONCLUSION..............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438 (10th Cir. 1993)................................10

*Holder v. Westgate Resorts Ltd.*, 356 S.W.3d 373 (Tenn. 2011)..................................9

*Jung v. Neschis*, No. 01-6993, 2007 WL 5256966 (S.D.N.Y. October 23, 2007).........................6

*Learning Annex v. Rich Global*, No. 09-CV-4432..........................................3, 8

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007) (Scheindlin, J.) ...........................................................................6, 8

*Martin's Herend Imp., Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765 (5th Cir. 1999) ...........................................................................10

*Medism Ltd. v. Bestmed LLC*, No. 10-2463, 2012 WL 718041 (S.D.N.Y. Mar. 6, 2012) (Sheindlin, J.) ...........................................................................6

*Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398 (6th Cir. 2007) ......................6

*Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1 (2d. Cir. 1996)............................3

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97-5696, 2003 WL 22902604 (N.D. Ill. Dec. 8, 2003) ...........................................................................10, 11

*Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105 (2d Cir. 2004) ........................12

*United States v. Dinero Express, Inc.*, 57 Fed. Appx. 456 (2d Cir. 2002)....................13

*United States v. Grey Bear*, 883 F.2d 1382 (8th Cir. 1989) .............................7

*United States v. Jennings*, 63 Fed. Appx. 35 (2d Cir. 2003) .............................13

*United States v. Orenguga*, 430 F.3d 1158 (D.C. Cir. 2005).............................4

*United States v. Tran Trong Cuong*, 18 F.3d 1132 (4th Cir. 1994).............................6

*Whitehead v. K Mart Corp.*, 173 F.Supp. 2d 553 (S. D. Miss. 2000)............................10

**OTHER AUTHORITIES**

Fed. R. Evid. 402 ...........................................................................2, 3

Fed. R. Evid. 403 ...........................................................................2, 3, 4

Fed. R. Evid. 703 ...........................................................................6, 7, 9

Fed. R. Evid. 801(c).................................................................................................................5

The Learning Annex, L.P., Learning Annex Holdings, LLC and Learning Annex, LLC (together, "Learning Annex") respectfully submit this memorandum of law in support of their motion *in limine* to (1) exclude evidence relating to Rich Dad's purported justifications for terminating its relationship with Learning Annex and cutting Learning Annex out of the business deal with Whitney; (2) preclude any testimony by Thomas Pastore (Rich Dad's testifying expert) regarding conversations with a non-testifying expert; (3) preclude Rich Dad from offering testimony from additional witnesses and exhibits not previously offered at the first trial; and (4) admit evidence demonstrating that Learning Annex and Rich Dad contemplated the reasonable value of Learning Annex's services to be 60% of all compensation received by Rich Dad with respect to the free seminar business.

## ARGUMENT

I.   **Evidence Relating to Rich Dad's Purported Justifications for Terminating its Relationship with Learning Annex and Cutting Learning Annex out of the Business Deal with Whitney Should be Excluded**

Learning Annex moves to exclude the admission of evidence relating to Rich Dad's purported justifications for terminating its relationship with Learning Annex and cutting Learning Annex out of the business deal with Whitney.  This includes evidence about:  (1) the parties' disagreement in late December 2005 and early 2006 which arose primarily from a disputed book deal with Donald Trump and a contentious PBS

appearance; (2) various letters, emails and deposition testimony relating to this dispute;[1] (3) the conversation with Terrell Cass of PBS; and (4) any other purported justifications for Rich Dad's termination of its relationship with Learning Annex.  This evidence is not relevant to the sole issue in the new trial—damages for the value of the services performed by Learning Annex—and would only serve to re-open the door to a full retrial on liability.  To the extent that any of this evidence is remotely relevant, it is more prejudicial than probative and would require Learning Annex to respond with evidence, as it did in the first trial, demonstrating that Rich Dad's purported justifications for terminating its relationship with Learning Annex were entirely pretextual.  In fact, Rich Dad's conduct was designed to avoid sharing the expected revenues from the Whitney deal.[2]

Evidence relating to Rich Dad's purported justifications for terminating its relationship with Learning Annex should be excluded under Rules 402 and 403 of the

---

[1]   Defendants have already designated deposition testimony of Sharon Lechter that goes precisely to this point.  *See, e.g.,* Joint Pre-Trial Order, Exhibit B, Rich Dad Exhibit DD, Lechter Deposition Tr. at 52:11-53:21.

