UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LEARNING ANNEX HOLDINGS, LLC,
LEARNING ANNEX, LLC, and
and LEARNING ANNEX, L.P.,

           Plaintiffs,

    - against -

RICH GLOBAL, LLC and
CASHFLOW TECHNOLOGIES, INC.,

           Defendants.
------------------------------------------------------------------------x

09-CV-4432 (SAS/GWG)

## PLAINTIFFS' OBJECTIONS TO DEFENDANTS' PROPOSED PRELIMINARY INSTRUCTION, REQUESTS TO CHARGE, AND VERDICT FORM

Jonathan Harris
Julie Withers
Alexander Sakin
Harris & Houghteling LLP
111 Broadway, Suite 402
New York, New York 10006
Tel. (212) 397-3370
Fax (212) 202-6206
Jon@harrislawny.com

Edwin G. Schallert
Michael Schaper
Megan K. Bannigan
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

David Deitch
Ifrah PLLC
1717 Pennsylvania Ave, NW, Suite 650
Washington DC 20006
*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

OBJECTIONS……………………………………………………………………………..……...……..1

    I.    OBJECTION TO RICH DAD'S REQUEST
           FOR PRELIMINARY INSTRUCTION……..……..……………………………….……1

    II.    OBJECTION TO RICH DAD'S REQUEST TO
           CHARGE NO. 1: DETERMINATION OF THE REASONABLE
           VALUE OF SERVICES RENDERD …....……..……………………………….……5

    III.    OBJECTION TO RICH DAD'S REQUEST TO
           CHARGE NO. 2: DAMAGES BASED ON
           PERCENTAGE OF RICH DAD'S REVENUES ……..……..……………...…….……7

    IV.    OBJECTION TO RICH DAD'S REQUEST TO
           CHARGE NO. 3: CALCULATION OF INTEREST ……..……..………..…….……10

    V.    RICH DAD'S PROPOSED VERDICT FORM…………..……...………..…….……10

CONCLUSION……………………………………………………………………………...……....11

# **TABLE OF AUTHORITIES**

**Cases**

*Carlino v. Kaplan*,
    139 F. Supp. 2d 563 (S.D.N.Y 2001)………………………………………………..…...6, 8, 9

*Dean v. Kenyon & Eckhardt, Inc.*,
    240 N.Y.S.2d 551 (N.Y. Sup. 1963) ………………………………………………..…...6, 8, 9

*Learning Annex v. Rich Global*,
    No. 09-CV-4432 (dkt. # 82) Jun. 10, 2011
    Joint Pretrial Order...…………………………………………………………...……...........…3, 5

*Matarese v. Moore-McCormack Lines*,
    158 F.2d 631 (2d Cir.1947) ..................................……………………………..………….6, 8, 9

*Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*,
    371 F.3d 105 (2d Cir. 2004) …………......................................................……………….7

*W. F. Magann Corp. v. Diamond Mftr. Co., Inc.*,
    775 F.2d 1202 (4th Cir. 1985) …………......................................................…….….…....7

**Treatise**

4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman,
Modern Federal Jury Instructions (2011)…………………….. …………....................……….2, 4, 5

The Learning Annex, L.P., Learning Annex Holdings, LLC and Learning Annex, LLC (together, "Learning Annex") respectfully submit these objections to Rich Dad's Preliminary Instruction, Requests to Charge, and Verdict Form.  Rich Dad's proposals (dkt. # 153) misstate the relevant law and facts and would do little to help the jury understand and evaluate the only issue being re-tried – the amount of damages due to Learning Annex, based on the reasonable value of services provided by Learning Annex to Rich Dad.  If adopted by the Court, these proposals will result in unfair, misleading, inaccurate and prejudicial instructions to the jury that will suggest to the jury that it should re-examine liability.  The reason Defendants seek such an instruction is obvious.  They wish to relitigate liability.  In contrast, Learning Annex's Requested Pre-Trial Statement to the Jury, Jury Instructions and Special Verdict Form are based on verbatim recitations of the Court's relevant instructions from the first trial, undisputed facts, additional citations to controlling law and a leading treatise on jury instructions.  Learning Annex respectfully requests that the Court adopt its proposals.

## OBJECTIONS

Learning Annex objects to each of Rich Dad's proposed jury instructions and special verdict form in whole or in part.  Specific objections are set forth below.

