

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEARNING ANNEX HOLDINGS, LLC, LEARNING ANNEX, LLC, and LEARNING ANNEX, L.P., <br><br>      Plaintiffs, <br><br>      v. <br><br>RICH GLOBAL, LLC and CASHFLOW TECHNOLOGIES, INC., <br><br>      Defendants. | 09 Civ. 4432 (SAS) (GWG) |

## DEFENDANT RICH GLOBAL LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE*

PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
Lewis R. Clayton
Daniel J. Leffell
John H. Longwell
1285 Avenue of the Americas
New York, New York 10019
Tel. (212) 373-3000

*Attorneys for Defendant*

-i-

## **TABLE OF CONTENTS**

|  | Page |
|---|---|
| ARGUMENT | 1 |
| I. THE COURT SHOULD NOT BAR ANY EVIDENCE SOLELY ON THE BASIS THAT IT WAS NOT INTRODUCED AT THE FIRST TRIAL | 3 |
| II. RICH GLOBAL'S EXPERT TESTIMONY SHOULD NOT BE UNREASONABLY CURTAILED | 8 |
| III. MOU1 SHOULD BE EXCLUDED IN ITS ENTIRETY | 10 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*United States v. Affleck,*
   776 F.2d 1451 (3d Cir. 1985) .................................................................................. 10

*Cleveland v. Piper Aircraft Corp.,*
   985 F.2d 1438 (10th Cir. 1993) ................................................................................ 4

*Ioannides v. Marika Mar. Corp.,*
   928 F. Supp. 374 (S.D.N.Y. 1996) ........................................................................... 6

*United States v. Locascio,*
   6 F.3d 924 (2d Cir. 1993) ......................................................................................... 8

*Malletier v. Dooney & Burke, Inc.,*
   525 F. Supp. 2d 558 (S.D.N.Y. 2007) .................................................................... 10

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading Co.,*
   195 F.3d 765 (5th Cir. 1999) .................................................................................... 4

*Medisim Ltd. v. BestMed LLC,*
   No. 10 Civ. 2463(SAS), 2012 WL 718041 (S.D.N.Y. Mar. 6, 2012) ................. 9, 10

*Polaroid Corp. v. Casselman,*
   213 F. Supp. 379 (S.D.N.Y. 1962) ........................................................................... 6

*In re Rezulin Prods. Liab. Litig.,*
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ...................................................................... 9

*Semerdjian v. McDougal Littell,*
   641 F. Supp. 2d 233 (S.D.N.Y. 2009) .................................................................. 8, 9

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.,*
   No. 97-5696, 2003 WL 22902604 (N.D. Ill. Dec. 8, 2003) ..................................... 4

*Whitehead v. K Mart Corp.,*
   173 F. Supp. 2d 553 (S.D. Miss. 2000) .................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 32 ............................................................................................................. 6

Fed. R. Evid. 703 .......................................................................................................... 8, 9

Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2803 ......................................... 4

Defendant Rich Global LLC ("Rich Global") respectfully submits this memorandum in opposition to Plaintiffs' motion *in limine* in respect of the retrial on damages in this matter.

**ARGUMENT**

On one important point, the parties are in apparent agreement: the circumstances surrounding the termination of the relationship between Rich Global and Learning Annex in February 2006 are irrelevant to the sole issue for the jury at the retrial—the reasonable value of the services Learning Annex provided in connection with the development of the free seminar business. Thus, provided that the Court does not permit Plaintiffs to argue to the jury that they were improperly "cut out" of participating in the free seminar business (*see* Defendant's Motion *In Limine* #2), Defendant has no intention of introducing any evidence concerning its reasons for terminating the relationship when it did. Defendant agrees with Plaintiffs that there is no reason for an irrelevant sideshow on whether the termination of the relationship was justified, or in other words, whether Learning Annex was or was not "cut out" of anything. That issue has no bearing whatsoever on the value of the services Learning Annex actually provided, and for which it may be entitled to damages in *quantum meruit*. Thus, so long as Defendant's Motion *In Limine* #2 is granted, Defendant will not seek to introduce the evidence that is the subject of Plaintiffs' first request for an *in limine* evidentiary ruling, such as the parties' disputes over the Donald Trump book deal and PBS.

