UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LEARNING ANNEX HOLDINGS, LLC,
LEARNING ANNEX, LLC, and
and LEARNING ANNEX, L.P.,

               Plaintiffs,

   - against -

RICH GLOBAL, LLC and
CASHFLOW TECHNOLOGIES, INC.,

               Defendants.
-------------------------------------------------------------------x

09-CV-4432 (SAS/GWG)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE*

Jonathan Harris
Julie Withers
Alexander Sakin
Harris & Houghteling LLP
111 Broadway, Suite 402
New York, New York 10006
Tel. (212) 397-3370
Fax (212) 202-6206
Jon@harrislawny.com

Edwin G. Schallert
Michael Schaper
Megan K. Bannigan
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

David Deitch
Ifrah PLLC
1717 Pennsylvania Ave, NW, Ste 650
Washington DC 20006
*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................1

I. The Jury Should Be Told that Learning Annex Was Cut Out of the Free Seminar Business. ..........................................................................................................................1

II. Rich Dad Has Presented No Basis to Warrant New Fact Witnesses or Exhibits .................2

III. The Testimony of Thomas Pastore Regarding Conversations with a Non-Testifying Expert Should be Excluded ...............................................................................5

IV. It Would Be Prejudicial to Learning Annex if MOU1 was Excluded .................................7

CONCLUSION ............................................................................................................................8

# TABLE OF AUTHORITIES

**CASES**

*Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438 (10th Cir. 1993) ............................................. 2, 5

*Holder v. Westgate Resorts Ltd.*, 356 S.W.3d 373 (Tenn. 2011) ....................................................... 7

*Jung v. Neschis*, No. 01-6993, 2007 WL 5256966 (S.D.N.Y. Oct. 23, 2007) ................................. 6

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007) (Scheindlin, J.) ................................................................................................................. 6

*Martin's Herend Imp., Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765 (5th Cir. 1999) ................................................................................................................................ 2

*Medisim Ltd. v. Bestmed LLC*, No. 10-2463, 2012 WL 718041 (S.D.N.Y. Mar. 6, 2012) (Scheindlin, J.) ............................................................................................................ 6, 7

*Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398 (6th Cir. 2007) ....................................... 7

*Semerdjian v. McDougal Little*, 641 F. Supp.2d 233 (S.D.N.Y. 2009) ....................................... 6, 7

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.,* No. 97-5696, 2003 WL 22902604 (N.D. Ill. Dec. 8, 2003) ................................................................................................................. 3

*Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105 (2d Cir. 2004) ............................ 7

*United States v. Affleck*, 776 F.2d 1451 (3d Cir. 1985) .................................................................. 6, 7

*United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993) .................................................................... 6, 7

*Whitehead v. K Mart Corp.*, 173 F.Supp. 2d 553 (S. D. Miss. 2000) .............................................. 2

*William A. Graham Co. v. Haughey*, No. 05-612, 2007 WL 4191839 (E.D. Pa. Nov. 21, 2007) ............................................................................................................................... 5

**OTHER AUTHORITIES**

11 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 2803 ......................... 2

Fed. R. Evid. 703 ............................................................................................................................ 6

The Learning Annex, L.P., Learning Annex Holdings, LLC and Learning Annex, LLC (together, "Learning Annex") respectfully submit this memorandum of law in further support of Plaintiffs' motion *in limine*.

## ARGUMENT

I. **The Jury Should Be Told that Learning Annex Was Cut Out of the Free Seminar Business**

As Learning Annex demonstrated in its opening brief, evidence regarding Rich Dad's purported reasons for terminating Learning Annex is irrelevant and thus should be excluded. Rich Dad does not dispute that in its opposition brief. Instead, Rich Dad agrees to not introduce that evidence, but only if Learning Annex is precluded from telling the jury that it was terminated and the circumstances surrounding the termination (namely, that Rich Dad continued to do business with Whitney). Rich Dad's position rests on a false equivalence and is not a principled basis for deciding these evidentiary motions.

