UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEARNING ANNEX HOLDINGS, LLC,
LEARNING ANNEX, LLC, and
LEARNING ANNEX, L.P.,

        Plaintiffs,

        v.

RICH GLOBAL, LLC and
CASHFLOW TECHNOLOGIES, INC.,

        Defendants.

09 Civ. 4432 (SAS) (GWG)

---

## DEFENDANT RICH GLOBAL LLC'S
## REPLY IN SUPPORT OF MOTIONS *IN LIMINE*

PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
Lewis R. Clayton
Daniel J. Leffell
John H. Longwell
1285 Avenue of the Americas
New York, New York 10019
Tel.  (212) 373-3000

*Attorneys for Defendant*

# ARGUMENT

Plaintiffs' response to Defendant's Motions *In Limine* makes it crystal clear that Plaintiffs are seeking, improperly, to be awarded contract or fraud damages in this case. To this end, they seek to present much of the same evidence that led the first jury so far astray, and that is entirely irrelevant to *quantum meruit* damages under New York law. Indeed, Plaintiffs candidly admit that "the services that Learning Annex performed related to the free seminar business" is only one "among other things" upon which they want the "second jury to decide the proper scope of damages for the *quantum meruit* claim." (Pls.' Opp'n at 21.)

But the *only* issue for retrial is this: What is the reasonable value of services actually provided, based on what Rich Global might reasonably have had to pay someone retained to provide those services? The issue is most decidedly *not*: What would Learning Annex have been paid if MOU1 had been enforceable, or if Learning Annex had provided services that it did not, or if Learning Annex had not been "cut out" of participating in the free seminar business? For the jury to award damages on any of these bases would be clearly erroneous. That is the reason the Court properly instructed the initial jury not to consider MOU1 in calculating damages. And that is why there is such a high risk of prejudice from evidence at the retrial of MOU1, the allegedly improper termination of the parties' relationship, or evidence of the parties' expectations about any services not actually provided or for which the initial jury rejected liability.

In order for this jury to avoid repeating the errors of the first, nothing is more critical than that the Court should exclude the legally irrelevant evidence through which Plaintiffs are still improperly seeking to prove breach of contract and fraud damages. Defendant's Motions *In Limine* are directed to this end. Plaintiffs' response—that such irrelevant and prejudicial evidence is somehow necessary to rebut Defendant's case—is simply

incorrect. It is *Plaintiffs* who are seeking to put unperformed services and unfulfilled expectations in issue.

Plaintiffs have also failed to show that their purported expert on licensing agents, Seth Matlins, is qualified. Plaintiffs do not dispute that Mr. Matlins has never even seen a licensing agency agreement (other than those submitted by Defendant's expert that directly contradict his opinion). Instead, Plaintiffs continue to spin Mr. Matlins' irrelevant experience in marketing as somehow sufficient to support expert testimony on the role and compensation of licensing agents. But no amount of spin will change the facts of Mr. Matlins' resume, any more than Plaintiffs' citation to inapplicable precedent alters the clear legal rule that experience in a broad field, plus casual understandings based on purely anecdotal evidence, cannot qualify a witness to provide expert opinion on a specialized topic within the field. *See Lantec, Inc.* v. *Novell, Inc.*, 306 F.3d 1003, 1025-26 (10th Cir. 2002) (finding "particularly troubling" putative expert's reliance on "personal experience" consisting of "anecdotes from a handful of personal conversations" and "attemp[t] to spin" such experience into a basis for expert opinion). For these reasons, and because Mr. Matlins bases his opinions on legally irrelevant services and facts not in evidence, his testimony should be excluded.

## I.
## EVIDENCE OF THE ALLEGEDLY IMPROPER TERMINATION OF LEARNING ANNEX SHOULD BE EXCLUDED
## (MOTION *IN LIMINE* #2)

Plaintiffs want the jury to hear evidence of the alleged "fraud" in this case—their claim that Rich Global deceptively "cut out" Learning Annex from participation in the Rich Dad Education venture. They seek this evidence in hopes that the jury will punish Defendant or award damages based on what Learning Annex, but for the purported misconduct, allegedly would have been due. But that result—which is probably where the jury went wrong in the first

2

trial—is simply not permitted under the law of *quantum meruit*. (*See* Def.'s Mot. #2 at 15 (citing cases).) As the Court made pellucid in its order granting a new trial, Learning Annex is entitled to damages solely for the reasonable value of the limited services related to the development of the free seminar business (arrangement of meetings, etc.) that it performed in the brief period in which it was involved. (*See* Order of Jan. 11, 2012 at 15.) For the jury to award damages on any other basis would be clear error.

