UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
LEARNING ANNEX HOLDINGS, LLC,
LEARNING ANNEX, LLC, and
and LEARNING ANNEX, L.P.,

                Plaintiffs,

      - against -

RICH GLOBAL, LLC and
CASHFLOW TECHNOLOGIES, INC.,

               Defendants.
----------------------------------------------------------------------x

            09-CV-4432 (SAS/GWG)

## JOINT SUBMISSION OF REQUESTED PRE-TRIAL STATEMENTS, JURY INSTRUCTIONS, AND SPECIAL VERDICT FORMS

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
Lewis R. Clayton
Daniel J. Leffell
John H. Longwell
1285 Avenue of the Americas
New York, New York 10019
Tel.  (212) 373-3000

*Attorneys for Defendant*

Jonathan Harris
Julie Withers
Alexander Sakin
Harris Cutler & Houghteling LLP
111 Broadway, Suite 402
New York, New York 10006
Tel. (212) 397-3370
Fax (212) 202-6206
Jon@harrislawny.com

Edwin G. Schallert
Michael Schaper
Megan K. Bannigan
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

David Deitch
Ifrah PLLC
1717 Pennsylvania Ave, NW, Suite 650
Washington DC 20006
*Attorneys for Plaintiffs*

Pursuant to the Court's direction at the pretrial conference held April 10, 2012, the parties respectfully submit the following requests for: (1) pre-trial statement to the jury; (2) jury instructions; and (3) a special verdict form.

## PRETRIAL STATEMENT TO THE JURY

PLAINTIFFS' PROPOSAL:

Let me tell you briefly what this case is about and the specific question you will be asked to decide.

This case was brought by the Learning Annex companies against Rich Dad. The Learning Annex is in the business of producing, marketing, promoting and conducting educational seminars, lectures, classes and workshops on various subjects. Rich Dad is a privately held company in the business of, among other things, writing and promoting books and providing education about personal financial literacy.[1]

Robert Kiyosaki, the owner of Rich Dad, and Bill Zanker, an owner and the President of Learning Annex, commenced a business relationship in or about 2001. In or about 2005, Learning Annex and Rich Dad began to discuss an expanded business relationship, including discussions about Rich Dad becoming involved in a new line of business, known as the free seminar business.[2]

On September 7, 2005, Learning Annex and Rich Dad representatives met at Rich Dad's offices in Phoenix, Arizona. After the meeting, the parties executed a memorandum of understanding.[3] You may hear that document referred to as MOU1. This was a non-binding

---

[1]   *Learning Annex v. Rich Global*, No. 09-CV-4432 (dkt. 82) Jun. 10, 2011 Joint Pretrial Order, Undisputed Facts ¶¶ 1, 3.
[2]   *Id.* ¶¶ 2-6.
[3]   *Id.* ¶ 7

legal document.  One aspect of MOU1 was that Learning Annex would assist Rich Dad in entering the free seminar business.  Rich Dad ultimately authorized Learning Annex to speak to third parties, including a company called Whitney, on behalf of Rich Dad to build the Rich Dad free seminar business.  After a series of events you will hear about during this trial, Rich Dad terminated Learning Annex, and Rich Dad and Whitney entered into a deal for the free seminar business.[4]

This trial involves a claim of *quantum meruit*.  *Quantum meruit* is a Latin term and it means "for the amount deserved."  The legal doctrine of *quantum meruit* provides that in certain circumstances, a party may recover the fair and reasonable value of services it has provided to another party, even if there is no legally binding contract between them.[5]

There are four elements to a *quantum meruit* claim: (1) that the plaintiff rendered services in good faith to the defendant; (2) that the defendant accepted those services; (3) that the plaintiff performed those services with a reasonable expectation of being compensated; and (4) the reasonable value of those services.[6]

A jury has already found that Learning Annex established the first three elements of *quantum meruit*.  More specifically, the jury determined that (1) Learning Annex rendered services related to the free seminar business in good faith to Rich Dad; (2) Rich Dad accepted those services; and (3) Learning Annex performed those services with a reasonable expectation of being compensated.

---

[4]     *Id. ¶¶ 8-10.*
[5]     Trial Tr. at 990:4-9.
[6]     *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

You must abide by the findings of the jury in the first trial. In other words, Rich Dad's liability has already been established and cannot be questioned. The single issue in this trial for you to decide is the amount of damages that should be paid to Learning Annex for the services it provided to Rich Dad in relation to the free seminar business. So the only issue you are being asked to decide is how much in damages should be awarded to the Learning Annex plaintiffs.[7]

DEFENDANT'S PROPOSAL:

This case is somewhat unusual in that there was a previous trial that resolved some, but not all, of the issues between the parties. So you may hear reference to certain evidence given at the first trial. But you should not speculate about the issues that have already been resolved. I will give you specific instructions about the particular issue that you are here to decide.

