UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEARNING ANNEX HOLDINGS, LLC, LEARNING ANNEX, LLC, and LEARNING ANNEX, L.P., <br><br>       Plaintiffs, <br><br>       v. <br><br> RICH GLOBAL, LLC and CASHFLOW TECHNOLOGIES, INC., <br><br>       Defendants. | 09 Civ. 4432 (SAS) (GWG) <br><br> ECF Case |

**DEFENDANT RICH GLOBAL LLC'S REPLY IN SUPPORT
OF MOTION FOR JUDGMENT AS A MATTER OF LAW OR,
<u>IN THE ALTERNATIVE, FOR A NEW TRIAL</u>**

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
Lewis R. Clayton
Daniel J. Leffell
John H. Longwell
1285 Avenue of the Americas
New York, New York 10019
Tel.  (212) 373-3000

*Attorneys for Defendant*

**ARGUMENT**

When a new business is successful, there is rarely a shortage of outsiders who can claim to have made some valuable contribution—some introduction of key players, or some unique idea—for which they seek payment. But when the outstretched hands of such parties turn to the courts, the law is justifiably wary of their claims. In New York, the basic rule is "no contract, no recovery." And there are no fewer than four distinct legal rules under New York law designed to prevent a plaintiff from circumventing contract requirements with a claim for *quantum meruit* seeking compensation for a role in the formation of new business venture.

*First*, the Statute of Frauds requires that the parties *agree in writing* that the plaintiff will be compensated for brokering a business deal; *second*, agreements *not to be bound* pending negotiation of a formal contract are strictly enforced, to the exclusion of *quantum meruit* claims; *third*, there is no reasonable expectation of compensation in *quantum meruit* where a plaintiff acts in its own self-interest to bring a deal together; and *fourth*, a plaintiff's expectation interest under an unenforceable contract is inadmissible to prove *quantum meruit* damages.

As explained in our opening brief, the verdict in this case violates *all* of these important legal principles. The parties never agreed in writing that Learning Annex would be compensated for efforts related to the Rich Dad Education venture, so the Statute of Frauds bars Plaintiffs' claim. To the contrary, the parties signed a memorandum of understanding expressly rejecting any legal obligation to each other pending the negotiation of formal contracts, and that agreement should be enforced. The "services" for which Learning Annex seeks compensation were efforts to bring to fruition a deal in which Learning Annex hoped to, but ultimately did not, participate, so there is no reasonable expectation of compensation as a matter of law. And the jury awarded damages for Learning Annex's frustrated expectation based on improperly admitted

evidence of the parties' purported intent with regard to a deal that was never struck. The law of New York does not permit a plaintiff to recover under *quantum meruit* in these circumstances.

# I.
# PLAINTIFFS' CLAIM IS BARRED BY NEW YORK'S STATUTE OF FRAUDS

New York's Statute of Frauds expressly requires sufficient *written evidence of an agreement* to compensate the plaintiff to support a claim based on "contract implied in fact or in law" for compensation for services related to the development of a business opportunity. N.Y. GEN. OBLIG. LAW § 5-701(a)(10). This provision bars Plaintiffs' *quantum meruit* claim.

**1.** Our opening brief demonstrated why the evidence was flatly insufficient to overcome the MOU's provision that the parties would have no obligation to each other pending execution of a formal contract. (Br. at 4-6.) In response, Plaintiffs raise the procedural objection that the Court may not consider on this motion an argument challenging *liability*, as opposed to damages. (Opp. at 3.) But Plaintiffs cite no authority for this argument, and it is incorrect. A district court is empowered under the Federal Rules of Civil Procedure to grant judgment as a matter of law if there is no "legally sufficient evidentiary basis" to support Plaintiffs' claim. Fed. R. Civ. P. 50(a)(1); *see also, e.g.*, *Best Brands Beverage, Inc.* v. *Falstaff Brewing Corp.*, 842 F.2d 578, 586 (2d Cir. 1987) (requiring judgment as matter of law where plaintiff is unable to establish "essential element" of its claim); *Ramirez* v. *N.Y.C. Off-Track Betting Corp.*, 112 F.3d 38, 40 (2d Cir. 1997) (noting where, as here, a jury's award of damages was "infected by fundamental error," judgment can be vacated in favor of a new trial). Defendant's argument under the Statute of Frauds challenges the legal sufficiency of the evidence of a writing, and is

therefore proper under Rules 50 and 59. Although the challenge relates to the evidence of liability before the initial jury, there is no reason why the Court may not consider it now.[1]

