UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                           :

LEARNING ANNEX HOLDINGS, LLC, :
LEARNING ANNEX, LLC, and
LEARNING ANNEX, L.P.,          :
                           :
       **Plaintiffs,**     :
                           :
     **- against -**       :
                           :

RICH GLOBAL, LLC,          :
                           :
       **Defendant.**    :
------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/13/12

**OPINION AND ORDER**
09 Civ. 4432 (SAS)

## I.    INTRODUCTION[1]

        Learning Annex Holdings, LLC, Learning Annex, LLC, and Learning

---

[1]    This Opinion assumes familiarity with the background and procedural posture of this case, as described in *Learning Annex Holdings, LLC v. Whitney Educ. Grp., Inc.*, 765 F. Supp. 2d 403 (S.D.N.Y. 2011) ("Summary Judgment Opinion") (granting defendants summary judgment on all claims except for breach of duty to negotiate in good faith, *quantum meruit*, and unjust enrichment); *Learning Annex Holdings, LLC v. Rich Global, LLC*, No. 09 Civ. 4432, 2011 WL 2732550 (S.D.N.Y. July 11, 2011) ("Rule 50(a) Opinion") (denying defendants' motion for judgment as a matter of law); *Learning Annex Holdings, LLC v. Rich Global, LLC*, No. 09 Civ. 4432, 2011 WL 3423927 (S.D.N.Y. Aug. 3, 2011) ("Rule 25(c) Opinion") (granting plaintiffs' motion to join Learning Annex, L.P. as a plaintiff); *Learning Annex Holdings, LLC v. Rich Global, LLC*, No. 09 Civ. 4432, 2011 WL 3586138 (S.D.N.Y. Aug. 12, 2011) ("Unjust Enrichment Opinion") (dismissing plaintiffs' unjust enrichment claim); *Learning Annex Holdings, LLC v. Rich Global, LLC*, No. 09 Civ. 4432, 2012 WL 92281 (S.D.N.Y. Jan. 11, 2012) (granting a new trial on damages).

Annex, L.P. (collectively, "Learning Annex" or "LA") bring this action against Rich Global, LLC ("Rich Global") following the collapse of their business relationship.  This relationship began in 2001 when Robert Kiyosaki – now the owner, along with Kim Kiyosaki, of the Rich Global entities – became a featured speaker at Learning Annex expositions.[2]  In the hopes of expanding their relationship, Learning Annex and Rich Dad entered into a Memorandum of Understanding ("MOU") on September 7, 2005, in which the parties agreed to "develop and conduct the free seminar business with follow up fee based courses."[3] The MOU stated that it was not intended to be binding on the parties.[4]  Shortly thereafter on September 15, 2005, Sharon Lechter, then a member of Rich Global's management team, sent an email to William Zanker, the principal owner and President of Learning Annex, authorizing Learning Annex "to develop and conduct free Rich Dad seminars with follow up courses in the United States and Canada."[5] Ultimately, Rich Global broke off the relationship on February 2, 2006 by means

---

[2]     *See* First Trial Transcript ("First Tr.") at 154, 634.

[3]     First Trial Exhibit ("First Ex.") 41A; First Tr. at 136-37.

[4]     *See* First Ex. 41A.

[5]     First Ex. 47; *see also* First Tr. at 142-43, 397-98.

of an email from Lechter to Zanker.[6]  On July 18, 2006, Rich Global entered into

formal agreements to form a business relationship with Whitney Education Group,

Inc. (collectively with related entities, "Whitney") to pursue the free seminar

business.[7]  From 2007 to 2010, this free seminar business brought in total cash

sales of $437.8 million, of which Rich Global received nearly $45 million in

royalties.[8]

On July 13, 2011, a jury awarded plaintiffs approximately $14.6

million in damages on a *quantum meruit* claim for uncompensated "services

related to the development of the free seminar business."[9]  On January 11, 2012, I

granted Rich Global a new trial on damages.[10]  On April 24, 2012 a re-trial on

damages began, and the jury rendered a verdict for $15,863,696 on April 30,

2012.[11]  Rich Global now moves, again, for judgment as a matter of law or, in the

alternative, for a new trial.