[2]   At trial Learning Annex introduced substantial evidence demonstrating that Rich Dad's purported justifications were pretexts, including evidence that: (1) Mr. Kiyosaki demanded and received an apology from Bill Zanker; (2) Mr. Kiyosaki accepted that apology; (3) the parties continued to meet about and with Whitney after the dispute and the apology; (4) Rich Dad wrote draft letters that were never sent purporting to terminate Learning Annex for different and conflicting reasons; and (5) the decision to cut Learning Annex out was made after receipt of the Whitney projections.

Federal Rules of Evidence.  Under Rule 402 "[e]vidence which is not relevant is not

admissible."  In a trial such as this one, that is limited to a single issue of damages, only

evidence going to those damages is relevant.  *See Pescatore v. Pan Am. World Airways,*

*Inc.*, 97 F.3d 1, 16 (2d. Cir. 1996) (where the only issue before the jury is compensatory

damages, only evidence relating to those damages is relevant).  Here, the damages are the

value of the uncompensated services Learning Annex provided in relation to the

development of a free seminar business for Rich Dad.  *See Learning Annex v. Rich*

*Global*, No. 09-CV-4432 (dkt. 142) Jan. 11, 2012 Opinion and Order (ordering new trial

on damages only).  The Donald Trump book, the contentious PBS appearance, the

argument with Terrell Cass and the other justifications offered by Rich Dad at the first

trial for terminating its relationship with Learning Annex are unrelated to the free

seminar business and have no bearing on the value of the services Learning Annex

provided in the development of that business.

Even if this evidence were somehow relevant to the issue of damages (which it is

not) the evidence should nevertheless be excluded under Rule 403 because it creates a

risk of unfair prejudice, confusion and is a waste of time that outweighs any potential

probative value.  *See* Fed. R. Evid. 403 ("evidence may be excluded if its probative value

is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, waste of time . . . ").

First, in a trial limited to the value of services rendered in the development of the

free seminar business, evidence about disputes arising in other lines of business and the

purported justifications for cutting Learning Annex out of the business is unfairly prejudicial. "The gravamen of unfair prejudice is 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.'" *United States v. Orenguga*, 430 F.3d 1158, 1165 (D.C. Cir. 2005) (quoting Fed. R. Evid. 403 advisory committee's note). Here, any attempt to offer such evidence which, if relevant at all, goes solely to liability would be unfairly prejudicial to Learning Annex because it would serve only to suggest to the jury that it should give Learning Annex a smaller recovery based on these events rather than award damages based on the reasonable value of the services rendered.

Second, such evidence is likely to confuse the jury. This is a damages only case. The jury will not be asked to determine liability and will be instructed that the only matter before it is the amount of damages. Admitting evidence that goes to liability would leave the jury guessing why those issues matter.

Third, admitting this evidence would threaten to extend the trial by several days and waste the Court's and the jury's time. If Rich Dad is permitted to introduce evidence relating to its purported justifications for terminating its relationship with Learning Annex and cutting Learning Annex out of the business deal with Whitney, Learning Annex will be forced to respond with its own evidence (set forth in footnote 1 above) demonstrating that these justifications are pretext and that Rich Dad chose to terminate its relationship with Learning Annex to avoid sharing the revenue from the free seminar business. Extended arguments about the Donald Trump book, the contentious PBS

7

appearance, a conversation with Terrell Cass and any other purported justifications for ending the relationship are unrelated to the single issue in this retrial—the reasonable value of the uncompensated services for the free seminar business—and will only serve as a distraction from the real issue.  Accordingly, such evidence should be excluded.

II.     **The Testimony of Thomas Pastore Regarding Conversations with a Non-Testifying Expert Should be Excluded**

The Court should preclude as inadmissible hearsay any testimony by Thomas Pastore regarding the conversations he held with Weston Anson of Consor Intellectual Asset Management ("CONSOR"), who has been retained by the Defendants as a non-testifying expert for the purposes of this litigation.  In particular, at his March 12, 2012 deposition, Mr. Pastore explained that, in addition to receiving certain sample agreements from CONSOR that he appended to his report, he discussed with CONSOR his views with respect to the role of a licensing agent.  According to Mr. Pastore, he "confirm[ed] with [Anson] the duties of a license agent" which he listed in his report.  Mar. 12, 2012 Pastore Dep. Tr. at 57:23-58:15 ("So I discussed with Mr. Wes Anson, the founder and owner of Consor, I said, Look, these are the duties that in my experience and based upon my research a license agent performance."), cited pages attached as Exhibit A to the Mar. 23, 2012 Declaration of Megan K. Bannigan ("Bannigan Decl."); *id*., Pastore Dep. Tr. at 59:12-59:15 (stating that he spoke "with Mr. Anson in regards to getting the [sample agreements] and also determining what a licensing agent does").  Such testimony is inadmissible hearsay and must be excluded.  *See* Fed. R. Evid. 801(c) ("'Hearsay' is a