I.  **Objection to Rich Dad's Request for Preliminary Instruction**

Learning Annex objects to Rich Dad's Request for Preliminary Instruction in its entirety.  It is inaccurate, misleading and prejudicial.  The most striking feature of Rich Dad's draft is that it provides the jury *no* information about the first trial.  In particular, Rich Dad's proposed instruction fails to inform the jury that the first three elements of the *quantum meruit* claim have been established and cannot be second-guessed.  Rather, the instructions should be clear that the jury is not to reconsider findings going to Rich Dad's liability.  The jury should be told clearly

that Defendants are liable to Learning Annex for the reasonable value of services Learning Annex performed with respect to Rich Dad's free seminar business – and that the jury's *sole* responsibility is to determine this amount. *See, e.g.,* 4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, MODERN FEDERAL JURY INSTRUCTIONS, Comment to Instruction No. 71-11 (2011).

In addition, as detailed below, Rich Dad's requested instruction convolutes – or outright changes – certain undisputed facts, and presents to the the jury its version of disputed facts and new facts that are not supported anywhere in the record. Thus, the following specific statements contained in Rich Dad's Request for Preliminary Instruction are further reason to reject Rich Dad's proposed preliminary statement in its entirety.

> A. **"This case involves a claim by Learning Annex against Rich Global for reasonable compensation for certain services related to the development of a business that was created by Rich Global and a third party, a company called Whitney."**

The statement that the free seminar business "was created by Rich Global and a third party, a company called Whitney" is misleading and an inaccurate statement of the facts. The evidence at the first trial set forth clearly the role played by Learning Annex in conceiving of, developing and structuring the free seminar business ultimately entered into by Whitney and parties affiliated with Robert Kiyosaki. Undisputed evidence was presented to the first jury that Learning Annex conceived of the idea for Rich Dad, convinced Rich Dad to enter the free seminar business in 2006, selected Whitney as the best party with whom to enter the free seminar business, arranged and participated in meetings between Whitney and Rich Dad and was then secretly cut out of the deal. This was undisputed and should not be relitigated because Rich Dad

2

has obtained new counsel. It would be misleading and prejudicial to inform the jury to the contrary at the start of the trial.

      B.    **"At the time relevant to this case, Learning Annex was in the business of hosting and promoting events at which speakers appeared."**

This statement mischaracterizes Learning Annex's business for the jury. As the undisputed facts from the first trial set out, at all times relevant to this case, Learning Annex was in the business of "producing, marketing, promoting and conducting educational seminars, lectures, classes and workshops on various subjects." *Learning Annex v. Rich Global*, No. 09-CV-4432 (dkt. # 82) Jun. 10, 2011 Joint Pretrial Order, Undisputed Facts ¶ 1. Also, as Learning Annex proved at the first trial, its business during the relevant time included providing services to Rich Dad related to the free seminar business. Learning Annex is entitled to have the jury informed of the full range of its business, not the truncated and misleading version proposed by Rich Dad.

      C.    **"Rich Global LLC is a company formed by Robert and Kim Kiyosaki for the purpose of entering into a joint venture with Whitney."**

Learning Annex objects to this statement as a potentially disputed statement of fact. In particular, Learning Annex is unaware of the purpose for which Rich Dad formed Rich Global.

      D.    **"In mid-2006, Rich Global and Whitney formed a joint venture called Rich Dad Education, in which Whitney provided seminars, using the 'free seminar' model, about Mr. Kiyosaki's financial philosophy, as described in his books."**

Learning Annex objects to this statement as a misleading statement of fact. While it may be accurate that Rich Dad and Whitney entered into the free seminar business formally in mid-2006, the statement fails to reference Learning Annex's undisputed role in conceiving, driving the idea for, and arranging the free seminar business.

3

      E.      **"Learning Annex claims that between September 2005 and February 2006, Learning Annex provided certain services to Rich Global that were related to the development of the Rich Dad Education venture between Rich Global and Whitney."**

The introductory language of this statement, "Learning Annex claims", incorrectly suggests that the issue of whether Learning Annex provided services to Rich Dad is in dispute. In fact, the jury in the first trial found that Learning Annex provided services to Rich Dad related to the free seminar business and that Rich Dad accepted those services. Much as Defendants may wish otherwise, those issues cannot be revisited at the re-trial on damages. *See* 4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, MODERN FEDERAL JURY INSTRUCTIONS, Comment to Instruction No. 71-11 (2011).