Defendant opposes, however, Plaintiffs' other three requests for preliminary evidentiary rulings.

Plaintiffs' request to preclude Defendant from offering highly relevant evidence solely on the ground that it was not introduced at the initial trial is misguided. The very purpose of the retrial is to provide the jury with a better evidentiary record upon which to evaluate the

reasonable value of the services at issue. That purpose will be best served by allowing the carefully-focused testimony of the witnesses Defendant has identified as having been most intimately involved in the discussions leading to the development of the Rich Dad Education venture: Robert Kiyosaki and Kim Kiyosaki of Rich Global, and John Kane of Whitney.

Plaintiffs, however, seek to impose a selective ban on "new" evidence that will only frustrate the purpose of the retrial and cause confusion and delay. For one thing, Plaintiffs ignore that they plan to present substantial "new" evidence through their proffered experts. And Plaintiffs do not, of course, object to *all* in-person fact testimony, only that of Kane (who they insist should appear only via his deposition) and Kim Kiyosaki. But under Plaintiffs' logic, the testimony of any live witness should not deviate from what was introduced at the first trial. This unworkable rule would lead to countless objections about whether witnesses are straying unduly from their prior testimony. Defendant respectfully submits that the proper standard for determining the scope of evidence at the retrial is whether it is germane to the reasonable value of Learning Annex's services, not Plaintiffs' arbitrary alternative.

Plaintiffs' request to preclude testimony from Defendant's expert, Thomas Pastore, regarding his conversations with Weston Anson should also be denied. Mr. Pastore consulted Mr. Anson after Mr. Pastore had reached his own conclusions based on his own experience and research. Mr. Pastore's confirmatory conversations with a licensing agent constitute the type of reliable research typically conducted by experts in the industry, and therefore may properly be disclosed to the jury.

Finally, Plaintiffs' request that the Court admit evidence of MOU1's "60/40" revenue split is an improper attempt to influence the jury to award expectation damages, which are unavailable on a claim for *quantum meruit*. As stated in Defendant's Motion *In Limine* #5,

2

MOU1 is irrelevant to damages and the Court should preclude Plaintiffs from referring to it at all. With regard to the purported revenue "split," the Court has already ruled that this evidence is unfairly prejudicial, and that ruling should not be disturbed.

## I.
## THE COURT SHOULD NOT BAR ANY EVIDENCE SOLELY ON THE BASIS THAT IT WAS NOT INTRODUCED AT THE FIRST TRIAL

Rich Global intends to present evidence at retrial that is narrowly tailored to the sole issue to be tried: the reasonable value of services provided by Learning Annex related to the development of the free seminar business with Whitney. To do so, Rich Global has identified three fact witnesses who, in addition to Defendant's expert, will testify in person at the retrial: Robert Kiyosaki and Kim Kiyosaki of Rich Global, and John Kane of Whitney. Each of these witnesses was intimately involved in the negotiations leading up to the Rich Dad Education free seminar business venture. Their testimony will provide the jury with the best understanding, from the Defendant's perspective, of the role that Learning Annex played (and did not play) in that development. The presentation of this testimony will also be highly efficient: Defendant is willing to commit to a direct examination of each of its three fact witnesses lasting no more than two hours, provided that Plaintiffs will do the same.

The guiding principle for the scope of evidence at the retrial should be whether it is germane to the issue that is now in sharp focus: the reasonable value of the services Learning Annex provided related to the development of the free seminar business. Plaintiffs, however, in selectively seeking to bar certain evidence *solely* on the ground that it was not introduced at the first trial, have proposed an alternative rule that is unfair, will frustrate the purposes of the retrial, and threatens to be completely unworkable.