Because Rich Dad's expert's opinion is based in significant part on the fact that Learning Annex did not perform certain tasks sometimes associated with licensing agents and therefore did not act as a licensing agent (Pastore Report ¶¶ 36-40), the jury must be informed that Learning Annex did not abandon the project or refuse to perform in any way. In the face of such expert testimony, to preclude the explanation of Learning Annex being cut out by Rich Dad will mislead and confuse the jury by giving it a false impression of the actual facts. The jury could infer that Learning Annex declined to perform and the jury is likely to consider that false fact when assessing the role that Learning Annex played (in light Mr. Pastore's testimony) and the value of the services that Learning Annex provided. Accordingly, Rich Dad's motion in limine #2 should be denied.

The same is not true with respect to the dispute over Rich Dad's purported reasons for terminating Learning Annex, such as the Donald Trump book deal and the argument over the PBS appearance. These issues are completely outside the scope of this re-trial and are not related in any way to either party's expert's opinion. It was well established at the first trial that after these disputes Learning Annex and Rich Dad reconciled and continued doing business. Specifically, they continued to meet together and with Whitney and to move forward with the free seminar business. There is no risk of juror confusion if the parties do not put on evidence about Mr. Trump and PBS because these issues are wholly unrelated to the value of the services provided by Learning Annex for the development of the free seminar business. Thus, Learning Annex's motion should be granted.

II.     **Rich Dad Has Presented No Basis to Warrant New Fact Witnesses or Exhibits**

As Learning Annex established in its opening brief, Pls. Mot. at 12-15, a court may allow new witnesses and exhibits only if the court perceives *manifest injustice* in limiting the evidentiary proof. 11 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 2803, n. 12 ("In managing a new trial in any given case, court may with proper notice allow additional witnesses and relevant proof, if court perceives, in limiting evidentiary proof, a manifest injustice to one side or the other.").[1] Rich Dad makes no attempt in its opposition to even argue that it would suffer manifest injustice without this new testimony and these new exhibits. Instead, it advances arguments as to why it should be able to revisit its strategy from the first trial and misconstrues the basis for Learning Annex's motion. In its opposition, Rich

---

[1]   *Martin's Herend Imp., Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 775 (5th Cir. 1999); *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1450 (10th Cir. 1993); *Whitehead v. K Mart Corp.*, 173 F.Supp. 2d 553, 564-65 (S. D. Miss. 2000).

2

Dad ignores applicable legal principles and misconstrues Learning Annex's motion to limit the new trial to witnesses and evidence presented at the first trial.

Rich Dad in essence contends that it may ignore the "manifest injustice" standard because it has now identified the witnesses "having been most intimately involved in the discussions leading to the development of the Rich Dad Education venture." Def. Opp. at 2. This is not enough to demonstrate a manifest injustice. The free seminar business was an issue at the first trial and Rich Dad was well aware of whatever role it claims John Kane, Kim Kiyosaki and Morris Orens played with respect to the free seminar business. But it chose not to call any of them live (even though Kim Kiyosaki was present for the entire first trial) and not to designate any deposition testimony from Orens. Allowing Rich Dad to now call these witnesses (either live or at all) merely allows Rich Dad an attempt to "do over" their strategy from the first trial and improperly broaden the length and scope of the trial. *See Steadfast Ins. Co. v. Auto Mktg. Network, Inc.,* No. 97-5696, 2003 WL 22902604, at *2 (N.D. Ill. Dec. 8, 2003) (no manifest injustice where party "has retained new counsel, who would like to present this case to the jury in a different manner than previous counsel").[2]

In an attempt to bypass the manifest injustice standard, Rich Dad misconstrues Learning Annex's argument, contending that Learning Annex attempts to place an "arbitrary and

---

[2] Cases stating that live testimony is typically preferable are not relevant to the analysis of whether precluding new live witnesses at a re-trial would result in a manifest injustice. *See* Def. Opp. at 6-7. In addition, Rich Dad's offer to limit testimony of each witness to two hours, *id.* at 3, in no way cures Rich Dad's attempt to broaden the scope of the new trial. In fact, the proposal would be prejudicial to Learning Annex, which currently contemplates calling one fact witness (for two hours under Rich Dad's proposal) while Rich Dad seeks to call three fact witnesses (for six hours).