Plaintiffs make much of the fact that evidence of the parties' disputes was introduced at the first trial, ignoring the dramatically different task that faces the second jury. The case went to trial not only on the *quantum meruit* claim but also on Plaintiffs' claim of "bad faith" termination of a preliminary agreement (a claim that Plaintiffs strategically abandoned before the case was submitted to the jury). (*See* Order of Jan. 25, 2011 at 19, 29-30, 36 (dismissing breach of contract and fraud claims); Letter from Jonathan Harris, dated July 9, 2011 (dkt. 119) (withdrawing bad faith claim).) Evidence of the circumstances surrounding the termination of the relationship between the parties was relevant to the bad faith termination claim. But such evidence has absolutely no relevance to the sole issue at retrial: the reasonable value of services related to the free seminar business actually performed by Learning Annex.

Plaintiffs contend that they should be permitted to present evidence of the alleged "fraud" in order to explain to the jury why Learning Annex did not perform certain services. (Pls.' Opp'n at 13.) But there is no need to accuse Defendant of wrongfully "cutting out" Learning Annex in order to inform the jury that the relationship ended. Defendant has absolutely no intention of arguing that Learning Annex "refused" to do more than it did, and the jury can be instructed that it should not speculate about the reasons for the termination of the relationship. Plaintiffs' contrary approach, introducing evidence of an alleged deception and of

3

services Learning Annex intended to, but did not, perform, runs too great a risk that the jury will award damages on an improper basis.

Similarly, Rich Global is not attempting to argue that "there was a break in the negotiations with Whitney that made Learning Annex's role in the deal less consequential—and the services provided by Learning Annex less valuable." (*Id.* at 15.) The value of Learning Annex's services is what it is, regardless whether or not there was a "break" in the negotiations with Whitney. Moreover, with the basic facts of the transaction, the jury will hear evidence of when the parties' relationship ended in relation to when the Rich Dad Education business launched. To the extent this chronology has any relevance to the value of Learning Annex's services, the jury may take it into account without weighing accusations about why the relationship ended.

Plaintiffs are wrong that they are seeking to rebut an issue that Defendant's expert has raised. It is *Plaintiffs'* expert who has argued that Learning Annex served as a licensing agent. (Ex. A,[1] Matlins Mar. 5, 2012 Supp. Rept. ¶ 32.) *Plaintiffs'* expert has defined the typical services of a licensing agent to include services (such as finalizing the contract and monitoring the licensing relationship) that Learning Annex concededly did not perform. (*Id.* at App. A.) Defendant's expert is perfectly entitled to respond that Learning Annex did not perform certain services of a licensing agent, without opening the door to a legally improper argument by Plaintiffs that they *would have* performed such services if not for Defendant's alleged misconduct.

Finally, even if the parties' dispute over the legitimacy of the termination had some marginal relevance to the value of the services Learning Annex performed (which it does

---

[1] References to "Ex. __" refer to exhibits to the accompanying Declaration of John H. Longwell, dated April 6, 2012.

4

not), its probative value would be substantially outweighed by the risk of prejudice, juror confusion, and delay. *See* Fed. R. Evid. 403. Indeed, Plaintiffs themselves have made a motion *in limine* arguing that evidence about whether the termination was justified would be an irrelevant sideshow for the jury (Pls.' Mot. at 4-8), and Defendant wholeheartedly agrees (*see* Def.'s Opp'n at 1). More than this, allowing Plaintiffs to argue that they were wrongfully "cut out" of participating in the Rich Dad Education venture (and especially if Defendant was precluded from rebutting that assertion) would be extremely prejudicial. *See* Fed. R. Evid. 403. It would allow Plaintiffs to present their claim as one for contract and fraud damages and to invite the jury to award damages based on services or expectations not properly before it, and thus influence the jury to repeat the mistake of the prior panel.[2]

## II.
## MOU1, INCLUDING THE PROPOSED REVENUE SPLIT, SHOULD BE EXCLUDED (MOTIONS *IN LIMINE* #3, #5)

The Court instructed the initial jury that it could not consider the non-binding MOU1 in determining *quantum meruit* damages. (Ex. B, Trial Tr. at 992:4-12.) This instruction was plainly correct: under well-settled New York law, the terms of an unenforceable agreement are not a proper basis for damages in *quantum meruit*. *See Hettinger* v. *Kleinman*, 733 F. Supp. 2d 421, 449 (S.D.N.Y. 2010) (citing *Revson* v. *Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir.