This case involves a claim by Learning Annex against Rich Global for the reasonable value of certain services provided by Learning Annex related to the development of a business that was formed by Rich Global and a third party, a company called Whitney.[8]

The Learning Annex is in the business of producing, marketing, promoting, and conducting educational seminars, lectures, classes, and workshops on various subjects.[9]

Rich Global, LLC is a company owned by Robert Kiyosaki (among others) that entered into a joint venture with Whitney.[10] Robert Kiyosaki is an entrepreneur and the author of the *Rich Dad, Poor Dad* series of personal finance books.

---

[7]    *Learning Annex v. Rich Global*, No. 09-CV-4432, dkt. entry no. 142, Jan. 11, 2012 Opinion and Order (ordering new trial on damages only); 4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, MODERN FEDERAL JURY INSTRUCTIONS, Comment to Instruction No. 71-11 (2011).

[8]    *See id.* at 14-16.

[9]    *Learning Annex v. Rich Global*, No. 09-CV-4432 (dkt. 159) Joint Pretrial Order, Undisputed Facts ¶ 1.

Whitney, now called Tigrent, is a company that provides seminars and educational services using the so-called "free seminar" business model, in which customers are offered a free preview before enrolling in paid courses.[11]

In mid-2006, Rich Global and Whitney entered into a joint venture called Rich Dad Education, in which Whitney provided seminars, using the "free seminar" model, with a curriculum based on Mr. Kiyosaki's financial philosophy, as described in his books.[12]

You will hear evidence that Learning Annex had a relationship with Mr. Kiyosaki's businesses and was involved to some degree in the development of the Rich Dad Education joint venture with Whitney.  Specifically, you will hear that between September 2005 and February 2006, Learning Annex provided certain services related to the business venture that eventually became Rich Dad Education.  In February 2006, the relationship between Learning Annex and Mr. Kiyosaki's businesses was terminated.

Your job is to determine the reasonable value of the services provided by Learning Annex between September 2005 and February 2006 that were related to the development of the free seminar business.

Although you may hear, by way of background, evidence about other aspects of the relationship between the parties, you must not take that evidence into consideration in calculating the reasonable value of the services related to the development of the free seminar business.  You may hear evidence about work that Learning Annex was willing to perform, but did not perform because the relationship ended.  You should value only the services actually

---

[10]    *See Learning Annex v. Rich Global*, No. 09-CV-4432, dkt. entry no. 142, Jan. 11, 2012 Opinion and Order at 2-3.

[11]    *Learning Annex v. Rich Global*, No. 09-CV-4432 (dkt. 82) Jun. 10, 2011 Joint Pretrial Order, Undisputed Facts ¶ 3.

[12]    *See Learning Annex v. Rich Global*, No. 09-CV-4432, dkt. entry no. 142, Jan. 11, 2012 Opinion and Order at 2-3.

performed, not services Learning Annex was willing to perform but did not.  You should not

speculate about the reasons why the relationship between the parties ended when it did.[13]

---

[13]      *See* Defendant's Letter to the Court of April 13, 2012 (discussing limiting instructions and citing April 10, 2012 hearing transcript).

**INSTRUCTION ON DETERMINING REASONABLE VALUE OF SERVICES**

PLAINTIFFS' PROPOSAL:

You must determine the damages to which Learning Annex is entitled.[14]  The measure of damages is the reasonable value of services provided by Learning Annex.[15]  In determining the reasonable value of the services rendered by Learning Annex, you must be able to calculate the value of Learning Annex's services with reasonable certainty.[16]  You may not include amounts based upon speculation or guesswork.[17]

What is the reasonable value of services provided?  It is the amount for which such services could have been purchased from one in the Learning Annex's position at the time and place the services were rendered, or the amount for which Rich Dad could have obtained services under like circumstances.[18]

In determining the reasonable value of services for which Learning Annex is entitled to compensation, you may consider the character of the services; the nature and importance of the potential investment; the degree of responsibility imposed or incurred; the amount or value involved; the length of time spent; the ability, skill and experience required and exercised; the character qualifications and standing of Learning Annex; and the results achieved.[19]

---

[14]     Trial. Tr. at 998:10-11.
[15]     *Id.* at 998:20-22.
[16]     *Id.* at 999:1-3.
[17]     *Id.* at 999:3-4.
[18]     *Id.* at 999:23-1000:3.
[19]     *Id.* at 1000:4-12.