On the merits, Plaintiffs merely refer to three New York cases—*Morris Cohon*, *Davis*, and *Springwell*—that apply the general rule that in order to satisfy the Statute of Frauds for a claim in *quantum meruit*, the plaintiff must identify a writing or writings sufficient to establish an agreement by the defendant to compensate the plaintiff for the services at issue. (Opp. at 4.) Although Plaintiffs fault Defendant for "mak[ing] no attempt to distinguish these cases" (*id.*), there is no need for Defendant to do so. Neither *Morris Cohon*, *Davis*, nor *Springwell* addressed a situation in which the parties had expressly agreed not to be bound, nor held that the Statute of Frauds could be satisfied by evidence remotely as flimsy as that offered by Plaintiffs here. Indeed, we are aware of no authority under New York law that would support the conclusion that Plaintiffs' claim survives the Statute of Frauds.

**2.** Our opening brief also showed why, at a minimum, it was improper for the jury to award damages for the introduction of Rich Global and Whitney even though the first jury found that the introduction was not compensable under the Statute of Frauds. (Br. at 7-8.)

In response, Plaintiffs do not dispute that, despite the first jury's conclusion that there was insufficient written evidence of an agreement to compensate Learning Annex for the introduction, Learning Annex sought and was awarded damages for that introduction at the retrial as one of the "services related to the development of the free seminar business" at issue. (Opp. at 4-5.) That concession makes Defendant's point. According to the liability verdict, the Statute of Frauds *precludes* Plaintiffs, as a matter of law, from recovering damages based on the

---

[1] For the same reasons, there is no merit to Plaintiffs' procedural objections to Defendant's other challenges to the legal sufficiency of the liability verdict. (Opp. at 6, 9.)

introduction.  Therefore, the second jury's damages award is legally improper to the extent it compensates Learning Annex for the introduction, and should be vacated.

Plaintiffs seek to avoid the first jury's finding of no liability for the introduction through a nonsensical reading of the initial jury's special verdict form.  That form asked the jury to consider whether the Statute was satisfied with regard to two *separate* categories of services: (1) the introduction, and (2) other "services related to the development of the free seminar business."  (Ex. A,[2] Special Verdict Form, July 12, 2011 at 1, 2.)  The initial jury answered "no" with regard to the introduction but "yes" with regard to other services.  *Id*.  Plaintiffs now ask the Court to disregard the jury's answer about the introduction, and read "services related to the development of the free seminar business" to *include* the introduction.  This cannot be.  It would render meaningless the jury's specific finding that the Statute was not satisfied with regard to the introduction.  And it is inconsistent with the Court's instructions to the first jury describing the introduction as a separate service from others related to the development of the free seminar business.  (*E.g.*, Ex. B, First Trial Tr. at 993:9-17.)

## II.
## *QUANTUM MERUIT* IS UNAVAILABLE
## WHERE THE PARTIES HAVE EXPRESSLY AGREED
## NOT TO BE BOUND PENDING A FORMAL AGREEMENT

Unlike a typical *quantum meruit* case, where there is either no written agreement or the operative agreement is unenforceable for some technical reason, this case involves an express agreement by the parties *not to be bound* pending execution of a formal contract.  As shown in our opening brief, there is a well-developed body of New York law dealing with such "preliminary" agreements. (Br. at 9.)  These cases stand for two fundamental propositions.  First, New York courts strictly enforce a party's right to disclaim any obligation to another prior to

---

[2]  Exhibits are attached to the accompanying Declaration of John H. Longwell.

4

negotiation and execution of a formal agreement.  *Jordan Panel Sys., Corp.* v. *Turner Constr. Co.*, 841 N.Y.S.2d 561, 565 (1st Dep't 2007).  Second, and relatedly, liability under a preliminary "agreement to agree" is limited to out-of-pocket expenses resulting from a breach of the duty to negotiate in good faith.  *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 431 (2d Cir. 2011); *see also Adjustrite Sys., Inc.* v. *GAB Bus. Servs., Inc.*, 145 F.3d 543, 548 (2d Cir. 1998).