---

[6]     *See* First Ex. 132; First Tr. at 420:2-13.

[7]     *See* Exs. 231, 259; Tr. at 544.

[8]     *See* Tr. at 473:11-14, 484:2-10.

[9]     *Id.* at 1014:14-1015:3.

[10]    *See Learning Annex*, 2012 WL 92281, at *10.

[11]    *See* Second Trial Transcript ("Second Tr.") at 864.

## II.   LEGAL STANDARD

A court may render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[12]  The standard for granting judgment as a matter of law "mirrors" the standard for granting summary judgment.[13]  Accordingly, in ruling on such a motion, the trial court is required to

> consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.  The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.[14]

A jury verdict cannot be set aside lightly.  A court may not grant judgment as a matter of law unless (1) there is such a "'complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture'" or (2) there is "'such an overwhelming amount of evidence in

---

[12]     Fed. R. Civ. P. 50(a)(1).

[13]     *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quotation marks and citations omitted); *Kerman v. City of New York*, 374 F.3d 93, 118 (2d Cir. 2004).

[14]     *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (quotation marks and citation omitted).

4

favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].'"[15]

A "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[16]  The legal test for granting a new trial is less stringent than for granting judgment as a matter of law.  "Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict."[17]  Nevertheless, in practice courts do not grant new trials as freely as the language suggests.  "'A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'"[18]

---

[15]   *United States v. Space Hunters, Inc.*, 429 F.3d 416, 429 (2d Cir. 2005) (quotation marks and citation omitted).  *Accord Doctor's Assocs. v. Weible*, 92 F.3d 108, 111-12 (2d Cir. 1996).

[16]   Fed. R. Civ. P. 59(a)(1)(A).

[17]   *See Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir. 2000) (quotation marks and citation omitted).

[18]   *Tesser v. Board of Educ.*, 370 F.3d 314, 320 (2d Cir. 2004) (quoting *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 623-24 (2d Cir. 2001)).

Under Federal Rule of Civil Procedure 50(b), "[n]o later than 28 days after the entry of judgment . . . the movant may file a renewed judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law."

## III.   DISCUSSION

### A.   Statute of Frauds

#### 1.   Existence of Written Evidence

Rich Global renews its argument that no written evidence establishes an agreement by Rich Global to compensate Learning Annex for the services it provided. This issue was raised in connection with the first trial, and I considered it in the Rule 50(a) Opinion. In that opinion, I ruled that a reasonable jury could find a written agreement, sufficient to satisfy the statute of frauds, supporting Learning Annex's *quantum meruit* claim.[19] In particular, I relied on the following exhibits from the first trial:

• Plaintiffs' Exhibit 60 – a September 15, 2005 letter from Sharon Lechter expressly authorized Learning Annex "to develop and conduct free Rich Dad seminars with follow-up courses in the United States and Canada";

---

[19]   *See* Rule 50(a) Opinion, 2011 WL 2732550, at *4-6.

- Plaintiffs' Exhibit 94 – a December 19, 2005 letter from Robert Kiyosaki, Kim Kiyosaki and Lechter, asking Learning Annex to "please discontinue any negotiations you are involved in on our behalf whether approved by us (e.g., regional seminars) or not"; and

- Plaintiffs' Exhibit 143 – a February 14, 2006 email from Zanker to Lechter and Kim Kiyosaki, stating that Learning Annex "will accept whatever you deem appropriate, if anything, at your discretion, for the introduction of Russ Whitney . . . ."[20]

Indeed, the first jury answered affirmatively to the following question, specifically tailored to determine if the statute of frauds was satisfied: "Has Learning Annex proven, by a preponderance of the *written* evidence required under New York law, an agreement with Rich Dad to be compensated for services related to the development of the free seminar business?"[21]  Rich Global does not offer any new arguments sufficient to disturb the well-settled law of the case that there was a triable issue of fact as to whether the statute of frauds was satisfied.  Moreover, because this issue was not even addressed in the second trial, this argument is more properly addressed to the Second Circuit.