8

statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Under Federal Rule of Evidence 703, an expert may testify as to inadmissible evidence "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *See* Fed. R. Evid. 703; *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 665 (S.D.N.Y. 2007) (Scheindlin, J.). It is well established, however, that the probative value will not outweigh the prejudicial effect of allowing an expert to testify as to opinions of a non-testifying expert merely to bolster his own opinion. As this Court has recently stated, "referring to the conclusions of a non-testifying expert is improper if done in an attempt to trade on the non-testifying expert's superior professional reputation." *Medism Ltd. v. Bestmed LLC*, No. 10-2463, 2012 WL 718041, at *6 (S.D.N.Y. Mar. 6, 2012) (Sheindlin, J.); *see also Louis Vuitton Malletier*, *v. Bestmed LLC*, No. 10-cv-2463, 2012 WL 718041, at *6 (S.D.N.Y. Mar. 6, 2012) (Sheindlin, J.); *see also Malletier*, 525 F. Supp. 2d at 665 (expert "cannot simply be a conduit for the opinion of an unproduced expert.") (Scheindlin, J.); *Jung v. Neschis*, No. 01-6993, 2007 WL 5256966, at *16 (S.D.N.Y. Oct. 23, 2007) (noting that allowing experts "to rely upon [other expert opinions] would prejudice Defendants by, in essence, . . . subjecting them to the testimony of an expert witness they cannot cross-examine, while also bolstering the testimony of the [testifying] experts who will be able to claim that another experienced [expert] agrees with them."); *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir. 2007) (expert's

9

testimony regarding non-testifying excerpt's conclusions was improperly admitted);

*United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994) (expert witness could not bolster his opinion testimony by testifying that a non-testifying expert's conclusions were essentially the same as the expert witness's); *United States v. Grey Bear*, 883 F.2d 1382, 1392-93 (8th Cir. 1989) ("We are persuaded that Fed. R. Evid. 703 does not permit an expert witness to circumvent the rules of hearsay by testifying that other experts, not present in the courtroom, corroborate his views.").

Mr. Pastore is a financial consultant with apparent expertise in business valuation. *See* Mar. 5, 2012 Supplement Report of Thomas Pastore ("Pastore Report") ¶ 2, attached as Exhibit B to the Bannigan Decl.; *id.*, Ex. A, Pastore Dep. Tr. at 9:11-13 ("I do business valuation of the core aspect of my services"). He has never acted as a licensing agent, hired a licensing agent as a licensor or worked with a licensing agent as a licensee. *Id.*, Ex. A, Pastore Dep. Tr. at 9:19-10:4. In other words, Mr. Pastore has never been directly involved in the licensing business or other fields, such as marketing, that involve licensing. Accordingly, instead of relying on his own experience, Mr. Pastore derived his opinion regarding the role of a licensing agent by relying on four purported sample "licensing" agreements, a "Licensing Business Handbook," one article about licensing agents and his experience reviewing "numerous employment service and consulting agreements" in the context of his work valuing businesses. *Id.*, Ex. B, Pastore Report ¶ 7; *id.*, Ex. A, Pastore Depo. Tr. at 9:2-10:4, 12:19-14:7, 15:7-16.

10

Mr. Anson, to the contrary, apparently has first-hand experience with respect to licensing agreements. According to information on his company's website, his work includes "building and licensing brands," and he has "developed numerous licensing strategies for major corporations." Summary Curriculum Vitae of Weston Anson, attached as Exhibit C to the Bannigan Decl. His experience includes serving as Vice President and corporate officer at Playboy Enterprises, Inc. "where he launched many of their licensing programs," and senior vice president of Hang Ten International, "which grew to nearly 100 licensees in 30 countries under his direction." *Id.* In addition, Mr. Anson has written numerous articles on the subject of licensing. *Id.*

Mr. Pastore's testimony regarding conversations with Mr. Anson, including that Mr. Anson has confirmed Mr. Pastore's conclusions with respect to the role of a licensing agent, serves no purpose other than adding credentials where Mr. Pastore has none and bolstering Mr. Pastore's conclusions. Any attempt by Rich Dad to offer such testimony would be an end run around the Court's ruling that the parties must use the same experts at re-trial that they used at the first trial. *See Learning Annex v. Rich Global*, No. 09-CV-4432 (dkt. 145) Feb. 14, 2012 Order. Further, such testimony would offer no assistance to the jury in understanding Mr. Pastore's own conclusions, but rather merely inserts the opinion of another expert "with a superior professional reputation," whom Plaintiffs have had no opportunity to cross-examine. The probative value of such testimony is without a doubt substantially outweighed by the prejudice it would cause. *Louis Vuitton Malletier*, 525 F. Supp. 2d at 666 (finding that Mr. Anson's testimony had "no probative value"