      F.      **"In this case, you will be asked to decide what, if any, is the reasonable value of the services provided by Learning Annex that are related to the development of the free seminar business."**

Rich Dad's suggestion that the reasonable value of Learning Annex's services with respect to the free seminar business might be zero is simply a backdoor way of attacking the first jury's finding of liability. The first jury already determined that Rich Dad must compensate Learning Annex for the reasonable value of the services it performed with respect to the free seminar business. Rich Dad has now taken the position that Learning Annex is entitled only to hourly wages, and its own expert opines (which Learning Annex disputes) that Learning Annex is entitled to $138,893 to $263,393 – far from "nothing." *See* Mar. 11, 2012 Corrected Expert Report of Thomas Pastore ¶ 8(c). Thus, there is no basis for inclusion of "if any" in the above-referenced statement; the only purpose it would serve is to signal to the jury that it may reconsider Rich Dad's liability.

G. **The Court Should Adopt Learning Annex's Proposed Pre-Trial Statement to the Jury**

In contrast to Rich Dad's submission, Learning Annex's proposed statement is based on (1) undisputed facts (*Learning Annex v. Rich Global*, No. 09-CV-4432 (dkt. # 82) Jun. 10, 2011 Joint Pretrial Order, Undisputed Facts); (2) a statement of the law of *quantum meruit* based on this Court's jury charge in the first trial and well-established law; and (3) a statement that the jury cannot disturb the decisions of the first jury, which is based on a leading treatise on jury instructions. 4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, MODERN FEDERAL JURY INSTRUCTIONS, Comment to Instruction No. 71-11 (2011). Learning Annex's proposed statement is accurate, fair and informative and it should be adopted by the Court.

II. **Objection to Rich Dad's Request to Charge No. 1:  Determination of the Reasonable Value of Services Rendered**

Learning Annex objects to Rich Dad's request to charge on the grounds that it is unfair, misleading, prejudicial and inaccurately construes the law. Similar to Rich Dad's proposed preliminary statement to the jury, this proposed instruction fails to inform the jury as to necessary information (namely, that a previous jury has found that Rich Dad liable) and that the jury's only task is to determine the amount of damages to which Learning Annex is entitled. As the leading authority on model jury instructions provides, a jury for a re-trial should be informed that "the first jury's findings are settled and conclusive" and that the second jury must not "second-guess those findings." 4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman,

MODERN FEDERAL JURY INSTRUCTIONS, Comment to Instruction No. 71-11 (2011).  The jury should be informed of this information.[1]

Second, Rich Dad's recitation of what is the "reasonable value of services" ignores not only the Court's previous instructions, but also the law, and does not provide the jury with a full description of what it may consider in making this determination.  Compare Learning Annex's Proposed Instruction 2 (reciting Judge Scheindlin's detailed instruction from the first trial).  Rich Dad's proposed instruction fails to inform the jury, *inter alia*, as to the definition of "reasonable value of services provided," *see* Trial Tr. at 999:23-1000:3, the factors that the jury may consider in making this determination, *id.* at 1000:4-12, or a clear, understandable or complete statement of the law as to how Learning Annex should be compensated.  *Id.* at 1000:13-20; *see Carlino v. Kaplan*, 139 F. Supp. 2d 563, 565 (S.D.N.Y 2001); *see, e.g., Matarese v. Moore-McCormack Lines*, 158 F.2d 631, 635-36 (2d Cir.1947); *Dean v. Kenyon & Eckhardt, Inc.*, 240 N.Y.S.2d 551, 552 (N.Y. Sup. 1963).  Rich Dad's proposed instructions also fail to provide the jury with any context to understand the meaning behind "clear and accepted marketplace conventions."  *See* Trial Tr. at 1000:14-20 (explaining "clear and accepted marketplace conventions"); *Carlino*, 139 F. Supp. 2d at 565; *see, e.g., Matarese*, 158 F.2d at 635-36; *Dean*, 240 N.Y.S.2d. at 552.  In short, the result of such an instruction would make it nearly impossible for the jury to weigh the appropriate factors to determine if Learning Annex is entitled to a percentage of the revenues.