*First*, Defendant respectfully submits that the Court should allow evidence that will ensure that this jury, unlike the first one, has a sufficient and fair evidentiary basis for

3

placing a reasonable value on the services provided by Learning Annex related to the development of the free seminar business. The testimony of John Kane and Kim Kiyosaki, who represented Whitney and Rich Global in discussions leading to the creation of the free seminar venture, is critical to the jury's understanding of the efforts involved in developing that business. Unlike many of the cases on which Plaintiffs rely in their *in limine* motion, this is not a retrial prompted by an error that can be neatly rectified while hewing to the evidentiary presentation at the first trial, or in which there is a compelling reason to exclude "new" evidence.[1] To the contrary, the Court has ruled that the evidence on the issue of damages at the first trial was inherently flawed. In such circumstances, we respectfully submit that it is incumbent upon the parties to remedy this flaw, and that the Court should exercise its discretion to allow the evidence that will do so. *See* 11 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 2803 ("[A] district court has broad discretion in its control and management of [a] new trial.").

---

[1] In two of the cases on which LA relies, the court excluded new evidence that was inadmissible under another Rule of Evidence or was otherwise procedurally improper. *See Martin's Herend Imports, Inc.* v. *Diamond & Gem Trading Co.*, 195 F.3d 765, 775 (5th Cir. 1999) (holding that district court's decision to strike new evidence on retrial was proper where proponent sought expedited trial schedule and attempted to put in new evidence without permission); *Cleveland* v. *Piper Aircraft Corp.*, 985 F.2d 1438, 1450 (10th Cir. 1993) (remanding to district court to reconsider denial of motion to present new evidence and witnesses at retrial where district court's decision was based, *inter alia*, on view that much of new evidence was likely cumulative). In *Whitehead* v. *K Mart Corp.*, another case on which Plaintiffs rely, the district court denied a motion for a new trial challenging the exclusion of expert witness testimony in a prior retrial. 173 F. Supp. 2d 553, 564-65 (S.D. Miss. 2000). The standard for granting a new trial is not the same as the standard for the admission or exclusion of evidence in a retrial, and, thus, *Whitehead* is not on point. And in *Steadfast Insurance Co.* v. *Auto Marketing Network, Inc.*, the court did not allow the plaintiff to designate a new expert witness who was not identified at the first trial because defendant's expert testimony on retrial would be the same. No. 97-5696, 2003 WL 22902604, at *1-2 (N.D. Ill. Dec. 8, 2003). In this case, all of the witnesses at issue were identified prior to the first trial, and the testimony of LA's witnesses will not be the same at the retrial.

4

*Second*, a rule limiting testimony to that introduced at the initial trial would unduly complicate the retrial, likely leading to repeated argument about whether the live witnesses that Plaintiffs concede should be allowed to testify had introduced "new" evidence, and whether the other side should be permitted to rebut such testimony with "new" evidence of its own. By planning to present live testimony from William Zanker, and by not objecting to the live testimony of Robert Kiyosaki, Plaintiffs acknowledge that at least some "new" fact evidence will be necessary, unless they propose that these witnesses should merely read from the transcript of their testimony at the first trial. Policing the testimony of these witnesses for compliance with Plaintiffs' proposed limitation would be immensely difficult and disruptive.

*Third*, Plaintiffs' objection to "new" evidence ignores that *Plaintiffs* are also seeking to introduce evidence not heard by the first jury in support of their damages case at retrial. With the Court's approval, the parties have submitted supplemental expert reports on the role and reasonable compensation of Learning Annex for the services at issue, and will present new expert testimony at the retrial. Although the scope of the issues at retrial has been, as Learning Annex acknowledges, "significantly narrowed" (Mot. at 14), this narrowing places substantially greater emphasis on a subset of the services that were at issue in the first trial. And this difference in focus has led Plaintiffs, as well as Defendant, to seek to offer new evidence. For example, Plaintiffs' purported expert now argues that, instead of being a "unique hybrid of a packager, producer, promoter, and 'licensing' agent" (Ex. A,[2] Matlins Apr. 11, 2011 Rept. ¶ 24), Learning Annex served solely as a licensing agent and "contributed the overwhelming share of the value supplied by a licensing agent" prior to February 2, 2006 (Ex. B, Matlins Mar. 5, 2012 Supp. Rept. ¶ 35). Plaintiffs also seek to introduce an unredacted version of MOU1 (which the

---

[2] All references to "Ex. __" refer to exhibits attached to the accompanying Declaration of John H. Longwell, dated April 3, 2012.