3

unworkable" "selective ban on *evidence* not presented to the first jury." Def. Opp. at 7 (emphasis added). This is simply incorrect. Learning Annex seeks – in accordance with applicable legal principles – to preclude Rich Dad from improperly offering testimony from new fact witnesses and new exhibits. It does not seek to prevent admission of *any* new evidence at re-trial or limit witnesses who testified at the first trial to testifying only to exactly what was said at the first trial. Further, Rich Dad's suggestion that Learning Annex seeks to introduce substantial new evidence is misplaced. With the exception of documents related to the supplemental expert reports permitted by the Court, Learning Annex has not designated for the re-trial exhibits or deposition testimony that were not used at the first trial.[3]

Further, the Court did not, as Rich Dad suggests, order a new trial on the basis that the new jury needs to be informed of additional facts to determine damages. Rather, a new trial was ordered because the Court found that Learning Annex's expert presented "imprecise testimony," leaving the jury "with little guidance to determine whether Learning Annex's services might fit within the rubric of the services provided by a licensing agent" and "no adequate evidence" to determine whether there is a clear and accepted marketplace standard regarding compensation of licensing agents. Dkt. entry no. 142, Jan. 11, 2012 Order at 19-24. For these reasons, the Court allowed each party to submit supplemental expert reports and conduct additional expert depositions. *See* dkt. entry no. 145, Feb. 14, 2012 Order. Additional fact witnesses and exhibits are not necessary and are irrelevant to the alleged deficiencies from the first trial.

---

[3] Learning Annex's motion to unredact two words in MOU1, a document that the first jury already saw, Def. Opp. at 5-6, is not a departure – and hardly "a brazen departure," Opp. At 10 – from Learning Annex's position that the parties should not be allowed to introduce new exhibits.

4

Lastly, an additional reason to exclude Kim Kiyosaki from testifying at the re-trial is that Rich Dad did not give Learning Annex a meaningful opportunity to depose Kim Kiyosaki during the discovery period and did not sufficiently search for and produce Ms. Kiyosaki's e-mails.[4] *See William A. Graham Co. v. Haughey*, No. 05-612, 2007 WL 4191839, at *1 (E.D. Pa. Nov. 21, 2007) (holding that defendant could not call new fact witnesses at retrial on damages because doing so would result in new depositions and the potential need for new discovery; "'[o]ur [grant of] a new trial was not an invitation to reopen discovery . . . and to enlarge trial time unnecessarily through the addition of totally new exhibits and testimony'") (quoting *Cleveland*, 985 F.2d at 1449).

For these reasons, Learning Annex's motion to preclude Rich Dad from expanding its witness and exhibit lists outside of the range of the first trial should be denied.

III. **The Testimony of Thomas Pastore Regarding Conversations with a Non-Testifying Expert Should be Excluded**

Rich Dad again misconstrues the law and facts to argue that the trial testimony of its expert, Thomas Pastore, should include information about hearsay conversations with an allegedly more qualified non-testifying "consultant," Wes Anson. Def. Opp. at 8-9. Rich Dad's arguments, however, fail to acknowledge that a threshold question in determining whether expert

---

[4]  The parties agreed on a date for Ms. Kiyosaki after the close of discovery, but the Court declined to extend the discovery period. Rich Dad's last minute offer to make Kim Kiyosaki available for a deposition before trial does not fix the problem. First, reopening fact discovery would be contrary to the Court's ruling that fact discovery would not be extended beyond the July 31, 2010 cut-off. Second, Plaintiffs would incur undue burden and expense to prepare for and take her deposition, particularly given the tight timeline to prepare for trial. And, even the ability to take her deposition does not change the fact that Rich Dad did not sufficiently search for or produce Ms. Kiyosaki's documents, thus making it more difficult to effectively depose her or examine her at trial.

5

testimony is admissible is whether conversations with third parties are of the type "reasonably" relied upon by other experts in a case such as this.  *See, e.g., United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993); *Semerdjian v. McDougal Little*, 641 F. Supp.2d 233, 245 (S.D.N.Y. 2009); *United States v. Affleck*, 776 F.2d 1451, 1457 (3d Cir. 1985).  Here, there is no basis to support that the conversations with Anson, a consultant hired by Rich Dad's law firm, is the type of information reasonably relied upon by experts in the field in forming their opinions.[5]