---

[2] Plaintiffs go so far as to insist that they should be able to introduce, as purported impeachment under Rule 608, Sharon Lechter's affirmative answer to a deposition question about whether Robert Kiyosaki "inappropriately cuts out his business partners." (Pls.' Opp'n at 15 n.5.) Even if this inflammatory charge was about Mr. Kiyosaki's "character for truthfulness or untruthfulness" within the meaning of Rule 608 (which it is not), Plaintiffs clearly want to use this improper evidence *not* to suggest that Mr. Kiyosaki is an incredible witness—the purpose of Rule 608—but to suggest that Learning Annex, too, was "inappropriately cut[] out."

5

2000); *Longo* v. *Shore & Reich, Ltd.*, 25 F.3d 94, 97 (2d Cir. 1994)).[3] Now that Plaintiffs' claim for breach of a preliminary Type II agreement based on MOU1 has been abandoned, and the sole issue for retrial is damages under *quantum meruit*, there is no basis at all for introduction at retrial of MOU1 or any reference to its terms. Yet Plaintiffs, still clinging to the hope that the jury will be improperly influenced by MOU1 and Learning Annex's expectations under MOU1, argue that the Court's instruction at the first trial was incorrect (Pls.' Opp'n at 23 n.11), and ask the Court to alter its previous approach. (*See* Pls.' Mot. at 15-16.) The Court should reject this request and grant Defendant's motions *in limine* to exclude MOU1 and any other evidence of Plaintiffs' expectation of participating in the revenues of the free seminar business. (*See* Def.'s Mot. #3, #5.)

    Plaintiffs are simply wrong that the terms of MOU1, including the proposal that Learning Annex would share in the free seminar business revenues, is relevant to show the role that Learning Annex played and "how to value" Learning Annex's services. (Pls.' Opp'n at 16.) Again, Plaintiffs want the jury improperly to infer from evidence of what the parties contemplated that Learning Annex *might* do, or how it *might* be compensated, that it should be

---

[3]  Plaintiffs' effort to distinguish this authority on the ground that it stands only for the proposition that the terms of an unenforceable agreement may not be introduced as evidence of the "precise amount" of *quantum meruit* damages is unpersuasive. That is not what the cases say. To the contrary, they clearly stand for the proposition that it is improper to allow a plaintiff to prove expectation damages in a *quantum meruit* case, because to do so would obliterate the distinction between contract and *quantum meruit* claims. (*See* Def.'s Mot. #3 at 15 (citing cases).)

6

compensated according to those expectations. This argument betrays Plaintiffs' complete misunderstanding of the difference between contract and *quantum meruit* damages.[4]

Plaintiffs contend that by asserting that the actual services Learning Annex performed should be compensated at an hourly rate, Defendant is somehow arguing that such services were "of little value or importance [and] required little skill and experience." (Pls.' Opp'n at 17.) That is a *non sequitur*. Parties regularly pay hourly rates to consultants for services of the highest importance and skill. What renders Plaintiffs' services here less valuable (for purposes of damages in this case) is that the law of *quantum meruit* requires damages to be based on objective marketplace criteria, rather than the Plaintiffs' expectations stemming from the terms of an unenforceable deal. Plaintiffs' dissatisfaction with that legal rule is no reason for permitting them to circumvent it.

Finally, there is no need for reference to the irrelevant and prejudicial MOU1 to provide the "background and context" that Plaintiffs seek. (*Id.* at 22.) The jury may easily be informed that Plaintiffs were authorized to perform the services that they provided over the relevant time period in a non-prejudicial way, without seeing MOU1 or its unenforceable terms.

### III.
### EVIDENCE OF "PROMOTIONAL" SERVICES AND THE "INTRODUCTION" TO WHITNEY IS INADMISSIBLE
### (MOTION *IN LIMINE* #4)

In keeping with their effort to influence the jury to award damages based on non-compensable services and inapplicable legal theories, Plaintiffs seek to introduce evidence of

---

[4] Plaintiffs' only purported authority—a non-precedential summary order (*see* 2d Cir. L. R. 32.1.1(a))—for their argument that a non-binding contract may be introduced in a *quantum meruit* case actually confirms that it is error for the jury to consider such an agreement in calculating damages. *See Stillman* v. *InService Am., Inc.*, No. 10-CV-4343, 2012 WL 75345 (2d Cir. Jan. 11, 2012) (summary order) (expressly noting that it would be error to introduce evidence of unenforceable agreement "as relevant to proving the value of [the plaintiff's] services.").

services for which the initial jury rejected *quantum meruit* liability. Plaintiffs claim that they should be allowed to provide the jury with "examples of other projects Learning Annex has worked on" with Rich Global (Pls.' Opp'n at 19 n.10), as well as to emphasize that Learning Annex introduced Rich Global and Whitney (*id.* at 20-21).[5] But as the first jury found, Rich Global is not liable for these "other projects" or the Whitney introduction, and permitting Plaintiffs to inundate the jury with evidence purporting to bolster the significance of Learning Annex's role would unduly complicate the retrial and provide an improper basis for an inflated damages verdict. (*See* Def.'s Mot. #4.)