Depending on the circumstances, compensation is often based on an hourly rate for the amount of time that the services are rendered .[20] There are, however, exceptions to the common practice of awarding damages on the basis of an hourly rate.  One exception is where clear and accepted marketplace conventions establish a different method of compensation.[21]  For example, real estate and other business brokers and finders are generally compensated by percentages of the purchase price customary to the locality or the business.[22]  Another example is where the value of the benefit conferred is likely to be disproportionate to the value of the services rendered, causing unjust and inequitable results if compensation were to be based on hourly rates rather than the benefits that were appropriated.[23]

Learning Annex asks you to calculate the reasonable value of services rendered by reference to a percentage of Rich Dad's revenues received from the free seminar business.[24]  To be entitled to damages on such a basis, Learning Annex must prove (1) that there are clear and accepted marketplace conventions under which certain services are compensated based on a percentage of revenues and that Learning Annex performed those services;[25] or (2) that the value of the benefit conferred on Rich Dad is likely to be disproportionate to the value of the services

---

[20]     *Id.* at 1000:13-14; *see Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 107-09 (2d Cir. 2004) (rejecting the position that awards in quasi-contract must rely upon hourly rates and stating that jury may consider "multiple factors" in determining reasonable value of services); *Carlino v. Kaplan*, 139 F.Supp.2d 563, 565 (S.D.N.Y 2001).

[21]     *Id.* at 1000:14-18.

[22]     *Id.* at 1000:18-20.

[23]     *Carlino*, 139 F.Supp.2d at 565; *see, e.g., Matarese v. Moore-McCormack Lines*, 158 F.2d 631, 635-36 (2d Cir.1947); *Dean v. Kenyon & Eckhardt, Inc.*, 240 N.Y.S.2d 551, 552 (N.Y. Sup. 1963).

[24]     Trial. Tr. at 1000:21-23.

[25]     *Id.* at 1000:23-1001:4.

rendered, causing unjust and inequitable results if compensation were to be based on hourly rates rather than the benefits that were appropriated.[26]

DEFENDANT'S PROPOSAL:

Your job is to determine the reasonable value of services Learning Annex provided to Rich Global related to the development of the free seminar business.[27]  But what is this reasonable value of the services provided?  It is the amount for which such services could have been purchased from one in the plaintiff's position at the time and place the services were rendered, or the amount for which the defendant could have obtained services under like circumstances.

In determining the reasonable value of the services for which Learning Annex is entitled to compensation, you may consider the character of the services; the nature and importance of the potential investment; the degree of responsibility imposed or incurred; the amount or value involved; the length of time spent; the ability, skill and experience required and exercised; and the character, qualifications and standing of Learning Annex.

Compensation is usually based on an hourly rate for the amount of time that the services are rendered.  There are, however, exceptions to the usual practice of awarding damages on the basis of an hourly rate when clear and accepted marketplace conventions establish a different method of compensation.  For example, real estate and other business brokers and

---

[26]     *Carlino*, 139 F.Supp.2d at 565; *see, e.g., Matarese*, 158 F.2d at 635-36; *Dean*, 240 N.Y.S.2d. at 552.

[27]     This proposed instruction, following the introductory sentence, is the Court's instruction from the first trial, *verbatim*, except for the deletion of three words. (*See* Defendant's Letter to the Court of April 13, 2012.)  If the Court is inclined to modify this instruction more significantly, as Plaintiffs propose, Defendant seeks additional modifications as explained in its letter to the Court accompanying this joint submission.

finders are generally compensated by percentages of the purchase price customary to the locality or the business.

Learning Annex asks you to calculate the reasonable value of services rendered by reference to a percentage of Rich Dad's revenues.  To be entitled to damages on such a basis, Learning Annex must prove not only clear and accepted marketplace conventions under which certain services are compensated based on a percentage of revenues, but also that Learning Annex performed those services and that it is appropriate to determine the compensation to which it is entitled by reference to Rich Dad's revenues.  However, if no clear and accepted marketplace convention exists, it would be improper for you to award damages on such a basis, because you would essentially be writing a contract for the parties where none was written.  Of course you may not speculate when calculating a damages award but must base it on a fair inference from the evidence in the record.

## OTHER INSTRUCTIONS

PLAINTIFFS' REQUESTS:

### Before Deliberations: Liability/Quantum Meruit Summary

As you know, this case has already been tried once, and many of the issues have already been decided. Those findings are as follows:

First, that Learning Annex rendered services in good faith to Rich Dad;

Second, that Rich Dad accepted those services; and

Third, that Learning Annex performed the services with a reasonable expectation of being compensated by Rich Dad.