These specific rules governing preliminary agreements, if they are to have any meaning or effect, must trump more general *quantum meruit* principles.  *See Jordan Panel Sys.*, 841 N.Y.S.2d at 572 (rejecting *quantum meruit* claim in light of defendant's reservation of right not to be bound).  Otherwise, a party could always get around them by arguing—as Plaintiffs did here—that despite Rich Global's reservation of its right to be free of legal obligation to Learning Annex pending a formal contract, Rich Global is liable to Learning Annex in quasi-contract for the value of services provided prior to the execution of a contract.  The problem is especially acute when, as here, Learning Annex is then permitted to seek damages for the value of those services approximating its expectation interest under the contract that never was.[3]

### III.
### *QUANTUM MERUIT* IS UNAVAILABLE WHERE A PARTY ACTS IN FURTHERANCE OF ITS OWN DESIRE TO PARTICIPATE IN A BUSINESS OPPORTUNITY

As the cases cited in our opening brief hold, under New York law a party cannot have a reasonable expectation of compensation in *quantum meruit* for services provided in the self-interested hope of participating in a potential business opportunity.  (Br. at 10-12.)  This rule

---

[3] Plaintiffs cite only one case, the Second Circuit's decision in *Longo*, for the proposition that a *quantum meruit* claim may lie despite the parties' intent not to be bound pending a formal agreement.  (Opp. at 7 (citing *Longo* v. *Shore & Reich*, 25 F.3d 94, 98 (2d Cir. 1994)).)  In that case, however, despite the lack of an enforceable employment contract, the defendant *employed and paid* the plaintiff for three months and therefore it was undisputed that defendant had agreed to compensate the plaintiff.  *Longo*, 25 F.3d at 98.  Indeed, the First Department expressly rejected Plaintiffs' reading of *Longo* in dismissing the *quantum meruit* claim in *Jordan Panel*.  841 N.Y.S.2d at 572 n.13.

makes perfect sense: it is commonplace for parties to invest time and resources in pursuit of business opportunities that do not pan out. New York law provides no insurance in the everyday event that such efforts are for naught.

In response, Plaintiffs suggest incorrectly that they were required only to show that they "expected some form of compensation for [their] services." (Opp. at 9.) But this is not the law—a plaintiff's expectation of compensation must be *reasonable*, and New York courts have interpreted this requirement to preclude, as a matter of law, expectation of compensation for self-interested efforts to win new business. *See, e.g.*, *Songbird Jet Ltd., Inc.* v. *Amax Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 1984); *Cunningham* v. *Merchant-Sterling Corp.*, 587 N.Y.S.2d 492, 494 (Sup. Ct. 1991).[4]

Plaintiffs also seek to distinguish Defendant's authority on the ground that the cases involved deals that "either never came to fruition or failed." (Opp. at 10.) As noted in Defendant's opening brief, however, the success (or lack thereof) of the deal in question has no bearing on the reasonableness of Plaintiffs' expectation of compensation for business-building efforts, and it was not part of the reasoning of the cases cited. (Br. at 11-12.)

### IV.
### IT WAS ERROR FOR THE COURT TO ALLOW THE JURY TO CONSIDER EVIDENCE OF THE PARTIES' INTENT

We respectfully submit that it was error for the Court to allow Plaintiffs to present evidence of their expectation interest, in the form of the MOU and other evidence, in support of their claim for damages in *quantum meruit*. (Br. at 13-14; *see also* Ex. C, Tr. at 849:23-850:3

---

[4] Plaintiffs are incorrect that *Cunningham* is inapplicable here: although Plaintiffs focus on *one* of the grounds for dismissal in that case (*i.e.*, that there was no unjust enrichment because the business venture failed), they ignore the other, relevant, ground (*i.e.*, that "business executives cannot reasonably expect payment for mere preliminary activities when the negotiations fail to achieve their objective"). 587 N.Y.S.2d at 494.

(permitting jury to consider "the potential role that Learning Annex might play in the future"), 850:11-14 (permitting consideration of "the services Learning Annex was willing to perform").)[5]

Plaintiffs argue in opposition, first, that Learning Annex's true "expectation interest" under the MOU was that it would be compensated at a rate of 60% of the free seminar business income, and that the Court excluded that term. (Opp. at 11.) While it is true that the Court rejected Plaintiffs' effort to introduce the clearly inadmissible 60% figure, the Court did not bar other evidence of Plaintiffs' expectations—in particular, of services that the Plaintiffs were willing to, but did not perform, and of their expectation that they would be compensated through a share of revenues of the free seminar business. (Br. at 14.) The fact that the Court excluded some evidence of Plaintiffs' expectation under the MOU does not cure its failure to exclude *all* such evidence.