### 2.     Damages for Learning Annex's Introduction

Rich Global argues that it was error to admit evidence concerning

---

[20]     *Id.* at *4-5.

[21]     First Special Verdict Form, Question 4 (emphasis in original).

Learning Annex's introduction of Whitney because the first jury determined that sufficient writings did not exist to establish an agreement to compensate Learning Annex for the introduction.[22]  Rich Global also argues that the second jury was permitted to improperly award damages based on promotional services for which the first jury found no liability.

As discussed below with respect to Rich Global's argument that the jury improperly awarded expectation damages,[23] evidence concerning the Whitney introduction and promotional services were admitted only as background evidence to the parties' relationship and as evidence as to what role Learning Annex played. The introduction was only one, of many factors, that went into the jury's finding that Learning Annex acted as a licensing agent.  The jury was clearly instructed that "you are to focus solely on the services [Learning Annex] provided related to the development of the free seminar business.  You may not award damages for any other aspect of the parties' relationship."[24]  Accordingly, Rich Global's request for a new trial on the basis that the jury awarded damages solely for the Whitney introduction, or for Learning Annex's performance of promotional services, is

---

[22]     *See* First Tr. at 1014:8-12.

[23]     *See infra* Part III.D.1.

[24]     Second Tr. 849-850.

8

denied.

**B.     *Quantum Meruit***

**1.     Availability Where There Is an Agreement Not to Be Bound**

Rich Global reiterates its argument that there can be no *quantum meruit* liability, as a matter of law, because the parties expressly agreed not to be bound in the MOU.  According to Rich Global, the only liability that can arise from a non-binding preliminary agreement is the duty to negotiate in good faith.  Allowing Learning Annex to recover in *quantum meruit* contradicts the terms of the parties' agreement.

I rejected this argument in the decision on the post-trial motions after the first trial.  I noted that there was sufficient evidence, after the signing of the MOU, to establish that Learning Annex had a reasonable expectation of compensation, despite the initial agreement not to be bound.[25]  Rich Global fails to raise any additional case law or arguments that would require reconsideration of my prior ruling.

**2.     Availability In Pursuit of a Business Opportunity**

Rich Global argues, as it did in its first post-trial motion, that *quantum meruit* is unavailable when a party acts in furtherance of its own desire to

---

[25]     *See* 1/11/12 Opinion and Order at 11-14 [Docket No. 142].

participate in a business opportunity because, as a matter of law, there is no

reasonable expectation of compensation in such circumstances.[26]  In my January

11, 2012 Opinion, I distinguished Rich Global's legal support for this argument on

the basis that the cases cited by Rich Global involved failed businesses.[27]  Rich

Global argues that there is no logical basis for such a limitation and relies heavily

on *Cunningham v. Merchant-Sterling Corp.*, a New York trial court decision from

1991.[28]

        While Rich Global makes a strong argument that Learning Annex

could not have had a "reasonable expectation" of compensation for the services it

performed in the development of the free seminar business, I have repeatedly

rejected this argument and again state that it is now appropriate to direct this

---

[26]    *See, e.g.*, *Beekman Inv. Partners v. Alene Candles*, No. 05 Civ. 8746, 2006 WL 330323, at *2 (S.D.N.Y. Feb. 14, 2006) ("The parties never executed a purchase agreement, nor did the planned transaction occur."); *Songbird Jet Ltd. v. Amax*, 581 F. Supp. 912, 917 (S.D.N.Y. 1984) (failed transaction); *Metropolitan Steel Indus. v. Citnalta Constr. Corp.*, 754 N.Y.S.2d 278, 279 (1st Dep't 2003) ("While plaintiff may have performed preparatory work in anticipation of and to facilitate a successful contract negotiation, under the circumstances it could have had no expectation of payment, except pursuant to a written contract.") (citation omitted); *Cunningham v. Merchant-Sterling Corp.*, 587 N.Y.S.2d 492, 495 (Sup. Ct. N.Y. Co. 1991) (consummated transaction lost money).

[27]    *See* 2012 WL 92281, at *4.