11

independent of non-testifying expert's report and could not be disclosed to the jury "under the stringent balancing test imposed by Rule 703") (Sheindlin, J.). Accordingly, Mr. Pastore should be barred from testifying at trial about his conversations with Mr. Anson. *See Holder v. Westgate Resorts Ltd.*, 356 S.W.3d 373, 380 (Tenn. 2011) (Rule 703 does not permit a testifying expert to act as non-testifying expert's "mouthpiece" by "simply parroting the non-testifying expert's opinion.").

III.    **The New Trial Should Be Limited to the Witnesses and Exhibits Presented at the First Trial**

Defendants ignore the purpose of this new trial—to determine the amount of damages owed to Learning Annex—and instead attempt to lengthen the proceedings by presenting a different case to the jury than was presented at the first trial. In particular, Defendants have indicated that, among other things, they intend to (1) solicit live testimony from a new witness (Kim Kiyosaki); (2) solicit live testimony from a witness who testified at the first trial through deposition designations (John Kane); (3) read into the record deposition designations that were not offered as evidence during the first trial, including deposition designations of a witness who offered no testimony at all (either live or through deposition designations) at the first trial (Morris Orens); and (4) offer new exhibits into evidence that were not admitted – and some not even identified – at the first

trial.[3]  Such tactics by Defendants are an attempt to "do over" their strategy from the first

trial and expand the scope of what should be a narrowly focused re-trial.

It is well-established that a district court may allow additional witnesses and

exhibits at a new trial only "[i]f the court perceives '*manifest injustice*' in limiting

evidentiary proof at a new trial."  *Martin's Herend Imp., Inc. v. Diamond & Gem Trading*

*U.S. Co.*, 195 F.3d 765, 775 (5th Cir. 1999) (emphasis added); *Cleveland v. Piper*

*Aircraft Corp.*, 985 F.2d 1438, 1450 (10th Cir. 1993) (same); *Whitehead v. K Mart Corp.*,

173 F.Supp. 2d 553, 564-65 (S. D. Miss. 2000) (same).  Where a client "has retained new

counsel, who would like to present this case to the jury in a different manner than

previous counsel," there is "nothing to suggest a manifest injustice" that would support

permitting new fact witnesses or exhibits.  *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*,

No. 97-5696, 2003 WL 22902604, at *2 (N.D. Ill. Dec. 8, 2003); *see Piper Aircraft*

*Corp.,* 985 F.2d at 1449 ("It is always easy in hindsight for counsel to realize there may

be a better way to try a case the second time around.").

Here, because the additional exhibits and witnesses "easily could have been

pursued prior to the first trial of this case," there is simply no "manifest injustice" to

warrant testimony – either live or through deposition designation – from additional fact

witnesses, live testimony from a witness who did not testify live at the first trial, or the

admission of new exhibits.  *Whitehead,* 173 F.Supp. 2d at 565; *see Martin's Herend Imp.,*

---

[3]     *See, e.g.,* Mar. 23, 2012 Joint Pre-Trial Order, Exhibit B, Rich Dad Proposed
        Exhibits A, B, CC, DD, FF, GG, II, JJ, LL.

195 F.3d at 775-76 (no manifest injustice in light of absence of explanation why evidence was not offered at first trial and based on "injustice" from opposing party "having to prepare for this new evidence").  To the contrary, as with Defendants' selection of their expert witness prior to the first trial, any limits resulting from Defendants' prior selection of fact witnesses and exhibits reflect their "own conscious decisions and strategy." *Steadfast Ins. Co.*, 2003 WL 22902604, at *2.  It would be unfair to now allow Defendants to broaden what should be a two-day, limited trial because new counsel has made different strategic decisions – a classic example of a circumstances in which Defendants should not be allowed to do so.  *See Steadfast Ins. Co.*, 2003 WL 22902604, at *2 (Any perceived manifest injustice caused "would be as a result of [plaintiff's] own strategies and decisions, and no good reason exists for this court to disturb those decisions previously made on account of [plaintiff's] belief that new counsel can better present this case").