---

[1] Rich Dad states, "Your job is to determine the reasonable value of services Learning Annex provided to Rich Global related to the development of the free seminar business."  As the evidence demonstrates, Learning Annex provided services to various Rich Dad entities with respect to the free seminar business.  Rich Global is one of the entities that benefited financially from this business and is, therefore, a defendant in this matter.  Thus, this statement is unfair, prejudicial and misleading to the extent that it suggests that the only relevant services are those provided directly to Rich Global.

III.  **Objection to Rich Dad's Request to Charge No 2:  Damages Based on Percentage of Rich Dad's Revenues**

Learning Annex objects to Rich Dad's Request to Charge No. 2 in its entirety on the grounds that it is unfair, misleading, prejudicial and inaccurately construes the law.  Rich Dad again misstates the law, resulting in instructions that make it nearly impossible for a jury to understand whether and how to award damages on a percentage basis.  Learning Annex's specific objections to Rich Dad's Request to Charge No. 2: Damages Based on Percentage of Rich Dad's revenues are as follows:

A.  **"Although the defendant's revenues are not typically relevant to determining the reasonable value of services rendered by the plaintiff, as I have mentioned there are exceptions to this general rule."**

Learning Annex objects to this statement as an inaccurate statement of the law.  Under New York law, Rich Dad's revenues may be considered by the jury in the context of determining the reasonable value of services.  As the Court instructed the jury at the first trial, "the results achieved" is one of the factors that the jury may consider irrespective of whether it intends to award damages on an hourly or percentage basis.  *See* Trial Tr. at 1000:4-12; *see Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 107 (2d Cir. 2004); *see also W. F. Magann Corp. v. Diamond Mftr. Co., Inc.*, 775 F.2d 1202, 1208 (4th Cir. 1985) (profits may be considered in determining reasonable value of services).

B.  **"To be entitled to damages on the basis of a percentage of Rich Global's revenues, Learning Annex must prove by a preponderance of the evidence: (1) a clear and accepted marketplace convention under which certain services are compensated based on a percentage of revenues; and (2) that Learning Annex performed those services such that it is appropriate to determine the compensation to which Learning Annex is entitled by reference to Rich Global's revenues."**

7

Learning Annex objects to this statement as unfair, prejudicial, misleading and an incomplete statement of the law. Any instruction regarding what Learning Annex must prove to show that it is entitled to a percentage of Rich Dad's revenues should acknowledge that, in addition to demonstrating a clear and accepted marketplace convention, Learning Annex may recover a percentage of Rich Dad's revenue by demonstrating that the value of the benefit conferred on Rich Dad was very substantial compared simply to amount of time invested by Learning Annex, causing unjust and inequitable results if compensation were to be based on hourly rates rather than the benefits that were appropriated. *See Carlino*, 139 F. Supp. 2d at 565; *Matarese*, 158 F.2d at 635-36; *Dean*, 240 N.Y.S.2d. at 552.

> C. **"In determining whether Learning Annex has provided a clear and accepted marketplace convention in the licensing industry, you may consider whether agreements by participants in the industry follow this convention. If you find that such agreements do not follow any well-established convention, but vary in defining the scope of services provided, the length of time over which the services are to be delivered, and the amounts of fees and incentive payments that the licensor agreed to pay, then you should determine that there is no clear and accepted marketplace convention."**

Learning Annex objects to this statement on the grounds that it is unfair, misleading, prejudicial, vague, ambiguous and an unsupported statement of the law. The *Carlino* case states that there are "well-recognized exceptions" to awarding *quantum meruit* damages on the basis of hourly wages; it does not provide that the jury may consider "agreements by participants in the industry." *Carlino*, 139 F. Supp. 2d at 565. Moreover, it is unclear what "agreements" Rich Dad intends to present to the jury. If Rich Dad refers to the agreements cited by its expert in his Corrected Expert Report of March 11, 2012, such agreements are not admissible as they are irrelevant, misleading, prejudicial and hearsay. Nor does *Carlino* provide support for the suggestion that a variation in services provided by licensing agents or the terms of licensing agent agreements are relevant to whether there is an industry standard for compensation of

8

licensing agents. An instruction based on Rich Dad's attempt to rewrite the law would result only in each party being forced to present to the jury a plethora of complicated and irrelevant agreements or other facts for consideration. Such an instruction is simply not supported by the law and should be rejected.