Court correctly kept from the first jury) referring to the "60/40" revenue split (*see* Mot. at 15-16), and have served subpoenas seeking new evidence from Rich Global and two non-parties on the revenues associated with the free seminar business. (*See* Exs. C-E, Mar. 28, 2012 subpoenas addressed to Cashflow Technologies, Inc., Rich Dad Operating Co., Inc., & Rich Global LLC.)

Although Defendant does not concede that any of the "new" evidence that Plaintiffs seek to present at the retrial is admissible, Defendant's objections are based on relevance and other evidentiary rules, not on the mere fact that such evidence was not introduced at the first trial. But if the Court were to agree with Plaintiffs' request for a ban on "new" evidence, such a ruling would have to apply to *both* sides, and the proper course would be to eschew the retrial altogether and dismiss the case for Plaintiffs' failure to prove damages. Plaintiffs cannot have it both ways.

*Fourth*, Plaintiffs' proposal ignores the core principle that trials should, wherever possible, feature live, in-court testimony of witnesses. It would fly in the face of this rule for, as Plaintiffs propose, the jury to be subjected to the parties' reading of long passages from John Kane's deposition rather than hearing from him in the flesh. *See Ioannides* v. *Marika Mar. Corp.*, 928 F. Supp. 374, 378-79 (S.D.N.Y. 1996) ("[D]epositions are not an adequate substitute where live testimony is reasonably available."); *Polaroid Corp.* v. *Casselman*, 213 F. Supp. 379, 382 (S.D.N.Y. 1962) ("Depositions, deadening and one-sided, are a poor substitute for live testimony especially where . . . vital issues of fact may hinge on credibility."); *see also* Fed. R. Civ. P. 32(a)(4)(E) (where a witness is unavailable, "[a] party may use . . . the deposition of a witness . . . if the court finds . . . that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used"). Similarly, barring Kim Kiyosaki from testifying, and thus requiring

6

Defendant to introduce through other means evidence to which she could testify, would turn the basic federal preference for in-court testimony on its head.

*Fifth*, there is no conceivable prejudice to Learning Annex in the presentation of relevant live testimony from John Kane and Kim Kiyosaki. With regard to Kane, Plaintiffs themselves recognize the probative value of such testimony by seeking to present him as a witness by deposition. And although Kim Kiyosaki did not testify at the first trial, she was identified on both parties' witness lists and her testimony is highly relevant to the role of Learning Annex in the discussions preliminary to the forming of the free seminar venture, in which she was a key participant. Defendant has offered to make Ms. Kiyosaki available for deposition before trial, so there can be no claim of surprise. (To date, Plaintiffs have declined this invitation.)

In sum, Rich Global respectfully submits that it should be permitted to call John Kane and Kim Kiyosaki (in addition to Robert Kiyosaki) as witnesses at the retrial to give relevant testimony about the reasonable value of the services provided by Learning Annex related to the development of the free seminar business.[3] We submit that what Plaintiff proposes—a selective ban on evidence not presented to the first jury—would not only conflict with their own position and the very purpose of the retrial, but would be arbitrary and unworkable. The Court has ordered a retrial that will highlight questions to which *neither* party devoted sufficient attention at the initial trial, leading to an erroneous verdict. We respectfully

---

[3] Although we focus here on the testimony of John Kane and Kim Kiyosaki, there is similarly no basis for a ban on relevant documentary evidence or deposition testimony solely on the ground that it was not introduced at the first trial. In any event, there is no need for an *in limine* ruling on evidence that Defendant may or may not seek to introduce, or may use solely for impeachment purposes. Defendant respectfully requests that the Court evaluate any objection to such evidence on the merits if the need arises.

submit that limiting the parties to the same evidentiary presentation at retrial would, likely as not, doom the second jury to repeat the mistakes of the first.