Moreover, Rich Dad has no meaningful response to the well-established rule that, under Fed. R. Evid. 703, "referring to the conclusions of a non-testifying expert is improper if done in an attempt to trade on the non-testifying expert's superior professional reputation."  *Medisim Ltd. v. Bestmed LLC*, No. 10-2463, 2012 WL 718041, at *6 (S.D.N.Y. Mar. 6, 2012) (Scheindlin, J.); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 665 (S.D.N.Y. 2007) (Scheindlin, J.); *Jung v. Neschis*, No. 01-6993, 2007 WL 5256966, at *16 (S.D.N.Y. Oct. 23, 2007).  Rich Dad has no basis to argue that Mr. Pastore's purported qualifications are equal to or superior to Mr. Anson's apparent qualifications.  Mr. Anson appears to make his living in the licensing field, including as a licensing agent.  The record speaks for itself regarding the qualifications of Mr. Pastore: he is a professional testifier and deponent in the business valuation field with no direct or relevant licensing experience.

The cases relied upon by Rich Dad serve only to further illustrate the difference between what is permitted under Rule 703 and what occurred in this case.  Rich Dad bases its entire legal discussion on the uncontroversial statement that Rule 703 sometimes allows experts to rely on

---

[5]  By contrast, Mr. Matlins confirmed his opinions with independent third parties with no relationship with Learning Annex and not a paid consultant hired by counsel.  Mr. Matlins should be allowed to testify as to those conversations.

hearsay facts to form the basis for their opinion and not for the truth of the matter. The cases it relies on, related to the sources of information that an expert may or may not use, bear little resemblance to the current matter. *See Locascio*, 6 F.3d at 937-38 (organized crime expert allowed to rely on informers and recordings); *Semerdjian*, 641 F. Supp. 2d at 243 (testimony regarding conversations with third party textbook publisher – as opposed to paid consultant); *Affleck*, 776 F.2d at 1457 (allowing testimony about third party conversations confirming factual bases, not actual conclusions of the expert). That is not what Pastore claims to have done – his testimony about this conversation merely serves to bolster his credibility and sheds no light on how he developed his expert opinion. Courts have repeatedly held that testimony that is used for the purpose of bolstering an expert's credibility is inadmissible hearsay. *See*, *e.g.*, *Medisim Ltd.*, 2012 WL 718041, at *6; *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir. 2007); *Holder v. Westgate Resorts Ltd.*, 356 S.W.3d 373, 380 (Tenn. 2011).

For these reasons, Learning Annex's motion to exclude Mr. Pastore's testimony regarding conversations with non-testifying alleged experts hired by Rich Dad and proffered to Mr. Pastore by Rich Dad should be granted.

IV. **It Would Be Prejudicial to Learning Annex if MOU1 was Excluded**

As Learning Annex established in its opening brief, MOU1 is relevant evidence because (1) it provides the jury with pertinent background information and context to explain why Learning Annex performed the services it performed, and (2) it helps demonstrate the nature of the relationship between Learning Annex and Rich Dad and the role each played (*i.e.*, that Learning Annex acted as a licensing agent, not a consultant). The contemplated 60/40 revenue split between the parties, moreover, is highly relevant because it gives the jury a means for evaluating factors relevant to the reasonable value of services analysis. *See, e.g., Toporoff*

7

*Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 107 (2d Cir. 2004). Rich Dad has failed to demonstrate that showing the jury the unredacted MOU1 would result in prejudice outweighing the clear probative value of the document. Nor has Rich Dad explained why a limiting instruction as to how the jury may use MOU1 would fail to cure any possible prejudice. In fact, the failure to provide an unredacted MOU1 to the jury would be prejudicial to Learning Annex and confusing to the jury. For these reasons, MOU1 should be admitted in its entirety. *See also supra* section II n. 3 (disputing Rich Dad's argument that this is a brazen attempt by Learning Annex to introduce new evidence)**.**

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion *in limine* and deny Rich Dad's motions *in limine*.

Dated: New York, New York
April 6, 2012

Respectfully submitted:

  /s/ Michael Schaper
Edwin G. Schallert
Michael Schaper
Megan K. Bannigan
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

Jonathan Harris
Julie Withers
Harris & Houghteling LLP
111 Broadway, Suite 402
New York, New York 10006
Tel. (212) 397-3370
Fax (212) 202-6206

8

Jon@harrislawny.com

David Deitch
Ifrah PLLC
1717 Pennsylvania Ave, NW, Suite 650
Washington DC 20006

*Attorneys for Plaintiffs*