With regard to Learning Annex's "other projects," Plaintiffs appear to acknowledge that such evidence is not relevant, but suggest that they should be permitted to introduce such evidence as "general background testimony regarding the business relationship" between the parties. (Pls.' Opp'n at 19 n.10.) But there is simply no need for references to other aspects of the parties' relationship, and such evidence runs the risk of improperly influencing the jury to award damages for non-compensable services. Moreover, in light of the hours of self-aggrandizing testimony from Plaintiffs at the first trial, it is highly unlikely that Plaintiffs will now limit their evidence of "other projects" to mere brief examples for background. The Court should decline to open this Pandora's box.

Plaintiffs also argue that they are not precluded from seeking compensation for the purported "introduction" of Rich Global and Whitney, despite the first jury's ruling to the contrary, because the introduction has purportedly been established "as a matter of fact." (*Id.* at 10.) That misses the point: the first jury expressly rejected liability for that purported "fact," and

---

[5] Plaintiffs also object to Defendant's Motion *In Limine* #4 to the extent it seeks to preclude Plaintiffs from introducing evidence of services *not performed at all.* (Pls.' Opp'n at 20.) Nothing could be more telling of Plaintiffs' improper strategy of seeking damages based on frustrated expectations.

8

it cannot now form the basis for damages. Plaintiffs argue that the jury's verdict is somehow not binding because it is "a legal conclusion related to an independent basis for liability." (*Id.* at 21.) But whatever the reason for the jury's conclusion, Plaintiffs are not entitled to compensation in *quantum meruit* for an introduction that the jury found is non-compensable. As the Court has held, damages can be based solely on the carefully-enumerated and "minimal" services related to the development of the free seminar business—independent of the introduction to Whitney— upon which the first jury's verdict stands. (Order of Jan. 11, 2012 at 14-15.)

## IV.
## MR. MATLINS' TESTIMONY SHOULD BE EXCLUDED
## (MOTION *IN LIMINE* #1)

Plaintiffs' response to Defendant's motion to preclude the testimony of their purported expert on licensing agents, Seth Matlins, is nothing more than additional "spin" of insufficient "personal experience" consisting of "anecdotes from a handful of personal conversations." *See Lantec*, 306 F.3d at 1025-26. Try as they might, Plaintiffs cannot weave a silk purse out of their purported expert's sow's ear of irrelevant experience.[6] Plaintiffs are also wrong to suggest that the Court has already determined that Mr. Matlins is qualified to testify as Plaintiffs propose. (*See* Pls.' Opp'n at 1.) Although the Court stated that Mr. Matlins was qualified to offer *different* opinions at the initial trial, the Court has not previously ruled that Mr. Matlins may offer the new opinions expressed in his Supplemental Report, *i.e.*, that Learning Annex acted as a "licensing agent" and is entitled to a particular amount of compensation. (*See* Order of June 19, 2011 at 4 (precluding Mr. Matlins from opining on particular role or compensation due).) Plaintiffs are also wrong on the law. Defendant's authority rejecting

---

[6] Plaintiffs' desperate counter-attack, a bizarre request for the Court "*sua sponte*" to exclude the testimony of Mr. Pastore (Pls.' Opp'n at 10-11), should be rejected. The critical difference between the experts' qualifications is that Mr. Pastore's experience and research, unlike that of Mr. Matlins, involves actual licensing agency agreements.

9

general experience in a broader field as a qualification for specific expertise do not limit their holdings to fields in which the specialty is uniquely complex. And Plaintiffs' heavy reliance on *Pension Committee of the University of Montreal Pension Plan* v. *Banc of America Securities, LLC*, is misplaced. 716 F. Supp. 2d 220 (S.D.N.Y. 2010). That case held that the mere fact that the expert had worked as an outside consultant for a broker—as opposed to an employee of a broker—did not disqualify him where his consulting experience was extensive and highly relevant. *See id.* at 225. Defendant's objection is that Mr. Matlins' experience with licensing agents, *direct or indirect*, is practically non-existent.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court grant Defendant's Motions *In Limine*.

Dated: April 6, 2012

            Respectfully submitted,

            PAUL, WEISS, RIFKIND, WHARTON &
             GARRISON LLP


            By:  /s/ John H. Longwell
              Lewis R. Clayton (lclayton@paulweiss.com)
              Daniel J. Leffell (dleffell@paulweiss.com)
              John H. Longwell (jlongwell@paulweiss.com)

            1285 Avenue of the Americas
            New York, New York 10019
            Tel. (212) 373-3000

            *Attorneys for Defendant*