For the purposes of this trial, the first jury's findings are settled and conclusive. You are not to second-guess those findings. Your role is to determine the amount of damages to which Learning Annex is entitled.[28]

### Depositions

Some of the testimony has been presented in the form of depositions that have been received in evidence. A deposition is a procedure where the attorneys for one side may question a witness or adversary party under oath before a court reporter prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony a witness gave at trial.[29]

---

[28]   4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, MODERN FEDERAL JURY INSTRUCTIONS, Comment to Instruction No. 71-11 (2011); *Learning Annex v. Rich Global*, No. 09-CV-4432, dkt. entry no. 142, Jan. 11, 2012 Opinion and Order (ordering new trial on damages only).

[29]   4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, MODERN FEDERAL JURY

**Expert Witnesses**

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.[30]

DEFENDANT'S REQUEST:

**Interest**

If you award damages to Learning Annex on its claim, then Learning Annex will also be entitled to interest under New York Law.[31]  It is your job to determine the date from which such interest should begin accruing.[32]  That date should be the earliest ascertainable date on which the

---

INSTRUCTIONS, Instruction No. 74-14 (2002).

[30]      4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, MODERN FEDERAL JURY INSTRUCTIONS, Instruction No. 76-9 (2011).

[31]      Tr. at 1001:11-19; *see* N.Y. Civ. Prac. Law §5001(b).

[32]      *Id.*

claim existed, but if you cannot ascertain that date with precision, the computation should be

from the earliest time at which it may be said that damages were incurred.[33]

---

[33]     *Id.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                            :
LEARNING ANNEX HOLDINGS, LLC                :
And LEARNING ANNEX, LLC,                     :
                                            :
                    Plaintiffs,             :
                                            :
                                            :
        v.                                  :   No. 09 Civ. 4432 (SAS)
                                            :
RICH GLOBAL, LLC and                         :
CASHFLOW TECHNOLOGIES, INC.,                 :
                                            :
                    Defendant.              :
_____   :


**<u>SPECIAL VERDICT FORM</u>**


We, the jury, unanimously respond to the following question:


<u>PLAINTIFFS' PROPOSAL</u>:


1.  What is the reasonable value of the services rendered by Learning Annex to Rich Dad in
    connection with the free seminar business?



    $_____



    _____              _____

    Date                              Foreperson


14

DEFENDANT'S PROPOSAL:

1.   Has Learning Annex proved, by a preponderance of the evidence, that in providing

    services related to the development of Rich Global's free seminar business with Whitney,

    Learning Annex acted as a licensing agent?

                         YES _____          NO _____

         **If "NO," skip to Question 4.**

         **If "YES," answer Question 2.**

2.   Has Learning Annex proved, by a preponderance of the evidence, a clear and accepted

    marketplace convention for compensation of a licensing agent?

                         YES _____          NO _____

         **If "NO," skip to Question 4.**

         **If "YES," answer Question 3.**

3.   What is the reasonable value of services related to the development of the free seminar

    business, as provided by Learning Annex to Rich Global, based on a percentage of Rich

    Global's revenues?

                         $ _____

         **Answer either Question 3 or Question 4, not both.**

4.   What is the reasonable value of services related to the development of the free seminar

    business, as provided by Learning Annex to Rich Global, based on an hourly rate?

                         $ _____

         **Answer either Question 3 or Question 4, not both.**

CONSENTED TO:


By:    /s/ John H. Longwell_____

Lewis R. Clayton (lclayton@paulweiss.com)
Daniel J. Leffell (Dleffell@paulweiss.com)
John H. Longwell (jlongwell@paulweiss.com)
(*signed with consent of Mr. Longwell*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New  York
Tel.  (212) 373-3000
Fax. (212) 3737-2537

By:    /s/ Michael Schaper_____

Edwin G. Schallert (egschall@debevoise.com)
Michael Schaper (mschaper@debevoise.com)
Megan K. Bannigan (mkbannig@debevoise.com)
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Tel. (212) 909-6000
Fax (212) 909-6836


Jonathan Harris (jon@harrislawny.com)
Julie Withers (jwithers@harrislawny.com)
Harris & Houghteling LLP
111 Broadway, Suite 402
New York, New York 10006
Tel. (212) 397-3370
Fax (212) 202-6206

David Deitch
Ifrah PLLC
1627 Eye Street NW, Suite 1100
Washington DC 20006

*Attorneys for Plaintiffs*