Second, Plaintiffs argue that Learning Annex's expectations were relevant to show the "role that Learning Annex played." (Opp. at 11-12.) This is not true. The only evidence relevant to the role that Learning Annex played, for *quantum meruit* purposes, was evidence of the services that it *actually performed*. Evidence of the parties' intent or expectations, by contrast, showed the jury the role that Learning Annex *hoped or expected* to perform, and that is precisely the problem. The law of *quantum meruit* does not permit damages to be awarded for services not performed, but that *would have* been performed if the parties had a contract. *See, e.g., Mem'l Drive Consultants, Inc.* v. *ONY, Inc.*, 29 F. App'x 56, 61 (2d Cir. 2002) (evidence concerning "the benefit of [the parties'] bargain" under an unenforceable contract "improperly

---

[5] We respectfully submit that the Court's limiting instruction that the MOU could not be considered for the purpose of damages (the only issue at the retrial) was both confusing and insufficient to cure the error. *See, e.g., Fish* v. *Ga.-Pac. Corp.*, 779 F.2d 836, 840 (2d Cir. 1985) (holding that "the erroneous charge and the admission of evidence which should have been excluded damaged the defense beyond the possibility of repair by curative instructions.").

7

[seeks] to establish something like [the plaintiff's] *expectation* interest," which is not "the proper focus of *quantum meruit*" (citing *Collins Tuttle & Co., Inc.* v. *Leucadia, Inc.*, 544 N.Y.S.2d 604, 605 (1st Dep't 1989))).[6]

Finally, Plaintiffs argue that Rich Global somehow opened the door to evidence of Learning Annex's expectation interest, or otherwise waived its objection. (Opp. at 13.) Neither is true. Rich Global made motions *in limine* on precisely this issue, which were sufficient to preserve its objection. (*See* Def.'s Mots. *in Limine* Nos. 3 and 5, Mar. 23, 2012); *see also Rosenfeld* v. *Basquiat*, 78 F.3d 84, 90-91 (2d Cir. 1996) (explaining that evidentiary issues "not contextually bound" are preserved by a motion *in limine* when the issues were presented to the trial court, could be finally decided before trial, and were subject to a definite ruling by the trial judge). And Rich Global certainly did not elicit any testimony about Learning Annex's expectation interest. Plaintiffs cite to a portion of Mr. Kane's testimony in which he stated that Learning Annex would receive a revenue share from expo participants in return for promoting expos. (Ex. C, Tr. at 487:9-488:9.) But this testimony had nothing to do with Learning Annex's expectation of being a partner in a business that did not involve expos. Plaintiffs' other citation, to purported questioning by Rich Global about "whether Zanker was a partner" (Opp. at 13 (citing Ex. C, Tr. at 223:14-17)), has nothing to do with partnership.

---

[6] The Second Circuit's opinion in *Stillman*, a summary order with no precedential effect under 2d Cir. Loc. R. 32.1.1(a), is not to the contrary. (*See* Opp. at 12 (citing *Stillman* v. *InService Am., Inc.*, No. 10-CV-4343, 2012 WL 75345, at *1 (2d Cir. Jan. 11, 2012) (summary order))). In *Stillman*, the court held that evidence of an unenforceable oral employment contract was admissible solely for the limited purpose of determining whether plaintiff's claim was barred by the Statute of Frauds, and expressly warned that it would be error to introduce such evidence "as relevant to proving the value of [the plaintiff's] services." *Id.*

8

## V.
## THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT PLAINTIFFS' DAMAGES THEORY

Plaintiffs' opposition does not credibly rebut any of the reasons in our opening brief why Plaintiffs' theory that they acted as a "licensing agent" fails as a matter of law. We address just one of Plaintiffs' responses here. On the key question—whether the purported 35-40% marketplace convention *properly applied* to the services rendered by Learning Annex—the evidence is insufficient to sustain the verdict. Plaintiffs rely exclusively on a statement from *The Licensing Business Handbook* that supports the idea that parties who perform licensing agent services often receive such a commission. (Opp. at 17.) Even assuming that statement is correct (contrary to more recent statements by the same authors (Ex. C, Tr. at 341:8-15 (*Licensing Letter* article noting that there was and is "no standard licensing deal"))), the undisputed evidence of actual licensing agreements showed that parties who do not complete negotiations *and* perform ongoing management of a licensing program are paid far less. Plaintiffs offered no licensing agreement to support their theory to the contrary, without which there was no legally sufficient evidentiary basis for the jury to find that a 33% commission reflected the reasonable value of Plaintiffs' services. *See Carlino* v. *Kaplan*, 139 F. Supp. 2d 563, 565-66 (S.D.N.Y. 2001).[7]