[28]    587 N.Y.S.2d 492.

argument to the Second Circuit.  I have previously ruled that Learning Annex's

*quantum meruit* claim states a cause of action.  Rich Global relies predominantly

on unjust enrichment cases, which are inapposite because if the business venture

never comes to fruition or is never profitable, then there is no enrichment.  I am not

inclined to reconsider my prior rulings at this juncture, when Rich Global has

pointed to no binding precedent holding that a business party cut out of a

successful business venture may not recover in *quantum meruit*.

### C.    Sufficiency of the Evidence

#### 1.    Evidence that Learning Annex Acted as a Licensing Agent

Rich Global argues that there is insufficient evidence to support

Learning Annex's theory that it acted as a licensing agent for two reasons.  *First*,

Learning Annex's expert witness, Seth Matlins, had insufficient experience to

testify reliably about the duties of a licensing agent or whether Learning Annex

fulfilled them.  *Second*, even accepting Matlins' definition of a licensing agents'

duties, there was insufficient evidence that Learning Annex performed those

duties.

In contrast to the evidence presented at the first trial, the evidence at

the second trial was sufficient to support a jury finding that Learning Annex acted

as a licensing agent.  *First*, Matlins possessed proper qualifications to testify about

11

licensing agents.  Over the course of a twenty-five year career in marketing,
Matlins has acquired, directly and indirectly, familiarity with the eleven forms of
compensation arrangements identified in his initial expert report, including
licensing agreements.  Matlins gave sufficient testimony to establish his expertise
to testify about licensing agreements.[29]  To the extent that Rich Global challenges
Matlins' lack of specialization, this challenge goes to the weight of Matlins'
testimony, not its admissibility.[30]  Given the liberal approach to the qualifications
requirement in the Second Circuit,[31] Matlins' testimony concerning (1) the role of
licensing agents and (2) Learning Annex's performance of the duties of a licensing
agent was properly admitted.

     *Second*, there was sufficient evidence to support a finding that
Learning Annex performed the duties of a licensing agent.  Rich Global argues
that, because Learning Annex did not perform *all* the duties of a licensing agent,
there was insufficient evidence that Learning Annex acted as a licensing agent.

---

[29]    *See* Second Tr. at 274-287.

[30]    *See Landeros by Allendes v. Barbieri*, No. 96-CV-7809, 1998 WL
28067, at *3 (S.D.N.Y. Jan. 27, 1998).

[31]    *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of
Am. Sec., LLC*, 716 F. Supp. 2d 220, 225 (S.D.N.Y. 2010) ("[C]ourts in in the
Second Circuit generally take a liberal approach to the qualifications
requirement.")

However, even Rich Global's expert testified that a licensing agent need not perform every possible function to be considered a licensing agent.[32]  Matlins provided extensive testimony, supported by other evidence, that Learning Annex provided services that are typical of what a licensing agent would provide,[33] and this testimony is sufficient to support a jury finding that Learning Annex acted as a licensing agent.

### 2. Evidence of a Clear and Accepted Marketplace Convention for Licensing Agent Commissions

Rich Global argues that there was insufficient evidence of a clear and accepted marketplace convention for licensing agent commissions.  *First*, Matlins testified that licensing agency agreements are typically in writing and that the only two he had ever seen did not provide for a thirty-five percent commission.  *Second*, Matlins also testified that the commission percentage may vary based on a number of factors, and that a licensing agent's fee is negotiable.  *Third*, the jury did not accept Matlins' testimony as to an industry standard because the jury awarded thirty-three percent of Rich Global's royalty revenues, not the purported industry standard of thirty-five to forty percent.

---

[32]     *See* Second Tr. at 716:4-13.

[33]     *See id.* at 147, 153-156, 158-162, 164-165, 298, 305-316, 447-448.