The only way in which the issues have changed since the first trial is that they have been significantly ***narrowed*** in scope to pertain only to the amount of damages owed by Rich Dad to Learning Annex for its services with respect to the Rich Dad free seminar business.  To present their case to the jury, Rich Dad has more than ample material through live testimony of their expert witness and Robert Kiyosaki, the face and owner of Rich Dad, the deposition designations of two witnesses, which were read into the record at the first trial and the numerous exhibits that were admitted at the first trial.

14

Accordingly, the Court should bar Defendants from expanding their witness and exhibit lists outside of this range.

IV.    **Evidence Related to the Reasonable Value of Services Should Be Weighed by the Jury**

In order to analyze the reasonable value of services for which Learning Annex is entitled to compensation, the jury may consider, *inter alia*, "the nature and importance of the potential investment; the . . . value involved; . . . the ability, skill and experience required and exercised; [and] the character qualifications and standing of Learning Annex."  Trial Tr. at 1000:4-12 (jury charge); *see Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 107 (2d Cir. 2004).  The jury should thus be allowed to hear the relevant evidence that goes to these factors, including evidence that under the September 7, 2005 Memorandum of Understanding signed by the parties ("MOU1"), Learning Annex and Rich Dad contemplated the reasonable value of Learning Annex's services to be 60% of all compensation received by Rich Dad with respect to the free seminar business.  The MOU1 was presented at the first trial with redaction of the 60/40 split.  *See* Trial Exhibit 41A, attached as Exhibit D to the Bannigan Decl.

Plaintiffs understand that Defendants intend to argue that Learning Annex is entitled only to hourly wages for its services rendered with respect to the free seminar business.  *See* Bannigan Decl., Ex. B, Pastore Report ¶ 8.  This suggests that Rich Dad will argue that the services provided by Learning Annex were of little value and importance, required little skill and experience and that Learning Annex was not highly qualified.  Such assertions, however, are directly contradicted by evidence of the revenue

15

split provided in MOU1.  The 60/40 revenue split goes directly to areas in which the jury

will be instructed to consider.  For instance, the 60/40 revenue split contemplated by the

parties reflects Defendants' acknowledgement of how important and valuable Learning

Annex's contributions with the respect to the free seminar were.  In addition, the

contemplated split demonstrates that Rich Dad believed that Learning Annex was a

highly skilled, experienced and qualified business enterprise with respect to the free

seminar business – and that such services would demand significant compensation, not an

hourly wage.  Accordingly, this evidence should not be excluded from the evidence

presented at trial. [4]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preclude

(1) the evidence relating to Rich Dad's purported justifications for terminating its

relationship with Learning Annex and cutting Learning Annex out of the business deal

with Whitney; (2) testimony by Thomas Pastore related to the opinions of a non-

testifying expert; and (3) additional witnesses and exhibits not presented at the first trial.

---

[4]  Any concern that the jury would be prejudiced by admission of the 60% figure can
be addressed through a limiting instruction, reminding the jury that the MOU1 is not
a binding legal agreement and the 60% figure is not dispositive of the amount that
Learning Annex is owed.  *United States v. Jennings*, 63 Fed. Appx. 35, 37 (2d Cir.
2003) (admission of prior business dealings was acceptable in part because "the
District Court had given a limiting instruction to cure any potential prejudice");
*United States v. Dinero Express, Inc.*, 57 Fed. Appx. 456, 459 (2d Cir. 2002) (A
limiting instruction is a less drastic measure than exclusion of evidence that "often
will suffice to cure any risk of prejudice") (internal citations omitted).

16

Plaintiffs further respectfully request that the Court allow evidence demonstrating that

Learning Annex and Rich Dad contemplated the reasonable value of Learning Annex's

services to be 60% of all compensation received by Rich Dad with respect to the free

seminar business

Dated:  New York, New York
        March 23, 2012

                                            Respectfully submitted:

                                            ___/s/ Michael Schaper _____
                                            Edwin G. Schallert
                                            Michael Schaper
                                            Megan K. Bannigan
                                            Debevoise & Plimpton LLP
                                            919 Third Avenue
                                            New York, New York 10022

                                            Jonathan Harris
                                            Julie Withers
                                            Harris & Houghteling LLP
                                            111 Broadway, Suite 402
                                            New York, New York 10006
                                            Tel. (212) 397-3370
                                            Fax (212) 202-6206
                                            Jon@harrislawny.com

                                            David Deitch
                                            Ifrah PLLC
                                            1717 Pennsylvania Ave, NW, Suite 650
                                            Washington DC 20006

                                            *Attorneys for Plaintiffs*

17