> D. **"If Learning Annex fails to prove that a clear and accepted marketplace convention exists for compensation of licensing agents, or that the particular services provided are not the same as those of a licensing agent, it would be improper for you to award damages on the basis of a percentage of Rich Global's revenues, because you would essentially be writing a contract for the parties where none was written. If no clear and accepted marketplace convention applies, then you should measure compensation to Learning Annex based on a reasonable hourly rate . . ."**

Learning Annex objects to this instruction as unfair, misleading, prejudicial and an inaccurate statement of the law. As noted above, to be entitled to a percentage of Rich Dad's revenues, Learning Annex may prove that the value of the benefit conferred on Rich Dad is likely to be disproportionate to the value of the services rendered, causing unjust and inequitable results if compensation were to be based on hourly rates rather than the benefits that were appropriated. *Carlino*, 139 F. Supp. 2d at 565; *Matarese*, 158 F.2d at 635-36; *Dean*, 240 N.Y.S.2d. at 552.

> E. **The Court Should Adopt Learning Annex's Proposed Charge on *Quantum Meruit* Damages**

Learning Annex's proposed jury charge on *quantum meruit* damages is fair and accurate. It was adopted nearly verbatim from the Court's charge in the first trial. The only change was the addition of language – taken directly from *Carlino* – that another example of when a jury may award damages based on a percentage of defendant's revenues (as opposed to an hourly basis) is where the value of the benefit conferred is likely to be disproportionate to the value of the services rendered, causing unjust and inequitable results if compensation were to be based on

9

hourly rates rather than the benefits that were appropriated. Learning Annex's adherence to this Court's prior instructions and the principal case on which this Court (and even Rich Dad) has relied on *quantum meruit* damages warrant the adoption of Learning Annex's proposed charge.

IV. **Objection to Rich Dad's Request to Charge No. 3: Calculation of Interest**

Learning Annex objects to this instruction in its entirety because the date on which interest should run was decided by the first jury and should not be an issue at the re-trial. There is no basis to throw out the first jury's finding that interest begins accruing on Learning Annex's judgment – whatever the new jury may determine that to be – on March 1, 2007. Indeed, that finding was part of the jury's finding on liability – namely, the date on which liability started to run – not part of its finding of the reasonable value of the services. Thus, the first jury's conclusion as to the interest date should not be disturbed.

Further, Rich Dad did not raise the issue at trial – in fact, it offered no argument as to the interest date the first jury should use. Nor did Rich Dad argue this point in its post-trial motions, and the Court has never ruled that the first jury's finding on this issue should be disturbed. The only issue at the re-trial is the amount of damages to be paid to Learning Annex. It would therefore be improper to instruct the jury differently or otherwise revisit the first jury's decision on the date from when interest should start to run.

V. **Rich Dad's Proposed Verdict Form**

Learning Annex objects to Rich Dad's Proposed Verdict Form in its entirety. The proposed verdict form wrongly mandates that the jury may only award fees based on a percentage of the revenues if it determines Learning Annex to have acted as a licensing agent. As discussed above, that is not the law. Accordingly, the Court should adopt Learning Annex's

proposed verdict form, which asks the jury about the only issue in this re-trial – the damages owed to Learning Annex based on the reasonable value of Learning Annex's services related to the free seminar business.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court reject Rich Dad's Preliminary Instruction, Requests to Charge, and Verdict Form and adopt Learning Annex's Requested Pre-Trial Statement to the Jury, Jury Instructions and Special Verdict Form.

Dated: New York, New York
       March 30, 2012

                                        Respectfully submitted:

                                        ___/s/ Michael Schaper_____
                                        Edwin G. Schallert
                                        Michael Schaper
                                        Megan K. Bannigan
                                        Debevoise & Plimpton LLP
                                        919 Third Avenue
                                        New York, New York 10022

                                        Jonathan Harris
                                        Julie Withers
                                        Harris & Houghteling LLP
                                        111 Broadway, Suite 402
                                        New York, New York 10006
                                        Tel. (212) 397-3370
                                        Fax (212) 202-6206
                                        Jon@harrislawny.com

                                        David Deitch
                                        Ifrah PLLC
                                        1717 Pennsylvania Ave, NW, Suite 650
                                        Washington DC 20006

                                        *Attorneys for Plaintiffs*