## II.
## RICH GLOBAL'S EXPERT TESTIMONY SHOULD NOT BE UNREASONABLY CURTAILED

Defendant's expert, Thomas Pastore, bases his licensing-related opinions on professional experience involving review of numerous licensing agency agreements over the past 25 years; his study of licensing agreements in connection with the preparation of his report; his review of industry publications; and his conversations with Mr. Weston Anson, a licensing agent with extensive experience in the field. (Ex. F, Pastore Rept. ¶ 7, Ex. 2 & Apps. A, B; Ex. G, Pastore Mar. 12, 2012 Dep. Tr. at 9:2-11:6; 12:19-14:3.) Plaintiffs now seek to preclude Mr. Pastore from referring to his conversations with Mr. Anson. We respectfully submit that there is no basis for such a ruling.

Although Mr. Pastore's conversations with Mr. Anson may constitute hearsay, they are a proper basis for his opinion under Rule 703 because an expert in this field would reasonably rely on such conversations in forming an opinion. *See* Fed. R. Evid. 703. Rather than an issue of admissibility, the fact that an expert witness relied in part on hearsay is "an issue of credibility for the jury." *United States* v. *Locascio,* 6 F.3d 924, 938 (2d Cir. 1993). In this case, Mr. Pastore's sources of market research, including direct conversations with Mr. Anson, are perfectly appropriate bases for expert testimony concerning the role of licensing agents and the presence or absence of well-established marketplace conventions in the licensing industry. *See Semerdjian* v. *McDougal Littell*, 641 F. Supp. 2d 233, 242-43 (S.D.N.Y. 2009) (finding that review of licenses, conversations with copyright director of a publisher, and visits to websites of

8

distributors of copyrighted images are appropriate bases under Rule 703 for expert testimony "about the way the market for copyrighted images in textbooks operates").[4]

In light of the substantial personal experience and independent research upon which Mr. Pastore relies, Plaintiffs are simply wrong that Mr. Pastore is a mere "conduit" for Mr. Anson's testimony. This Court recently evaluated and rejected a similar contention raised by the plaintiffs in *Medisim Ltd.* v. *BestMed LLC*, in which the Court held that "[w]here a testifying expert has expertise in the field covered by a consulting expert and independently verifies the latter's conclusions, there is no danger that the former is acting as a mere 'mouthpiece or conduit' of the latter." No. 10 Civ. 2463(SAS), 2012 WL 718041, at *6 (S.D.N.Y. Mar. 6, 2012) (Scheindlin, J.) (citation omitted). Here, Mr. Pastore's report and deposition testimony make clear that his conclusions regarding the typical duties and compensation of licensing agents are based primarily on his own expertise and independent market research. Rather than serving as a conduit for Mr. Anson's testimony, Mr. Pastore's discussions with Mr. Anson concerned "the duties that in [Mr. Pastore's] experience and based upon [Mr. Pastore's] research a license agent preforms [sic]." (Ex. G at 58:11-15.) It is clear that Mr. Pastore discussed the duties of a licensing agent with Mr. Anson only after analyzing relevant evidence on his own, and the fact that "he reached the same conclusions . . . does not mean that he 'parrots [Mr. Anson's] opinion

---

[4] Mr. Matlins's conversations, by contrast—with a former Fremantle employee "who spoke with David somebody who is the head of licensing" and with a former employee of the NBA International who "was told" by someone whose name Matlins could not recall that the NBA used licensing agents internationally—are not dependable, firsthand accounts upon which an expert could reasonably rely. (Ex. H, Matlins Mar. 15, 2012 Dep. Tr. at 6:23-9:23; *see* Defendant's Motion *In Limine* #1 at 9-10.) Under Rule 703, "district courts must make an independent determination that the material in question is sufficiently reliable for experts in the field." *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 561-62 (S.D.N.Y. 2004) (finding that particular hearsay evidence "would appear to be untrustworthy when relied upon"). Defendant respectfully submits that Mr. Matlins's conversations, unlike Mr. Pastore's, do not meet this standard. (*See* Defendant's *Motion In Limine* #1 at 9-10.)

9

without adding any analysis.'" *Medisim*, 2012 WL 718041, at *6 (citation omitted). Thus, this case presents a very different situation from that in *Malletier* v. *Dooney & Burke, Inc.*, in which this Court excluded testimony because it found that a testifying expert's "critical conclusion" was only derived by "relying completely" on a statistical analysis that the expert was "not qualified to conduct or interpret." *See* 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007).