## VI.
## THE COURT SHOULD ORDER A *REMITTITUR*

Our opening brief argued that the Court should, at a minimum, remedy the manifest injustice of the excessive damages verdict by ordering a *remittitur* under N.Y. C.P.L.R. § 5501(c) based on cases in which juries have awarded a commission in the low single digits to parties who have made a valuable introduction leading to a successful transaction. (Br. at 21-22.)

---

[7] On the issue of whether the Court should have exercised its discretion to permit Defendant to present additional expert and fact witness testimony at the damages retrial (Br. at 20-21), Plaintiffs have failed to rebut Defendant's argument and no further briefing is necessary.

Plaintiffs argue that it would be inappropriate to do so because Rich Global did not argue at trial that Learning Annex should be compensated in this way. (Opp. at 20-22.) But this argument misunderstands the function of *remittitur*. In considering a *remittitur*, it is up to the Court to determine, based on its own review of analogous case law, whether damages are excessive in light of the facts at trial. *See, e.g.*, *Gasperini* v. *Ctr. for Humanities, Inc.*, 518 U.S. 415, 424 (1996). The characterization of those facts and theories of the parties at trial do not determine what makes an analogous case. *See Thorsen* v. *County of Nassau*, 722 F. Supp. 2d 277, 292 (E.D.N.Y. 2010) (court "should not limit its review too narrowly"); *Martinez* v. *Port Auth.*, 445 F.3d 158, 160 (2d Cir. 2006) (reviewing awards from other cases which are "similar, even if not wholly identical" to the case at issue). Thus, whether Defendant characterized Learning Annex as a "finder," a "business consultant," or something else at trial is irrelevant. The critical issue in determining an appropriate damages award under the *remittitur* statute is whether the 33% commission awarded by the jury is reasonably in line with damages in other cases in which plaintiffs have been awarded commissions for similar services. For the reasons explained in our opening brief, the verdict in this case exceeds by more than ten times a reasonable award, and should be reduced accordingly.

## VII.
## THE COURT SHOULD GRANT A STAY OF THE JUDGMENT PENDING APPEAL

If the Court does not vacate the jury award and enters judgment, then it should stay enforcement of the judgment in order to permit Rich Global to take an appeal of the substantial questions raised by this case. In opposition to this request, Plaintiffs rehash the same *ad hominem* attacks about asset transfers that the Court previously rejected. (Opp. at 24.) But the security currently in place—an order preventing the transfer of assets from the Defendant—is plainly sufficient to protect Plaintiffs' interests. A *supersedeas* bond requirement, on the other

hand, is simply infeasible, as Defendant's representatives have previously affirmed. (Br. at 23.)[8] Indeed, now that Rich Global, LLC is the *sole* defendant, the financial hardship of a *supersedeas* bond is magnified. Plaintiffs do not argue that the Court lacks discretion to stay enforcement of the judgment on the terms currently in place, and have identified no reason why that security is inadequate to protect a judgment. For these reasons, we respectfully request that in the event the Court enters judgment on the verdict, that judgment should be stayed pending appeal on the basis of a continuation of the asset protection order currently in effect. (*See* Court's Endorsement of Plaintiff's Letter, May 17, 2012 (dkt. no. 194); Order of Sept. 27, 2011 at 2-3 (dkt. no. 133).)

Dated: June 8, 2012

                              Respectfully submitted,

                              PAUL, WEISS, RIFKIND, WHARTON &
                               GARRISON LLP

                              By: \_\_\_/s/ Lewis R. Clayton_____
                                  Lewis R. Clayton (lclayton@paulweiss.com)
                                  Daniel J. Leffell (dleffell@paulweiss.com)
                                  John H. Longwell (jlongwell@paulweiss.com)

                              1285 Avenue of the Americas
                              New York, New York 10019
                              Tel. (212) 373-3000

                              *Attorneys for Defendant*

---

[8] Should the Court agree with Plaintiffs that additional evidentiary support for this request is needed, Defendant stands ready to submit it.