Learning Annex presented sufficient evidence for a jury to find that there was a clear and accepted marketplace convention establishing compensation based on a percentage.[34]  Matlins testified that the "clear and accepted industry standard" is thirty-five percent.[35]  Moreover, the handbook cited by Rich Global's own expert stated that most licensing agents receive thirty-five to forty percent, although commissions can range from as low as fifteen percent to as high as fifty-five percent based on a variety of factors.[36]  Although licensing agreements may vary from the convention of thirty-five percent, due to certain factors as discussed in the *Licensing Handbook*, that does not mean that there is *no* convention.  Indeed, the jury's thirty-three percent verdict, a slight downward departure from the typical thirty-five to forty percent range, is likely due to the fact that Learning Annex did

---

[34]      Although it has been law of the case that to establish damages in *quantum meruit* on a percentage basis, rather than based on an hourly rate, there must be a clear and accepted marketplace convention, *see Carlino v. Kaplan*, 139 F. Supp. 2d 563, 565 (S.D.N.Y. 2001), I have expressed concerns that this is a stricter standard than the standard discussed in *Toporoff Eng'rs v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 109 (2d Cir. 2004), which lays out several factors a fact-finder may consider in awarding damages based on a percentage method. However, because the *Carlino* standard is the law of the case and plaintiffs have satisfied that stricter standard, I will proceed using that framework.

[35]      Second Tr. at 298:22-299:2.

[36]      *See The Licensing Business Handbook*, Ex. M to 6/1/12 Declaration of Megan K. Bannigan, plaintiffs' counsel, at 115.

not perform *every* function of a licensing agent and is supported by the discussion of industry standards in the *Licensing Handbook*.

### D.   Evidentiary Rulings

#### 1.   Evidence of Intent

Rich Global argues that I improperly admitted evidence of Learning Annex's expectation interest.  In particular, Rich Global objects to admission of the MOU, testimony concerning Learning Annex's expectations of participating in the free seminar venture, and argument that Learning Annex was "cut out" of the proposed business venture.  In addition, Rich Global objects to evidence concerning work that Learning Annex was willing to, but did not, do.  Rich Global contends that all of this evidence is irrelevant because *quantum meruit* damages are based on the objective value of services actually performed.[37]

All of this evidence was properly admitted as evidence concerning the background of the parties' relationship and the role that Learning Annex played with respect to the free seminar business.  In addition, I instructed the jury that they should not consider this evidence in their calculation of damages.  In particular, I instructed the jury that (1) "[y]ou may not consider [the MOUs] in your

---

[37]      *See Memorial Drive Consultants, Inc. v. ONY, Inc.*, 29 Fed. App'x 56, 61 (2d Cir. 2002).

15

determination of damages"; (2) "[t]he reasons for [Rich Global's termination of Learning Annex] are of no concern to you"; (3) "[y]our job is to value only the services actually performed.  You may not award damages for services not actually performed by Learning Annex"; (4) "you are to focus solely on the services [Learning Annex] provided related to the development of the free seminar business.  You may not award damages for any other aspect of the parties' relationship."[38]  Because the limiting instructions clearly stated that the jury should award damages based on the actual services provided by Learning Annex, and not on Learning Annex's expectation interests, Rich Global's request for a  new trial based on the admission of evidence purportedly concerning Learning Annex's expectation interest is denied.

### 2. Preclusion of Rich Global from Presenting Additional Witnesses

Rich Global also argues that I erred in precluding Rich Global from identifying a new expert witness and excluding the testimony of Kim Kiyosaki and Morris Orens.  However, a trial court admittedly has "broad discretion" with respect to the "control and management of [a] new trial."[39]

---

[38]     Second Tr. 849-850.

[39]     11 Wright, Miller & Cooper, Federal Practice & Procedure § 2803. *Accord* 2/9/12, 2/10/12 defendants' letters to the Court.