Plaintiffs' argument that Mr. Pastore is using his conversations with Mr. Anson merely to bolster his own opinion is similarly unfounded, as "[n]othing here indicates that [Mr. Pastore] attempted to take advantage of [Mr. Anson's] professional reputation." *See Medisim*, 2012 WL 718041, at *6. Instead, Mr. Pastore did just what an expert in the industry should do: he sought to confirm his independently-formed opinions—based on his personal experience and a review of reliable industry sources. *See United States* v. *Affleck*, 776 F.2d 1451, 1457 (3d Cir. 1985) (where conversations "were held after the expert had already reached tentative conclusions . . . [and] were used to corroborate or supplement opinions already formed," expert could testify about them "to explain how he had formed some of his opinions and conclusions" and such testimony would not be "simply a summarizing of the out-of-court statements of others"). This effort by Mr. Pastore stands in stark contrast to that of Mr. Matlins, who relied only on his own narrow and practically non-existent experience in the licensing industry, and sought to bolster his opinions through double-hearsay statements by persons he had never met and whose names he could not recall. (*See* Defendant's Motion *In Limine* #1 at 9-10.)

### III.
### MOU1 SHOULD BE EXCLUDED IN ITS ENTIRETY

In a brazen departure from their assertion that the evidence at retrial should be limited to that which was presented at the first trial, Plaintiffs now ask the Court to admit evidence—properly excluded in the initial trial—of the reference in MOU1 to a "60/40" split of

10

revenues from the free seminar business.  But as explained in Defendant's Motion *In Limine* #5, MOU1 is irrelevant and prejudicial and should be excluded in its *entirety*.  For the same reasons that the Court instructed the initial jury not to consider MOU1 in calculating damages, we respectfully submit that the Court should preclude Plaintiffs from introducing or referring to MOU1 *at all* in the retrial.

*A fortiori*, Plaintiffs should not be permitted to refer to the "60/40" term of the non-binding MOU1.  The Court correctly concluded at the first trial that, absent a redaction of the "60/40" term, there was too great a risk that the jury would be misled into improperly awarding contract damages where there was no breach of contract claim.  (*See* Ex. I, June 17, 2011 Hr'g Tr. at 18:16-20 (The Court: "You really want to get the jury thinking along those lines and saying, oh, well, they agreed or they almost agreed . . . and this is exactly why I think it is unfair and the prejudice outweighs the probative value.  It is confusing to a jury.").)  The same reasons apply with even greater force at the retrial, where the sole issue is damages.

The purported reasons offered by Plaintiffs for admitting the "60/40" term merely illustrate its irrelevance and potential for prejudice.  Plaintiffs argue that "the 60/40 revenue split contemplated by the parties reflects Defendants' acknowledgement of how important and valuable Learning Annex's contributions with respect to the free seminar [sic] were" and that Learning Annex's "services would demand significant compensation, not an hourly wage." (Mot. at 16.)  In other words, Plaintiffs are saying that the jury should determine damages at the retrial on the basis of what Learning Annex *expected* to earn under an unenforceable contract, which contemplated many services beyond those that the jury is to value.  That would be plain legal error.  Moreover, the "60/40" term, contained in a non-binding agreement that is now irrelevant, says *nothing* about the objective, reasonable value of the limited services actually

11

provided by Learning Annex that are at issue at the retrial.  The only conceivable effect of admitting evidence of MOU1's abandoned payment term would be to suggest to the jury that it should award contract damages.  Plaintiffs' desire for that result is understandable, but indefensible.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court deny Plaintiffs' Motion *in Limine* and grant Defendant's Motions *In Limine*.

Dated: April 3, 2012

> Respectfully submitted,
>
> PAUL, WEISS, RIFKIND, WHARTON &
>   GARRISON LLP
>
>
> By:   /s/ John H. Longwell
>       Lewis R. Clayton (lclayton@paulweiss.com)
>       Daniel J. Leffell (dleffell@paulweiss.com)
>       John H. Longwell (jlongwell@paulweiss.com)
>
> 1285 Avenue of the Americas
> New York, New York 10019
> Tel.  (212) 373-3000
>
> *Attorneys for Defendant*

12