Indeed, I exercised such discretion to permit Rich Global's expert witness to testify in the second trial even though he was not called in the first trial. At the same time, I declined to permit Rich Global to name a new expert because the cost and inconvenience to the plaintiffs in investigating and deposing the new expert witness outweighed the benefit of permitting a new expert witness to testify.[40]

In addition, Rich Global had the ability to call  Kim Kiyosaki and Morris Orens at the first trial, where their testimony was just as relevant as in the second trial.  Rich Global made a tactical decision not to call them.  Moreover, Kim Kiyosaki was never deposed.  The purpose of the second trial was not to permit Rich Global to completely revise its trial; rather, the second trial was required to ensure that the damages figure was properly supported by adequate expert testimony.[41]  Rich Global has pointed to no authority to show that exclusion of witnesses who did not testify in the first trial is an abuse of discretion, especially where the Court made such a decision after weighing the inconvenience and costs the adversary would incur.  Accordingly, Rich Global's request for a new trial on

---

[40]     *See* 2/14/12 Order.

[41]     *See Learning Annex*, 2012 WL 92281, at *6-8 (granting a new trial because the jury's $14.6 million verdict was a seriously erroneous result and a miscarriage of justice in light of Matlins' deficient testimony).

this ground is denied.

## E.      Remittitur

Under New York law, a reviewing court should vacate a jury award that "deviates materially from what would be reasonable compensation."[42]  This standard "accords less deference to the jury's award than the traditional common law standard."[43]

Rich Global argues that a review of analogous New York cases involving finder's fees would only support damages in the range of 1.5% to 5%.[44] However, Rich Global has correctly argued elsewhere that this is not a finder's fee case – the first jury rejected liability based solely on the Whitney introduction. Rich Global points to no licensing agent cases to demonstrate that this verdict deviates materially from reasonable compensation.  Indeed, the verdict is slightly below the standard range for licensing commissions.[45]  Accordingly, Rich Global's

---

[42]      CPLR § 5501(c).

[43]      *Consorti v. Armstrong World Indus., Inc.*, 103 F.3d 2, 4 (2d Cir. 1996).

[44]      *See Nuvest, S.A. v. Gulf & W. Indus. Inc.*, 649 F.2d 943, 945 (2d Cir. 1981) (5%); *McCormack v. Grumman Am. Aviation Corp.*, 514 N.Y.S.2d 242, 243 (1st Dep't 1987) (1.5%).

[45]      *See The Licensing Business Handbook* at 115 (noting that the standard fee for licensing agents is between thirty-five and forty percent).

18

request for remittitur is denied.

**F.     Stay of Judgment**

Rich Global requests a stay of enforcement of the judgment pending disposition of the appeal.  Learning Annex, however, correctly notes that this request is premature[46] and requests an opportunity to fully brief this issue. Although I am loathe to accept more briefing in this case, the following schedule is set: (1) Rich Global may file its motion for a stay, including a memorandum of law not to exceed ten pages, by July 20, 2012; (2) Learning Annex may file an opposition brief, not to exceed ten pages, by July 27, 2012; and (3) Rich Global may file a reply brief, not to exceed five pages, by July 31, 2012.  In addition, the parties should confer and submit, by July 16, 2012 at 9:00 a.m., calculations of pre-judgment interest, so that final judgment may be entered on that date.  The parties are directed to refrain from seeking *any* adjournment of this briefing schedule as any such request will be denied.

**IV.   CONCLUSION**

For the foregoing reasons, Rich Global's motion for judgment as a matter of law or, in the alternative, for a new trial is denied.  The Clerk of the Court

---

[46]     *See* Fed. R. Civ. P. 62(d) ("*If an appeal is taken*, the appellant may obtain a stay by supersedeas bond.") (emphasis added).

is directed to close this motion [Docket No. 195].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 13, 2012

**-Appearances-**

**For Plaintiffs:**

Jonathan Harris, Esq.                David Deitch, Esq.
Julie Withers, Esq.                  Ifrah PLLC
Charlotte Houghteling, Esq.          1627 Eye Street NW, Suite 1100
Harris Cutler & Houghteling LLP      Washington, D.C. 20006
111 Broadway, Suite 402              (202) 524-4147
New York, New York 10006
(212) 397-3370

Edwin G. Schallert, Esq.
Debevoise & Plimpton, LLP
919 Third Avenue, 31st Floor
New York, New York 10022
(212) 909-6000

**For Defendant:**

Lewis Richard Clayton, Esq.
Daniel J. Leffell, Esq.
John Longwell, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3215

21